# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

DALE SMITH,

               Plaintiff,

    v.

CHEVRON U.S.A. INC.; NORTHWEST
WHOLESALE, INC.; and SYNGENTA
CROP PROTECTION, LLC,

               Defendants.

Case No. 2:25-cv-00433

**PLAINTIFF'S EMERGENCY MOTION
TO REMAND**

NOTE ON MOTION CALENDAR:
April 11, 2025

On March 11, 2025, Defendants Syngenta Crop Protection, LLC and Chevron U.S.A. Inc. (collectively "Defendants") baselessly removed this action from King County Superior Court in violation of the applicable federal removal statutes. Because there is no diversity among the parties, and because Defendants have completely failed to even state the applicable standard for bad-faith to overcome an untimely removal, let alone demonstrate any evidence to reach that standard, the Court must remand this matter back to King County Superior Court where it was set for imminent trial.

As of this writing, trial in this matter was set to begin in just 51 days after almost four years of intense litigation. This matter has already proceeded through discovery and dispositive motion

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

practice, with all dispositive motions fully briefed and pending oral argument. Oral arguments on

dispositive and expert-related motions were set to occur next week until Defendants' improper

removal.

Despite Defendants' removal being objectively unreasonable for the reasons discussed

below, Plaintiff Dale Smith is not requesting his costs and fees incurred in having to contest this

groundless removal in hopes that not seeking such can expedite the disposition of this urgent

matter.

## I.      Factual and Procedural History.

This action stems from Mr. Smith's unfortunate diagnosis with Parkinson's Disease in

1997 caused by his exposure to Defendants' herbicide paraquat. Dkt. # 1-4 at p. 28 ¶ 100. Mr.

Smith first began litigating this action against Defendants on June 21, 2021, after learning of the

link to paraquat exposure and Parkinson's Disease. Dkt. # 1-5 at p. 2. As such, it is impossible to

distill all of the pertinent facts from nearly four years of active litigation to show just how egregious

Defendants' eleventh-hour removal of this matter is, only weeks before the May 5, 2025 trial date.[1]

*Id*. at p. 535. Therefore, Mr. Smith will limit himself to only those facts which establish the

baselessness of Defendants' removal.

Defendants' removal is premised on the recent settlement reached in principle, but not yet

executed, between Mr. Smith and Defendant Northwest Wholesale, Inc. ("Northwest"). Dkt. # 1

at p. 3 ¶ 10. As set forth below, because Northwest is still a party to this action, there is not

complete diversity among the parties, as it is uncontested that both Mr. Smith and Northwest are

residents of Washington. *Id*. at p. 2 ¶ 2. Respectfully, this *could* end the analysis. However,

---

[1] It is important to note that the removal was filed 10 days before a long-standing hearing, that required significant coordination with the King County Superior Court, on various motions to exclude experts and for summary judgment, among others, and three (3) days before the deposition of Defendants' late-disclosed (by agreement) expert witness in Miami, Florida. Ex. 1, Stern Aff. at ¶ 11.

PLAINTIFF'S EMERGENCY MOTION TO REMAND
(2:25-cv-00433) - 2

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

because Defendants' groundless removal is purportedly premised on Mr. Smith's alleged bad-faith in settling with Northwest four years into litigation and on the eve of trial, Mr. Smith will detail the history of his active litigation against Northwest which negates any purported allegation of bad-faith.

Northwest has been an active party to this litigation since Mr. Smith filed his first complaint in June 2021. Dkt. # 1-5 at p. 2. In that original complaint, Mr. Smith identified Northwest as a supplier and/or distributor of the paraquat that injured him. *Id*. at p. 4 ¶ 9. Mr. Smith first served discovery requests on Northwest on September 30, 2021, including requests for admissions, requests for production, and interrogatories. Ex. 1, Stern Aff. at ¶ 2. Mr. Smith served a second set of interrogatories on Northwest on November 16, 2021, a third set of discovery requests on Northwest on May 22, 2024, a fourth set on July 17, 2024 and a fifth set on October 24, 2024. *Id.* Northwest responded in kind with their own set of discovery requests which they served on Plaintiff on October 18, 2021. *Id*. Mr. Smith responded to Northwest's discovery requests on November 17, 2021. *Id.*

Mr. Smith and Northwest proceeded through the ordinary course of litigation, including motions to compel, the deposition of Northwest's corporate representative, and motions for summary judgment. *Id.* at ¶¶ 3-5. The deposition of Northwest's corporate representative, Rodney Van Orman, took place on September 25, 2024. *Id*. at ¶ 4, Ex. K. In all, thirty depositions have been taken in these proceedings, including of experts that Northwest retained with Defendants.

Northwest moved for summary judgment on December 16, 2024. *Id.* at ¶ 5. Northwest moved on multiple bases, including insufficient evidence that it sold paraquat to Mr. Smith during the relevant period, and numerous claims of legal insufficiency, such as lack of proximate causation. *Id*. Mr. Smith filed his response to Northwest's motion on January 16, 2025, laying

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

out in large part the substance of his case against Northwest developed over the course of four years of hard-fought litigation. *Id*. at ¶ 5, Ex. S. Defendants misrepresent the factual record and nexus between Mr. Smith's usage of paraquat and Northwest, but Mr. Smith's summary judgment response identifies four separate witnesses, including Mr. Smith (who specifically testified that he and his father obtained paraquat from Northwest) and 3 former co-workers, who testified to facts supporting Northwest's supply and/or sale of paraquat and/or agricultural chemicals, generally, in the geographic area where Mr. Smith worked and/or to his employers during the period when he worked with paraquat. *Id*. at Ex. S pp. 3-5, 8-10 and 14. The response also demonstrates Northwest's inability to rebut this evidence, and highlights the testimony of its corporate representative, Mr. Van Orman, who admitted that Northwest sells paraquat, has sold agricultural chemicals in the relevant geographic area for 80+ years and cannot say that Northwest did not sell paraquat when Mr. Smith testified to using Northwest-supplied paraquat.[2] *Id.*

As set forth in Defendants' notice of removal, Northwest moved to continue the present imminent trial setting (May 5, 2025) on January 6, 2025 and supplemented that motion on February 11, 2025 with new arguments as to why Northwest needed a continuance (claiming Northwest's new attorney, who recently became involved with Northwest's defense, was not prepared to try such a complicated case with so little time to prepare). Dkt. # 1 at p. 6 ¶ 18. Upon receipt of the supplemental motion, Plaintiff's counsel conveyed to Mr. Smith the possible implications for the May 2025 trial setting. Ex. 1, Stern Aff. at ¶¶ 6-7. Mr. Smith instructed his counsel that after waiting for almost 4 years for his case to be heard, his ultimate desire was to maintain the May 2025 trial date. *Id.*

---

[2] It should be noted that Defendants' suggestion that there being no documentary evidence (bills, receipts, etc.) to support this claim is a red herring. Mr. Van Orman, the Northwest corporate representative, testified that there was a fire at a Northwest facility in 2015 that destroyed any such records that may have existed. *Id*. at p. 9.

PLAINTIFF'S EMERGENCY MOTION TO REMAND
(2:25-cv-00433) - 4

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1    For reasons both strategic and financial, Mr. Smith agreed in principle to a settlement with

2    Northwest on February 20, 2025. *Id*. at ¶ 7. On that same day and immediately after agreeing to

3    the proposed settlement in principle, Plaintiff, with Northwest's permission (and copied), informed

4    the King County Superior Court of the settlement in principle and that the motion to continue was

5    moot. *Id.* at ¶ 8 at Ex. M. Shortly after this communication, the King County Superior Court staff

6    inadvertently informed the parties via email that the King County Superior Court was inclined to

7    grant the motion to continue filed by Northwest. *Id.* at Ex. N. Plaintiff's counsel, with Northwest's

8    counsel copied, responded to that email seeking clarification and indicated that the recent

9    settlement in principle, discussed in Plaintiff's counsel's previous email, rendered the motion to

10   continue moot. *Id.* at Ex. O. Upon receipt of this clarifying email, the King County Superior Court

11   indicated to all the parties that its previous email suggesting the motion to continue was going to

12   be granted was made in error and to disregard that email. *Id.* at Ex. P.

13       The King County Superior Court directed the parties to file a notice of settlement with the

14   court in order to moot the continuance motion, *id*. at Ex. S, which Mr. Smith filed on February 20,

15   2025. Dkt. # 1-3 at p. 2. As Mr. Smith's notice of settlement clearly states, the settlement is an

16   agreement "in principle," and that a formal dismissal would be filed only upon Northwest's

17   satisfaction of its obligations under the parties' agreement in principle. *Id*. As of the filing of this

18   motion, Northwest has not provided Mr. Smith with the promised final proposed settlement

19   agreement to review and execute, nor has it satisfied the express conditions of the proposed

20   agreement, and thus, Northwest remains a party to the proceedings. Ex. 1, Stern Aff. at ¶¶ 9–10.

21   The full history of Mr. Smith's litigation against Northwest, with accompanying exhibits, is set

22   forth in the accompanying Affidavit of Charles P. Stern cited herein.

23       In addition to these facts - which set forth four years of active litigation against Northwest

24

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

- a final word must be said on the human circumstances which underlie these legal proceedings for which Defendants do not account. Since the filing of this lawsuit all the way back in 2021, not only has Mr. Smith suffered from the debilitating effects of the Parkinson's that gives rise to this litigation, those effects have continued to progress, and his life circumstances have taken a number of tragic turns during the years of litigation which make holding on to his trial setting all the more important. As Mr. Smith's condition continued to decline, Mr. Smith depended on the support of his son Daniel and care of his wife Debra in order to live with his Parkinson's. Tragically, Daniel took his own life in 2022, and Debra passed away from diabetes-related complications in December 2023. *Id*. at ¶ 7. With his wife deceased and Mr. Smith unable to care for himself due to the progression of his sickness, he was forced to move into a fulltime care facility following Debra's passing. *Id*. Today, Mr. Smith is wheelchair bound, has great difficulty communicating/speaking and is at risk of serious injury from falls. *Id.* Thus, it is vitally important to Mr. Smith that his May 5, 2025 trial setting remain in place before his symptoms progress to a point that makes it impossible for Mr. Smith to attend his own trial and/or meaningfully participate in it - a trial that Defendants impermissibly attempt to avoid by pursuing this baseless, eleventh hour removal after nearly four years of grueling litigation. *Id.*

For the reasons that follow, Defendants' removal lacks any objectively reasonable basis. Remand to King County Superior Court is required because there is no diversity of parties. Moreover, and regardless of the status of Northwest's dismissal, Defendants' removal is untimely by more than three years. Although fees and costs are available and warranted under the circumstances, Plaintiff does not seek them. Plaintiff requests immediate remand of this action to pursue a speedy trial in state court.

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

**II.      There is No Complete Diversity of Parties to Support Removal.**

The majority of Defendants' notice of removal is devoted to legally incorrect arguments regarding whether they can cure the untimeliness of their removal by a showing of Mr. Smith's purported bad-faith—which they cannot establish.  However, as a threshold matter, Defendants cannot satisfy the most basic legal predicate of removal: complete diversity of parties.[3]

"A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally.  If it appears that the federal court lacks jurisdiction, however, the case shall be remanded." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134, 126 S. Ct. 704, 707 (2005) (citations and quotation omitted). The federal district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between—(1) citizens of different states." 28 U.S.C. § 1332(a).  Courts in this circuit "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id*. "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id*.

As set forth in the recitation of facts above, there is no dispute that Mr. Smith and Northwest are both citizens of the State of Washington.   Dkt. # 1 at p. 2 ¶ 2, p. 8 ¶ 23.  There is also no dispute that while Mr. Smith and Northwest have agreed in principle to a settlement, they have not yet executed a settlement agreement, nor has Northwest been dismissed as a party to these proceedings. *Id*. at pp. 6-7 ¶ 18; Dkt. # 1-8 at p. 2. The settlement is not final.  Because Northwest

---

[3] To be clear, though Defendants have not met the basic requirement of complete diversity, their removal is equally deficient based on their arguments of bad faith. Defendants' notice of removal fails in both regards and should be remanded with prejudice regarding both arguments to preclude Defendants from frivolously removing this case again after settlement is consummated and Northwest is actually dismissed from the state court case.

PLAINTIFF'S EMERGENCY MOTION TO REMAND
(2:25-cv-00433) - 7

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

remains a party as of the filing of this motion, there is no diversity, and this matter must be remanded back to King County Superior Court for lack of federal subject matter jurisdiction.

As recognized by this District Court, "settlement with a non-diverse party does not establish diversity jurisdiction unless and until that party is dismissed from the action." *Bishop v. Ride the Ducks International, LLC*, No. C18-1319, 2018 WL 5046050 at *2 (W.D. Wash. Oct. 17, 2018) (quoting *Dunkin v. A.W. Chesterton Co.*, No. C10-458, 2010 WL 1038200 at *2 (N.D. Cal March 19, 2010) (citing *Self v. General Motors Corp.*, 588 F.2d 655, 659 (9th Cir. 1978))). It is clear that complete diversity does not exist; therefore, this case is not "one which is or has become removable" under 28 U.S.C. § 1446(b)(3).

Defendants ignore that this District Court's decision in *Bishop* is directly on point and instead point to a decision of the United States District Court for the District of Arizona for the proposition that "removal is proper even without a formal dismissal of the non-diverse parties so long as a binding settlement has been reached between them," *Kasloff v. Kasloff*, No. CV-18-04257, 2019 WL 1724138 at *2 (D. Ariz. Apr. 18, 2019). Defendants' purported reliance on *Kasloff* is misleading for several reasons.

First, Defendants' pluck the quotation from *Kasloff* without noting that it comes from the Arizona District Court's discussion of competing approaches, which in full reads: "Courts across the country and within the Ninth Circuit are divided on this question, with some concluding that removal is improper until the non-diverse parties have been formally dismissed, and others concluding that removal is proper even without a formal dismissal of the non-diverse parties so long as a binding settlement has been reached between them." *Id*. Thus, at the most basic level, Defendants' mischaracterize the quotation on which they purport to rely.

Second, *Kasloff* is not concerned with whether diversity exists, but rather with the distinct

PLAINTIFF'S EMERGENCY MOTION TO REMAND
(2:25-cv-00433) - 8

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

question of when the 30-day removal period is triggered, which is not at issue here. *Id*. Notably, the *Kasloff* court reached its conclusion because of "the long-standing principle that the removal statute is strictly construed against removal jurisdiction, and in doubtful cases jurisdiction should be rejected." *Id*. at *3 (citing *Gaus*, 980 F.3d at 566). Accordingly, *Kasloff* was concerned with measuring the 30-day removal requirement from the date least favorable to the removing party; again, a consideration not at issue here.

Finally, even putting these two crucial distinctions aside, the chopped-up quotation relied on by Defendants states on its face that removal may be proper where "a binding settlement has been reached." *Kasloff*, 2019 WL 1724138 at *2. Here, there is no binding settlement agreement between Mr. Smith and Northwest, only an agreement in principle without Northwest having even sent Mr. Smith a final agreement to review and execute. *Kasloff* thus has no bearing on the matter at hand.

Because there is no diversity between Mr. Smith and Northwest, this Court lacks subject matter jurisdiction and the matter must be immediately remanded to King County Superior Court.

### III. Defendants' Notice of Removal is Completely Devoid of Any Showing of Bad Faith.

Even setting aside the lack of diversity, the matter still warrants remand with prejudice to King County Superior Court because Defendants' removal is untimely by nearly three years. Plaintiff welcomes analysis of this issue for two reasons: (1) even if, assuming *arguendo*, there was diversity jurisdiction at this time, it is objectively obvious that there was no bad-faith, and (2) to preclude Defendants from frivolously removing *again* after Northwest is actually dismissed from the state court case following completion of the proposed settlement conditions by reasserting these frivolous arguments.

"A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). There is no dispute that Defendants' removal occurred three years, eight months, and 18 days after the commencement of this action. Dkt. # 1 at p. 4 ¶ 12. Thus, Defendants can only remove this action if they show that Mr. Smith acted with bad faith to prevent removal, a requirement their notice of removal completely fails to satisfy.

Nowhere in Defendants' notice of removal do they even attempt to set forth the applicable legal standard in this Circuit, let alone attempt to show how their removal two years, eight months, and 18 days beyond the one-year deadline satisfies Section 1446(c)(1)'s bad-faith requirement. Instead, Defendants pick and choose isolated words and phrases from scattershot citations to district court opinions throughout the country in an attempt to claim that Mr. Smith's claims are "meritless," *id*. at pp. 4-6 ¶ 13-15, and that Mr. Smith sued Northwest in an attempt to defeat diversity jurisdiction, *id*. at pp. 6-7 ¶¶ 16-19, neither of which are even germane to the correct bad-faith analysis.[4] Defendants, who bear the burden on removal, have failed to make the requisite showing to justify such an egregiously untimely removal.

"Although the Ninth Circuit has not defined a standard for district courts to use when evaluating the 28 U.S.C. § 1446(c)(1) bad faith exception, district courts in the Ninth Circuit have stated that 'defendants face a high burden to demonstrate that a plaintiff acted in bad faith to prevent removal.'" *Kolova v. Allstate Insurance Co.*, 438 F.Supp.3d 1192, 1196 (W.D. Wash 2020) (quoting *Heacock v. Rolling Frito-Lay Sales, L.P.*, No. C16-0829JCC. 2016 WL 4009849 at *3 (W.D. Wash. July 27, 2016)). District Courts in this circuit "apply a strict standard and find bad faith when a plaintiff fail[s] to actively litigate a claim against a defendant in any capacity."

---

[4] To be clear, Plaintiff vehemently disagrees with Defendants' assertion that his claims against Northwest are meritless and the accusation that they were initiated for the purpose of defeating jurisdiction.

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

*Id*. (quotations omitted).

"District courts often consider three factors when evaluating bad faith under 28 U.S.C. § 1446(c)(1): [t]he timing of naming a non-diverse defendant, the timing of dismissal, and the explanation given for that dismissal." *Id*. at 1196-97 (quotation omitted). Again, ***at no point in their 640-paged notice of removal*** do Defendants identify the three *Kolova/Heacock* factors nor make any attempt to show how their removal satisfies the three factors and the "strict standard" of bad-faith applied to justify an untimely removal. Instead, Defendants apply their own standard that is not supported by the law.

Defendants' untimely removal fails all three *Kolova* factors. First, there is no bad-faith in the timing of Mr. Smith's naming of Northwest as a defendant to this action. As discussed in *GeoSierra Environmental, Inc. v. Nautilus Insurance*, courts in this district have found an absence of bad faith where the plaintiff named the defendant at issue at the outset of litigation rather than in response to a notice of removal. No. 2:22-cv-00505, 2023 WL 2632515 at *3 (W.D. Wash. Mar. 24, 2023) (basing its decision on "*Heacock*, 2016 WL 4009849, at *3-4 (drawing a distinction between a plaintiff who included a non-diverse defendant at the 'outset of his case' and another who acted in bad faith by joining the defendant in response to a removal notice) . . . *Kolova*, 438 F.Supp.3d at 1197 (finding no bad faith where plaintiff named the non-diverse defendant and asserted colorable claims against it in the original complaint); *Kalfsbeek Charter*, 540 F.Supp.3d at 944 (finding no indication of bad faith where plaintiff named non-diverse defendant 'as a defendant from the outset of the case')"). Here, as set forth above, Mr. Smith named Northwest in the original complaint filed in June 2021 and maintained his claims against Northwest through four years of active litigation. Therefore, Defendants' removal fails to satisfy the first *Kolova* bad-faith factor.

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

Second, there is no bad-faith in the timing of Mr. Smith's dismissal of Northwest. "[T]his court declined to find bad faith when a plaintiff settled with non-diverse defendants one week after the one-year mark and dismissed them one month later." *Kolova*, 438 F.Supp.3d at 1197 (citing *Bishop*, 2018 WL 5046050 at *2). "Although courts have found bad faith where a plaintiff dismissed a non-diverse defendant without conducting any discovery, courts consider even bare minimum discovery attempts to not amount to bad faith." *Id*. (quotation omitted).

Far from the "bare minimum" sufficient to negate an allegation of bad-faith, as set forth above and in the accompanying affidavit, Mr. Smith has tirelessly pursued his claims against Northwest over the course of four years of litigation. Mr. Smith and Northwest served each other with multiple sets of discovery, litigated numerous discovery motions, conducted the deposition of Northwest's corporate representative, and substantively litigated dispositive motions. Ex. 1, Stern Aff. at ¶¶ 2-5. As stated by this District Court in *Scott v. Monroe*, "[t]his is not a case in which a plaintiff named a diversity-defeating defendant and failed to litigate against or engage that defendant in discovery. Plaintiffs served interrogatories and request for production on [the defendant] with service of the complaint and summons, and deposed [the defendant's] corporate representative." No. C20-1550, 2021 WL 373173 at *5 (W.D. Wash. Jan. 11, 2021). The same is true here. Therefore, the second *Kolova* factor does not support a finding that Mr. Smith acted in bad faith in reaching a settlement in principle with Northwest.

Finally, the reason for Mr. Smith's ultimate decision to settle with Northwest also does not support a finding of bad faith. As stated by this District court in *GeoSierra*,

> after this case commenced, *GeoSierra* began negotiating with Lloyds regarding their coverage obligations, dismissing Lloyds only after Lloyds agreed to defend *GeoSierra* and contribute to the settlement in the Underlying Lawsuit. *Aguayo*, 59 F.Supp.3d at 1229 (stating that "if the plaintiff keeps the removal spoiler joined . . . to[, among other things,] force a settlement, . . . the Court will consider the plaintiff to have actively litigated against the removal spoiler").

PLAINTIFF'S EMERGENCY MOTION TO REMAND
(2:25-cv-00433) - 12

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

2023 WL 2632515 at \*5 (citation omitted). Here, Mr. Smith litigated against Northwest for nearly four years until a settlement achieved both parties' best interests. That Mr. Smith was motivated in part to settle with Northwest in order to protect his trial setting has no bearing on the bad-faith analysis and, in any event, in no way evidences bad faith. Defendants provide no citation to any authority that protection of a trial setting is tantamount to bad faith, and Mr. Smith is aware of no such authority.

Defendants misrepresent the timing and events preceding and immediately after the proposed settlement was reached to imply something nefarious occurred. In reality, Plaintiff was negotiating with Northwest and reached an agreement in principle with Northwest and informed the King County court of that agreement *before* the Court sent its email indicating it was inclined to grant the motion for continuance. Ex. 1, Stern Aff. at ¶ 8 at Exs. M, N, O and P. Plaintiff discloses this information to the Court and Defendants (with monetary values redacted due to confidentiality agreements) because there is nothing to hide nor improper.

Even if, solely for the sake of argument, one of the reasons for originally including Northwest in the litigation was to defeat federal jurisdiction—beyond of course its culpability in selling the product that injured Mr. Smith—even that does not amount to bad faith. "[A]s the master of [the] complaint, a plaintiff is entitled to use deliberate tactics to defeat federal jurisdiction. A plaintiff may thus be motivated in part by a desire to remain in state court." *Scott*, 2021 WL 373173 at \*3 (quotations and citation omitted); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35, 145 S. Ct. 41, 52 (2025) ("The plaintiff is master of the complaint . . . she can establish—or not—the basis for a federal court's subject-matter jurisdiction. She may, for example, name only defendants who come from a different State, or instead add one from her own State and thereby destroy diversity of citizenship." (Quotation omitted)). Thus, even if one

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

were to give credence to Defendants' assertions solely for the sake of argument that one of the original factors in including Northwest was to negate federal jurisdiction, that has no bearing on the bad-faith analysis under *Kolova*. Therefore, Defendants' notice of removal also fails to satisfy the third bad-faith factor under *Kolova*.

Because Defendants' notice of removal utterly and completely fails to set forth the proper legal standard and analysis to avoid the one-year bar to removal, this case must be remanded back to King County Superior Court for lack of jurisdiction. In fact, if there is any bad faith in these proceedings, it is Defendants' baseless removal of this action at the eleventh-hour.

**IV.    Conclusion.**

For all the reasons set forth above, the Court should grant Plaintiff's emergency motion to remand this matter to King County Superior Court as expediently as possible.

**CERTIFICATION**

I certify that this memorandum contains 4,397 words, in compliance with the Local Civil Rules.

DATED this 14th day of March, 2025.

WEINSTEIN CAGGIANO PLLC

*s/ Alexandra B. Caggiano*
Brian D. Weinstein, WSBA No. 24497
Alexandra B. Caggiano, WSBA No. 47862
601 Union Street, Suite 2420
Seattle, Washington 98101
Phone: (206) 508-7070
Fax: (206) 237-8650

and

NACHAWATI LAW GROUP

*s/ Charles P. Stern*
Charles P. Stern, TX No. 24106466

*Admitted Pro Hac Vice*
5489 Blair Road
Dallas, TX 75231
Phone: (214) 890-0711
Fax: (214) 890-0712

Counsel for Plaintiff

PLAINTIFF'S EMERGENCY MOTION TO REMAND
(2:25-cv-00433) - 15

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

DATED this 14th day of March, 2025.

NACHAWATI LAW GROUP

*s/ Charles P. Stern*
Charles P. Stern, TX No. 24106466

PLAINTIFF'S EMERGENCY MOTION TO REMAND
(2:25-cv-00433) - 16

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650