# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| DALE SMITH, | NO. 2:25-cv-00433-LK |
|     **Plaintiff,** | **AFFIDAVIT OF CHARLES P. STERN** |
| v. | **IN SUPPORT OF PLAINTIFF'S** |
| | **EMERGENCY MOTION TO** |
| CHEVRON U.S.A., INC.; | **REMAND** |
| NORTHWEST WHOLESALE, INC.; and | |
| SYNGENTA CROP PROTECTION, LLC; | |
|     **Defendants.** | |

I, **CHARLES P. STERN**, declare and state as follows:

I am one of the attorneys representing the Plaintiff, Mr. Smith, in *Smith v. Chevron U.S.A., Inc.; Et al.*; No. 2:25-cv-00433-LK. My *Pro Hac Vice* was filed and granted on March 13, 2025. I represented Mr. Smith in the removed King County Superior Court matter. I make this statement based on personal knowledge and involvement in this case.

1. Mr. Smith's case was filed on June 21, 2021, and Northwest Wholesale, Inc. ("NWW") was named in the original Complaint. *See* **Exhibit A**, Plaintiff's Complaint. Service was perfected on NWW on June 29, 2021. *See* **Exhibit B**, Proof of Service, dated June 30, 2021.

2. During the King County litigation, NWW served discovery on Plaintiff on October 18, 2021, and Plaintiff responded to this discovery on November 17, 2021. *See* **Exhibit T**, Proof of Service, dated November 17, 2021. Plaintiff also served numerous discovery requests on NWW, including:

   - Plaintiff's First Set of Interrogatories and Requests for Production Propounded to Defendant Northwest Wholesale, Inc., dated September 30, 2021.
   - Plaintiff's Second Set of Interrogatories Propounded to Defendant Northwest Wholesale, Inc., dated November 16, 2021.
   - Plaintiff's Third Set of Discovery Directed to Defendant Northwest Wholesale, Inc. (Plaintiff's Requests for Admission, Third Set of Interrogatories and Second Set of Requests for Production of Documents), dated May 22, 2024.
   - Plaintiff's Expert-Related Interrogatories and Requests for Production to Defendants Chevron U.S.A., Inc. and Northwest Wholesale, Inc., dated July 17, 2024.
   - Plaintiff's Contention Interrogatories to NWW, dated October 24, 2024.

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 · FACSIMILE (206) 237-8650

*See* **Exhibit L**, Proofs of Service.

3.  During the King County litigation, Plaintiff filed numerous discrete discovery-related motions targeting NWW individually. Those motions include:

    -   Plaintiff's Motion to Compel NWW's Discovery Responses to Plaintiff's Discovery Requests. *See* **Exhibit C**, Proof of Service, dated March 26, 2024.
    -   Plaintiff's Motion to Strike Defendant NWW's Disclosure of Possible Primary Witnesses. *See* **Exhibit D**, Proof of Service, dated April 26, 2024.
    -   Plaintiff's Motion to Compel NWW's to Respond to and Supplement Discovery. *See* **Exhibit E**, Proof of Service, dated July 18, 2024.
    -   Plaintiff's Motion for Leave to Serve Additional Interrogatories Upon Defendant NWW. *See* **Exhibit F**, Proof of Service, dated October 9, 2024.

4.  On May 23, 2024, via email, Plaintiff noticed NWW's 30(b)(6) corporate representative for a deposition. *See* **Exhibit G**, Email to Counsel for NWW, dated May 23, 2024. After being postponed at the request of NWW's counsel, Plaintiff conducted this deposition on September 25, 2024. *See* **Exhibit H**, Dep. Tr. of NWW's 30(b)(6) Rodney Van Orman, dated September 25, 2024.

5.  Plaintiff responded to numerous motions filed and/or joined by NWW during the litigation in King County, including NWW's Motion for Summary Judgment on January 16, 2025. *See* **Exhibit S**, Plaintiff's Response to NWW's Motion for Summary Judgment, dated January 16, 2025.

6.  In anticipation of the court-ordered mediation, Plaintiff issued a demand in this case to NWW on February 8, 2025. *See* **Exhibit I**, Demand Letter to NWW, dated February 8, 2025 (amount of demand redacted). Three days after that demand letter was sent, on February 11, 2025, NWW filed a Supplement to its Motion to Continue Trial Date ("Supplemental Motion for Continuance"), arguing, essentially, that NWW's new counsel was unprepared to try this case during the May 2025 setting because she had not been involved for the preceding 3.5 years. *See* **Exhibit J**, NWW's Supplemental Motion for Continuance, dated February 11, 2025. No other Defendants joined in the NWW Supplemental Motion for Continuance. Plaintiff filed a response to this Supplemental Motion for Continuance on February 13, 2025.

7.  Upon receipt of NWW's Supplemental Motion for Continuance and filing his response, Plaintiff's counsel discussed with Mr. Smith the motion and the possible implications for the May trial setting. Mr. Smith instructed his counsel that after waiting for almost 4 years for his case to be heard, his ultimate desire was to maintain the May 2025 trial date. He expressed his frustration with the case having been set multiple times and then continued repeatedly. And he expressed his fear that it may happen again in response to this supplemental motion. He reminded his counsel that since his case was filed one of his adult sons had died, his wife and primary caretaker had died, and those facts, coupled with his declining health, required him to now live in a long-term care group home. Mr. Smith, who is wheelchair bound, has great difficulty communicating/speaking and is at risk of serious injury from falls, expressed concern over his ability to attend or meaningfully participate in his trial if it was delayed

AFFIDAVIT OF CHARLES P. STERN IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION TO REMAND - 2

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

further. He authorized and instructed Plaintiff's counsel to re-engage with NWW in hopes of securing an expedited settlement if it would render the pending Supplemental Motion for Continuance moot. With this in mind, Plaintiff re-engaged with counsel for NWW concerning resolution. *See* **Exhibit K**, Email Communications with NWW's Counsel, beginning February 14, 2025. Eventually, Plaintiff's counsel had an opportunity to discuss the possibility of settlement with NWW's counsel on the telephone on February 17, 2025. During this call, Plaintiff expressed his client's position that he wanted to maintain the current trial date and avoid a situation where the trial could be delayed many months or even into 2026. In light of this, Plaintiff was willing to move quickly. A few days later, on February 20, 2025, NWW made an offer to resolve the case, and Plaintiff agreed to a proposed settlement in principal with NWW. *Id.* (settlement amount redacted).

8.  Immediately after agreeing to the proposed settlement in principle, Plaintiff, with NWW's permission and copied, informed Judge Poydras' court staff of the settlement in principal and that NWW's Supplemental Motion for Continuance was moot. *See* **Exhibit M**, Email sent on behalf of Plaintiff and NWW to Judge Poydras, dated February 20, 2025. Following this communication, Judge Poydras' staff inadvertently informed the parties via email that the court was inclined to grant the Supplemental Motion for Continuance. *See* **Exhibit N**, Email from Mr. Alec Unis (Bailiff Covering for Judge Jason Poydras), dated February 20, 2025. Plaintiff's counsel immediately responded to that email with NWW's counsel copied seeking clarification and indicated that the recent settlement in principle, discussed in Plaintiff's counsel's previous email to Judge Poydras, rendered NWW's Supplemental Motion for Continuance moot. *See* **Exhibit O**, Email sent on behalf of Plaintiff and NWW to Judge Poydras, dated February 20, 2025. Upon receipt of this clarifying email, Judge Poydras' staff indicated to all the parties that its previous email suggesting NWW's Supplemental Motion for Continuance being granted was made in error and to disregard that email. *See* **Exhibit P**, Email from Mr. Alec Unis (Bailiff Covering for Judge Jason Poydras), dated February 20, 2025. Since that time, the parties had been operating as if the May 5, 2025 trial date was in place until the matter was removed on March 11, 2025.

9.  On March 3, 2025, counsel for NWW emailed Plaintiff's counsel a proposed settlement agreement. *See* **Exhibit Q**, Email from NWW's Counsel to Plaintiff, dated March 3, 2025. That same day, Plaintiff's counsel responded and indicated that he would review the proposal and get back to NWW that week. *Id.* Two days later, on March 5, 2025, NWW's counsel emailed Plaintiff's counsel explaining that the previously sent proposed settlement agreement needed to be modified and that she would be sending an updated version "shortly." *See* **Exhibit R**, Email from NWW's Counsel to Plaintiff, dated March 5, 2025.

10. As of this writing, Plaintiff has not received the promised amended/modified proposed agreement. As of this writing, no formal settlement agreement has been signed by Plaintiff. Plaintiff does not have an updated proposed agreement from NWW to review. NWW has not been dismissed from this case and will not be dismissed from this case until (1) a formal settlement agreement is executed and (2) conditions of said agreement are satisfied.

11. Defendants' Notice of Removal was filed 10 days before a long-standing hearing, that required significant preparation and coordination with the King County Superior Court, on

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 · FACSIMILE (206) 237-8650

1    various motions to exclude experts and for summary judgment, among others, and three (3)
2    days before the deposition of Defendants' late-disclosed (by agreement) expert witness in
     Miami, Florida.

3    12. Further affiant sayeth not.

4                                                            _____
                                                            CHARLES P. STERN

5

6    The foregoing Affidavit was subscribed and sworn to before me this **14ᵗʰ** day of

7    March , 2025.

8         [Seal]                                            _____
                                                            Notary Public

9         TRACI TRAPANI BEASLEY
          Notary Public, State of Texas
          Comm. Expires 11-06-2027
10        Notary ID 134633850

11   My commission expires:  11.06.2027

12

13

14

15

16

17

18

19

20

21

22

23

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070 - FACSIMILE (206) 237-8650

# EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| **DALE SMITH,** | NO. |
| **Plaintiff,** | **COMPLAINT FOR PERSONAL INJURIES** |
| v. | |
| **CHEVRON U.S.A., INC.;**<br>**CHEVRON PHILLIPS CHEMICAL**<br>**COMPANY LP;**<br>**CHAMBERLIN DISTRIBUTING**<br>**COMPANY, INC. d/b/a CHAMBERLIN**<br>**AGRICULTURE;**<br>**NORTHWEST WHOLESALE, INC.;**<br>**SYNGENTA CROP PROTECTION, LLC;**<br>**and SYNGENTA AG;** | |
| **Defendants.** | |

COMES NOW Plaintiff, Dale Smith, by and through his undersigned attorneys, and files this, Plaintiff's Complaint for Damages, against Defendants CHEVRON U.S.A., INC.; CHEVRON PHILLIPS CHEMICAL COMPANY LP; CHAMBERLIN DISTRIBUTING COMPANY, INC. d/b/a CHAMBERLIN AGRICULTURE; NORTHWEST WHOLESALE, INC.; SYNGENTA CROP PROTECTION, LLC; and SYNGENTA AG, and alleges the following:

COMPLAINT FOR PERSONAL INJURIES - 1

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070  ~  FACSIMILE (206) 237-8650

1.     Paraquat is a synthetic chemical compound[1] that since the mid-1960s has been developed, registered, manufactured, distributed, sold for use, and used as an active ingredient in herbicide products ("paraquat") developed, registered, formulated, distributed, and sold for use in the United States, including the State of Washington.

2.     Defendants are companies and successors-in-interest to companies that since 1964 have manufactured, distributed, and sold paraquat for use in Washington, acted in concert with others who manufactured, distributed, and sold paraquat for use in Washington, or sold and used paraquat in Washington.

3.     Plaintiff brings this suit against Defendants to recover damages for personal injuries resulting from Plaintiff's exposure to paraquat over many years.

## I.    PARTIES

4.     Plaintiff Dale Smith is an individual who resides in Port Orchard, Washington.

5.     Defendants and/or their predecessors-in-interest are corporations who, at all times relevant herein, manufactured, sold, supplied, specified, required, utilized, and/or distributed paraquat[2] and/or paraquat-containing products.

6.     Defendant Chevron U.S.A., Inc., ("Chevron USA") is a foreign profit company with its principal place of business located in San Ramon, California. It and/or its predecessor-in-interest is a company who, at times relevant herein, sold, supplied, and/or distributed defective and unreasonably dangerous paraquat products in Washington, where Plaintiff Dale Smith worked with and/or around said products. Defendant Chevron USA may be served with process through its

---

[1] Paraquat dichloride (EPA Pesticide Chemical Code 061601) or paraquat methosulfate (EPA Pesticide Chemical Code 061602).

[2] Unless the context indicates otherwise, references in this complaint to "paraquat" include the chemical compound paraquat dichloride and formulated herbicide products containing paraquat dichloride as an active ingredient.

COMPLAINT FOR PERSONAL INJURIES - 2

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1    registered agent, The Prentice-Hall Corporation System, Inc., 300 Deschutes Way SW, Ste 208, Mc-

2    CSC1, Tumwater, Washington 98501.

3        7.    Defendant Chevron Phillips Chemical Company LP ("CP Chemical") is a foreign

4    profit company with its principal place of business located in The Woodlands, Texas. It and/or its

5    predecessor-in-interest is a company who, at times relevant herein, sold, supplied, and/or distributed

6    defective and unreasonably dangerous paraquat products in Washington, where Plaintiff Dale Smith

7    worked with and/or around said products. Defendant CP Chemical may be served with process

8    through its registered agent, C T Corporation System, 711 Capitol Way S., Ste. 204, Olympia,

9    Washington 98501.

10        8.    Chamberlin    Distributing    Company,    Inc.    d/b/a    Chamberlin    Agriculture

11    ("Chamberlin") is a Washington company. It is a company who, at times relevant herein, sold,

12    supplied, and/or distributed defective and unreasonably dangerous paraquat products in Washington,

13    where Plaintiff Dale Smith worked with and/or around said products. Defendant Chamberlin

14    Agriculture may be served through its registered agent, Del Vanderhoff, 590 N. Chamberlin Way,

15    Ste. A, East Wenatchee, Washington 98802.

16        9.    Northwest Wholesale Incorporated ("Northwest Wholesale") is a Washington

17    company. It is a company who, at times relevant herein, sold, supplied, and/or distributed defective

18    and unreasonably dangerous paraquat products in Washington, where Plaintiff Dale Smith worked

19    with and/or around said products. Defendant Chamberlin Agriculture may be served through its

20    registered agent, Rodney Van Orman, 5416 Enterprise Dr., East Wenatchee, Washington 98802.

21        10.    Syngenta Crop Protection, LLC ("SCPLLC") is a foreign profit company with its

22    principal place of business located in Greensboro, North Carolina. It and/or its predecessor-in-interest

23    is a company who, at times relevant herein, sold, supplied, and/or distributed defective and

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1 unreasonably dangerous paraquat products in Washington, where Plaintiff Dale Smith worked with

2 and/or around said products. Defendant Syngenta Crop Protection, LLC may be served with

3 process through its registered agent, C T Corporation System, 711 Capitol Way S, Ste. 204,

4 Olympia, Washington 98501.

5 11. Syngenta AG ("SAG") is a foreign corporation with its principal place of business

6 in Basel, Switzerland.

7 ## II. PERSONAL JURISDICTION & VENUE

8 12. Plaintiff Dale Smith was exposed to paraquat-containing products in the state of

9 Washington as a result of specific tortious actions undertaken by Defendants. Defendants are

10 corporations or other business entities organized under the laws of the various states of the United

11 States, including the State of Washington, that were and/or are doing business in the State of

12 Washington and/or were participating in a concert-of-action that was or is located or conducted in

13 or through Washington and/or had effects in Washington, including, but not limited to, the

14 violation within the state of its laws and regulations.

15 13. The Court has general jurisdiction over Defendants Chamberlin and Northwest

16 Wholesale because they are both incorporated in Washington and have their principal places of

17 business in Washington.

18 14. The Court has specific jurisdiction over the remaining Defendants because they

19 each (1) purposefully performed acts or consummated transactions in Washington, including

20 business directly related to Plaintiff's allegations herein; (2) Plaintiff's cause of action arises out

21 of and/or relates to Defendants' activities and/or transactions in Washington; and/or Defendants

22 committed a tortious act that caused or contributed Dale Smith's exposure to paraquat in

23 Washington; (3) said activities or transactions were directed in whole or in part toward the state;

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

1    and (4) assumption of jurisdiction over such out-of-state defendants by this Court does not offend

2    traditional notions of fair play and substantial justice.

3       15.     Furthermore, each Defendant: (A) (1) regularly does or solicits (and/or during the

4    relevant time period, did or solicited) business; (2) engages (and/or during the relevant time period

5    engaged) in one or more other persistent courses of conduct, including conduct related to Plaintiff's

6    allegations herein; and/or (3) derives (and/or during the relevant time period derived) substantial

7    revenue from goods used or consumed or services rendered in the state, including from products

8    and/or services at issue herein; and/or (B) expected or should reasonably have expected (and/or

9    during the relevant time period expected or should have reasonably expected) its acts to have

10   consequence in Washington and derives (and/or during the relevant time period derived)

11   substantial revenue from interstate or international commerce.

12      16.     Venue is appropriate in King County pursuant to RCW 4.12.020 and 4.12.025

13   because certain Defendants reside in King County, Washington; currently transact business in

14   King County; and/or transacted business at the time the cause of action arose in King County.  For

15   example, Defendants Chevron USA and/or CP Chemical currently own and/or operate dozens of

16   filling stations in King County.

17                              **III.    FACTS**

18   **A.    Defendants and Their Corporate Predecessors**

19       **1.    Syngenta Entities**

20      17.     In 1926, four British chemical companies merged to create the British company

21   that then was known as Imperial Chemical Industries Ltd. and ultimately was known as Imperial

22   Chemical Industries PLC ("ICI").  In or about 1971, ICI created or acquired a wholly owned U.S.

23   subsidiary organized under the laws of the State of Delaware, which at various times was known

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1    as Atlas Chemical Industries Inc., ICI North America Inc., ICI America Inc., and ICI United States

2    Inc., and ultimately was known as ICI Americas Inc. (collectively, "ICI Americas").  In or about

3    1992, ICI merged its pharmaceuticals, agrochemicals, and specialty chemicals businesses,

4    including the agrochemicals business it had operated at one time through a wholly owned British

5    subsidiary known as Plant Protection Ltd. and later as a division within ICI, into a wholly owned

6    British subsidiary known as ICI Bioscience Ltd.  In 1993, ICI demerged its pharmaceuticals,

7    agrochemicals, and specialty chemicals businesses, from which it created the Zeneca Group, with

8    the British company Zeneca Group PLC as its ultimate parent company.

9         18.    As a result of ICI's demerger and creation of the Zeneca Group, ICI Bioscience

10   Ltd. was demerged from ICI and merged into, renamed, or continued its business under the same

11   or similar ownership and management as Zeneca Ltd., a wholly owned British subsidiary of

12   Zeneca Group PLC.  Before ICI's demerger and creation of the Zeneca Group, ICI had a Central

13   Toxicology Laboratory that performed and hired others to perform health and safety studies that

14   were submitted to the U.S. Department of Agriculture ("USDA") and the U.S. Environmental

15   Protection Agency ("EPA") to secure and maintain the registration of paraquat and other pesticides

16   for use in the United States.

17        19.    As a result of ICI's demerger and creation of the Zeneca Group, ICI's Central

18   Toxicology Laboratory became Zeneca Ltd.'s Central Toxicology Laboratory.  After ICI's

19   demerger and creation of the Zeneca Group, Zeneca Ltd.'s Central Toxicology Laboratory

20   continued to perform and hire others to perform health and safety studies that were submitted to

21   EPA to secure and maintain the registration of paraquat and other pesticides for use in the United

22   States.  As a result of ICI's demerger and creation of the Zeneca Group, ICI Americas was

23   demerged from ICI and merged into, renamed, or continued its business under the same or similar

1  ownership and management as Zeneca, Inc. ("Zeneca"), a wholly owned subsidiary of Zeneca

2  Group PLC organized under the laws of the State of Delaware.

3  20. In 1996, the Swiss pharmaceutical and chemical companies Ciba-Geigy Ltd. and

4  Sandoz AG merged to create the Novartis Group, with the Swiss company Novartis AG as the

5  ultimate parent company. As a result of the merger that created the Novartis Group, Ciba-Geigy

6  Corporation, a wholly owned subsidiary of Ciba-Geigy Ltd. organized under the laws of the State

7  of New York, was merged into, or continued its business under the same or similar ownership and

8  management as Novartis Crop Protection, Inc. ("NCPI"), a wholly owned subsidiary of Novartis

9  AG organized under the laws of the State of Delaware.

10  21. In 1999, the Swedish pharmaceutical company Astra AB merged with Zeneca

11  Group PLC to create the British company AstraZeneca PLC, of which Zeneca Ltd. and Zeneca

12  were wholly owned subsidiaries. In 2000, Novartis AG and AstraZeneca PLC spun off and merged

13  the Novartis Group's crop protection and seeds businesses and AstraZeneca's agrochemicals

14  business to create the Syngenta Group, a global group of companies focused solely on

15  agribusiness, with Defendant SAG as the ultimate parent company.

16  22. As a result of the Novartis/AstraZeneca spinoff and merger that created the

17  Syngenta Group, Zeneca Ltd. was merged into, renamed, or continued its business under the same

18  or similar ownership and management as Syngenta Ltd., a wholly owned British subsidiary of

19  SAG; and Zeneca Ltd.'s Central Toxicology Laboratory became Syngenta Ltd.'s Central

20  Toxicology Laboratory. Since the Novartis/AstraZeneca spinoff and merger that created the

21  Syngenta Group, Syngenta Ltd.'s Central Toxicology Laboratory has continued to perform and

22  hire others to perform health and safety studies for submission to the EPA to secure and maintain

23  the registration of paraquat and other pesticides for use in the United States.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

23.     As a result of the Novartis/AstraZeneca spinoff and merger that created the Syngenta Group, NCPI and Zeneca were merged into and renamed, or continued to do their business under the same or similar ownership and management, as Syngenta Crop Protection, Inc. ("SCPI"), a wholly owned subsidiary of SAG organized under the laws of the State of Delaware. In 2010, SCPI was converted into Defendant SCPLLC, a wholly owned subsidiary of SAG organized and existing under the laws of the State of Delaware with its principal place of business in Greensboro, North Carolina.

24.     As a result of these various transactions, discussed *supra*:

- SAG is a successor by merger or continuation of business to its corporate predecessor Novartis AG;

- SAG is a successor by merger or continuation of business to its corporate predecessor AstraZeneca PLC;

- SAG is a successor by merger or continuation of business to its corporate predecessor Zeneca Group PLC;

- SAG is a successor by merger or continuation of business to its corporate predecessor Imperial Chemical Industries PLC, previously known as Imperial Chemical Industries Ltd.;

- SAG is a successor by merger or continuation of business to its corporate predecessor ICI Bioscience Ltd.; and

- SAG is a successor by merger or continuation of business to its corporate predecessor Plant Protection Ltd.

25.     Additionally, as a result of these various transactions, discussed *supra*:

- SCPLLC is a successor by merger or continuation of business to its corporate predecessor SCPI;

- SCPLLC is a successor by merger or continuation of business to its corporate predecessor NCPI;

- SCPLLC is a successor by merger or continuation of business to its corporate predecessor Ciba-Geigy Corporation;

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

- SCPLLC is a successor by merger or continuation of business to its corporate predecessor Zeneca Inc.; and

- SCPLLC is a successor by merger or continuation of business to its corporate predecessor ICI Americas Inc., previously known as Atlas Chemical Industries Inc., ICI North America Inc., ICI America Inc., and ICI United States Inc.

26.     SCPLLC is registered to do business in the State of Washington, and SCPLLC does substantial business in the State of Washington, including the following:

   a.   markets, advertises, distributes, sells, and delivers paraquat and other pesticides to distributors, dealers, applicators, and farmers in the State of Washington;

   b.   secures and maintains the registration of paraquat and other pesticides with the EPA and the Washington Department of Agriculture to enable itself and others to manufacture, distribute, sell, and use these products in the State of Washington; and

   c.   performs, hires others to perform, and funds or otherwise sponsors or otherwise funds the testing of pesticides in the State of Washington.

27.     SAG is a foreign corporation organized and existing under the laws of Switzerland, with its principal place of business in Basel, Switzerland. SAG is a holding company that owns stock or other ownership interests, either directly or indirectly, in other Syngenta Group companies, including SCPLLC. SAG is a management holding company.

28.     Syngenta Crop Protection AG ("SCPAG"), a Swiss corporation with its principal place of business in Basel, Switzerland, is one of SAG's direct, wholly owned subsidiaries. SCPAG employs the global operational managers of production, distribution, and marketing for the Syngenta Group's Crop Protection ("CP") and Seeds Divisions. The Syngenta Group's CP and Seeds Divisions are the business units through which SAG manages its CP and Seeds product lines. The Syngenta Group's CP and Seeds Divisions are not and have never been corporations or other legal entities.

29.     SCPAG directly and wholly owns Syngenta International AG ("SIAG"). SIAG is the "nerve center" through which SAG manages the entire Syngenta Group. SIAG employs the

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

1    "Heads" of the Syngenta Group's CP and Seeds Divisions.  SIAG also employs the "Heads" and

2    senior staff of various global functions of the Syngenta Group, including Human Resources,

3    Corporate Affairs, Global Operations, Research and Development, Legal and Taxes, and Finance.

4    Virtually all of the Syngenta Group's global "Heads" and their senior staff are housed in the same

5    office space in Basel, Switzerland.

6        30.    SAG is the indirect parent of SCPLLC through multiple layers of corporate

7    ownership:

8            a.  SAG directly and wholly owns Syngenta Participations AG;

9            b.  Syngenta Participations AG directly and wholly owns Seeds JV C.V.;

10           c.  Seeds JV C.V. directly and wholly owns Syngenta Corporation;

11           d.  Syngenta Corporation directly and wholly owns Syngenta Seeds, LLC; and

12           e.  Syngenta Seeds, LLC directly and wholly owns SCPLLC.

13       31.    Before SCPI was converted to SCPLLC, it was incorporated in Delaware, had its

14   principal place of business in North Carolina, and had its own board of directors.  SCPI's sales

15   accounted for more than 47% of the sales for the entire Syngenta Group in 2019.

16       32.    SAG has purposefully organized the Syngenta Group, including SCPLLC, in such

17   a way as to attempt to evade the authority of courts in jurisdictions in which it does substantial

18   business.  Although the formal legal structure of the Syngenta Group is designed to suggest

19   otherwise, SAG in fact exercises an unusually high degree of control over its country-specific

20   business units, including SCPLLC, through a "matrix management'' system of functional

21   reporting to global "Product Heads" in charge of the Syngenta Group's unincorporated Crop

22   Protection and Seeds Divisions, and to global "Functional Heads" in charge of human resources,

23   corporate affairs, global operations, research and development, legal and taxes, and finance.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070 ~ FACSIMILE (206) 237-8650

33.    The lines of authority and control within the Syngenta Group do not follow its formal legal structure, but instead follow this global "functional" management structure. SAG controls the actions of its far-flung subsidiaries, including SCPLLC, through this global "functional" management structure. SAG's board of directors has established a Syngenta Executive Committee ("SEC"), which is responsible for the active leadership and the operative management of the Syngenta Group, including SPLLC. The SEC consists of the CEO and various global Heads, which currently are:

    a.    The Chief Executive Officer;

    b.    Group General Counsel;

    c.    The President of Global Crop Protection;

    d.    The Chief Financial Officer;

    e.    The President of Global Seeds; and

    f.    The Head of Human Resources;

34.    SIAG employs all of the members of the Executive Committee.

35.    Global Syngenta Group corporate policies require SAG subsidiaries, including SPLLC, to operate under the direction and control of the SEC and other unincorporated global management teams. SAG's board of directors meets five to six times a year. In contrast, SCPI's board of directors rarely met, either in person or by telephone, and met only a handful of times over the last decade before SCPI became SCPLLC.

36.    Most, if not all, of the SCPI board's formal actions, including selecting and removing SCPI officers, were taken by unanimous written consent pursuant to directions from the SEC or other Syngenta Group global or regional managers that were delivered via e-mail to SCPI board members. Since SCPI became SCPLLC, decisions that are nominally made by the board or

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1    managers of SCPLLC in fact continue to be directed by the SEC or other Syngenta Group global
2    or regional managers. Similarly, Syngenta Seeds, Inc.'s board of directors appointed and removed
3    SCPI board members at the direction of the SEC or other Syngenta Group global or regional
4    managers. Since SCPI became SCPLLC, the appointment and removal of the manager(s) of
5    SCPLLC continues to be directed by the SEC or other Syngenta Group global or regional
6    managers.

7        37.    The management structure of the Syngenta Group's CP Division, of which
8    SCPLLC is a part, is not defined by legal, corporate relationships, but by functional reporting
9    relationships that disregard corporate boundaries. Atop the CP Division is the CP Leadership
10   Team (or another body with a different name but substantially the same composition and
11   functions), which includes the President of Global Crop Protection, the CP region Heads (including
12   SCPLLC President Vern Hawkins), and various global corporate function Heads. The CP
13   Leadership Team meets bi-monthly to develop strategy for new products, markets, and operational
14   efficiencies and to monitor performance of the Syngenta Group's worldwide CP business.

15       38.    Under the CP Leadership Team are regional leadership teams, including the North
16   America Regional Leadership Team (or another body with a different name but substantially the
17   same composition and functions), which oversees the Syngenta Croup's U.S. and Canadian CP
18   business (and, when previously known as the NAFTA Regional Leadership Team, also oversaw
19   the Syngenta Group's Mexican CP business). The North America Regional Leadership Team is
20   chaired by SCPLLC's president and includes employees of SCPLLC and the Syngenta Group's
21   Canadian CP company (and when previously known as the NAFTA Regional Leadership Team,
22   also included employees of the Syngenta Group's Mexican CP company).

23       39.    The Syngenta Group's U.S. and Canadian CP companies, including SCPLLC,

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

report to the North America Regional Leadership Team, which reports the CP Leadership Team, which reports to the SEC, which reports to SAG's board of directors.  Some members of the North America Regional Leadership Team, including some SCPLLC employees, report or have in the past reported not to their nominal superiors within the companies that employ them, but directly to the Syngenta Group's global Heads.  Syngenta Group global Heads that supervise SCPLLC employees participate and have in the past participated in the performance reviews of these employees and in setting their compensation.

40.    The Syngenta Group's functional reporting lines have resulted in employees of companies, including SCPLLC, reporting to officers of remote parent companies, officers of affiliates with no corporate relationship other than through SAG, or officers of subsidiary companies.  SCPLLC performs its functions according to its role in the CP Division structure:

   a. CP Division development projects are proposed at the global level, ranked, and funded at the global level after input from functional entities such as the CP Leadership Team and the North America Regional Leadership Team, and given final approval by the SEC;

   b. New CP products are developed by certain Syngenta Group companies or functional groups that manage and conduct research and development functions for the entire CP Division;

   c. These products are then tested by other Syngenta Group companies, including SCPLLC, under the direction and supervision of the SEC, the CP Leadership Team, or other Syngenta Group global managers;

   d. Syngenta Group companies, including SCPLLC, do not contract with or compensate each other for this testing;

   e. Rather, the cost of such testing is included in the testing companies' operating budgets, which are established and approved by the Syngenta Group's global product development managers and the SEC;

   f. If a product shows promise based on this testing and the potential markets for the product, either global or regional leaders (depending on whether the target market is global or regional), not individual Syngenta Group companies such as SCPLLC, decide whether to sell the product;

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

g.   Decisions to sell the product must be approved by the SEC; and

h.   The products that are sold all bear the same Syngenta trademark and logo.

41.   SCPLLC is subject to additional oversight and control by Syngenta Group global managers through a system of "reserved powers" established by SAG and applicable to all Syngenta Group companies.  These "reserved powers" require Syngenta Croup companies to seek approval for certain decisions from higher levels within the Syngenta Group's functional reporting structure.  For example, although SAG permits Syngenta Croup companies to handle small legal matters on their own, under the "reserved powers" system, SAG's Board of Directors must approve settlements of certain types of lawsuits against Syngenta Group companies, including SCPLLC, if their value exceeds an amount specified in the "reserved powers."

42.   Similarly, the appointments of senior managers at SCPLLC must be approved by higher levels than SCPLLC's own management, board of directors, or even its direct legal owner.  Although SCPLLC takes the formal action necessary to appoint its own senior managers, this formal action is in fact merely the rubber-stamping of decisions that have already been made by the Syngenta Group's global management.

43.   Although SAG subsidiaries, including SCPLLC, pay lip service to legal formalities that give the appearance of authority to act independently, in practice many of their acts are directed or pre-approved by the Syngenta Group's global management.  SAG and the global management of the Syngenta Group restrict the authority of SCPLLC to act independently in areas including:

a.   Product development;

b.   Product testing (among other things, SAG and the global management of the Syngenta Group require SCPLLC to use Syngenta Ltd.'s Central Toxicology

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

Laboratory to design, perform, or oversee product safety testing that SCPLLC submits to the EPA in support of the registrations of paraquat and other pesticides);

   c.  Production;

   d.  Marketing;

   e.  Sales;

   f.  Human resources;

   g.  Communications and public affairs;

   h.  Corporate structure and ownership

   i.  Asset sales and acquisitions

   j.  Key appointments to boards, committees, and management positions;

   k.  Compensation packages;

   l.  Training for high-level positions; and

   m.  Finance (including day-to-day cash management) and tax.

44.    Under the Syngenta Group's functional management system, global managers initiate, and the global Head of Human Resources oversees international assignments and compensation of managers employed by one Syngenta subsidiary to do temporary work for another Syngenta subsidiary in another country. This international assignment program aims, in part, to improve Syngenta Group-wide succession planning by developing corporate talent to make employees fit for higher positions within the global Syngenta Group of companies. Under this international assignment program, at the instance of Syngenta Group global managers, SCPLLC officers and employees have been "seconded" to work at other SAG subsidiaries, and officers and employees of other Syngenta Group subsidiaries have been "seconded" to work at SCPLLC.

45.    The Syngenta Group's functional management system includes a central global finance function—known as Syngenta Group Treasury—for the entire Syngenta Group. The

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

finances of all Syngenta Group companies are governed by a global treasury policy that subordinates the financial interests of SAG's subsidiaries, including SCPLLC, to the interests of the Syngenta Group as a whole. Under the Syngenta Group's global treasury policy, Syngenta Group Treasury controls daily cash sweeps from subsidiaries such as SCPLLC, holds the cash on account, and lends it to other subsidiaries that need liquidity. The Syngenta Group's global treasury policy does not allow SAG subsidiaries such as SCPLLC to seek or obtain financing from non-Syngenta entities without the approval of Syngenta Group Treasury. Syngenta Group Treasury also decides whether SCPLLC will issue a dividend or distribution to its direct parent company, and how much that dividend will be. SCPLLC's board or management approves dividends and distributions mandated by Syngenta Group Treasury without any meaningful deliberation.

46.     In 2011, a federal District Court held that SAG's unusually high degree of control over SCPLLC made SCPLLC the agent or alter ego of SAG and therefore subjected SAG to jurisdiction in the State of Illinois. *See City of Greenville, Ill. v. Syngenta Crop Protection, Inc.*, 830 F. Supp. 2d 550 (S.D. Ill. 2011). SAG continues to exercise the unusually high degree of control over SCPLLC. SAG, through its agent or alter ego, SCPLLC, does substantial business in the State of Washington, in the ways previously alleged as to SCPLLC.

## 2.     Chevron Entities

47.     Chevron Chemical Company ("Chevron Chemical") was a corporation organized in 1928 under the laws of the State of Delaware. In 1997, Chevron Chemical was merged into Chevron Chemical Company LLC ("Chevron Chemical LLC"), a limited liability company organized under the laws of the State of Delaware. In the mid-2000s, Chevron Chemical LLC was merged into or continued to operate under the same or similar ownership and management as

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 ~ FACSIMILE (206) 237-8650

1  Defendant CP Chemical, a limited partnership organized and existing under the laws of the State

2  of Delaware with its principal place of business in The Woodlands, Texas.

3      48.    As a result of these various transactions, discussed *supra*: CP Chemical is a

4  successor by merger or continuation of business to its corporate predecessor Chevron Chemical

5  LLC; and CP Chemical is a successor by merger or continuation of business to its corporate

6  predecessor Chevron Chemical.

7      49.    CP Chemical is registered to do business in the State of Washington, and does

8  substantial business in the State of Washington, including King County; among other things, it

9  owns and/or operates numerous filling stations in King County.

10      50.    Defendant Chevron USA is a corporation organized and existing under the laws of

11  the State of Pennsylvania, with its principal place of business in the State of California.  Chevron

12  USA is registered to do business in Washington.  In the mid-2000s, Chevron USA entered into an

13  agreement in which it expressly assumed the liabilities of Chevron Chemical and Chevron

14  Chemical LLC arising from Chevron Chemical's then-discontinued agrichemical business, which

15  included the design, registration, manufacture, formulation, packaging, labeling, distribution,

16  marketing, and sale of paraquat products in the United States as alleged in this Complaint.

17      **3.**    **Chamberlin**

18      51.    Defendant Chamberlin is a Washington company.  During the relevant time period,

19  Chamberlin maintained a retail location in or around Oroville, Washington, where it sold and/or

20  mixed, *inter alia*, paraquat-containing herbicides.

21      **4.**    **Northwest Wholesale**

22      52.    Defendant Northwest Wholesale is a Washington company.  Defendant Northwest

23  Wholesale is a Washington company.  During the relevant time period, Northwest Wholesale

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1    maintained a retail location in or around Oroville, Washington, where it sold and/or mixed, *inter*

2    *alia*, paraquat-containing herbicides.

3    **B.**    **Paraquat Manufacture, Distribution, and Sale**

4          53.    ICI, a legacy company of Syngenta, claims to have discovered the herbicidal

5    properties of paraquat in 1955. The leading manufacturer of paraquat is Syngenta, which (as ICI)

6    developed the active ingredient in paraquat in the early 1960s.

7          54.    ICI produced the first commercial paraquat formulation and registered it in England

8    in 1962. Paraquat was first marketed in 1962 under the brand name Gramoxone. Paraquat first

9    became commercially available for use in the United States in 1964.

10          55.    In or about 1964, ICI and Chevron Chemical entered into agreements regarding the

11    licensing and distribution of paraquat ("the ICI-Chevron Chemical Agreements"). In or about

12    1971, ICI Americas became a party to the ICI-Chevron Chemical Agreements on the same terms

13    as ICI. The ICI-Chevron Chemical Agreements were renewed or otherwise remained in effect

14    until about 1986.

15          56.    In the ICI-Chevron Chemical Agreements:

16          • ICI and ICI Americas granted Chevron Chemical a license to their patents and
17            technical information to permit Chevron Chemical to formulate or have formulated, use, and sell paraquat in the United States and to grant sub-licenses to others to do so;

18

19          • Chevron Chemical granted ICI and ICI Americas a license to its patents and
20            technical information to permit ICI and ICI Americas to formulate or have formulated, use, and sell paraquat throughout the world and to grant sub-licenses to others to do so;

21          • ICI and ICI Americas and Chevron Chemical agreed to exchange patent and
22            technical information regarding paraquat;

23          • ICI and ICI Americas granted Chevron Chemical exclusive rights to distribute and sell paraquat in the United States; and

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

- ICI and ICI Americas granted Chevron Chemical a license to distribute and sell paraquat in the U.S. under the ICI-trademarked brand name Gramoxone.

57. ICI and ICI Americas and Chevron Chemical entered into the ICI-Chevron Chemical Agreements to divide the worldwide market for paraquat between them. Under the ICI-Chevron Chemical Agreements and related agreements:

- Chevron Chemical distributed and sold paraquat in the U.S. and ICI and ICI Americas distributed and sold paraquat outside the United States.

- Both ICI and ICI Americas and Chevron Chemical distributed and sold paraquat under the ICI-trademarked brand name Gramoxone.

- ICI and ICI Americas and Chevron Chemical exchanged patent and technical information regarding paraquat.

- ICI and ICI Americas provided to Chevron Chemical health and safety and efficacy studies performed or procured by ICI's Central Toxicology Laboratory, which Chevron Chemical then submitted to the USDA and the EPA to secure and maintain the registration of paraquat for manufacture, formulation, distribution, and sale for use in the United States.

- ICI and ICI Americas manufactured and sold paraquat to Chevron Chemical that Chevron Chemical then distributed and sold in the United States, including in Washington, where Chevron Chemical registered paraquat products and marketed, advertised, and promoted them to Washington distributors, dealers, applicators, and farmers.

- Chevron Chemical distributed and sold paraquat in the United States under the ICI-trademarked brand name Gramoxone and other names, including in Washington, where Chevron Chemical registered such products and marketed, advertised, and promoted them to Washington distributors, dealers, applicators, and farmers.

58. SAG and its corporate predecessors and others with whom they acted in concert have manufactured, formulated, distributed, and sold paraquat for use in the United States from about 1964 through the present, and at all relevant times intended or expected their paraquat products to be distributed and sold in Washington, where they registered such products, and marketed, advertised, and promoted them to Washington distributors, dealers, applicators, and farmers.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

59.    SAG and its corporate predecessors and others with whom they acted in concert have submitted health and safety and efficacy studies to the USDA and the EPA to support the registration of paraquat for manufacture, formulation, distribution, and sale for use in the United States from approximately 1964 through the present.

60.    SCPLLC and its corporate predecessors and others with whom they acted in concert have manufactured, formulated, distributed, and sold paraquat for use in the United States from about 1971 through the present, and at all relevant times intended or expected their paraquat products to be distributed and sold in Washington, where they registered such products, and marketed, advertised, and promoted them to Washington distributors, dealers, applicators, and farmers.

61.    SCPLLC and its corporate predecessors and others with whom they acted in concert have submitted health and safety and efficacy studies to the EPA to support the registration of paraquat for manufacture, formulation, distribution, and sale for use in the U.S. from about 1971 through the present.

62.    Chevron Chemical manufactured, formulated, distributed, and sold paraquat for use in the United States from about 1964 through at least 1986, acting in concert with ICI and ICI Americas throughout this period, including in Washington, where Chevron Chemical registered such products, and used in Washington, and marketed, advertised, and promoted them to Washington distributors, dealers, applicators, and farmers.

C.    **Paraquat Usage**

63.    Since 1964, paraquat has been used in the U.S. to kill broadleaf weeds and grasses before the planting or emergence of more than 100 field, fruit, vegetable, and plantation crops; to control weeds in orchards; and to desiccate (dry) plants before harvest. At all relevant times, where

COMPLAINT FOR PERSONAL INJURIES - 20

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

paraquat was used, it was commonly used multiple times per year on the same land, particularly when used to control weeds in orchards or on farms with multiple crops planted on the same land within a single growing season or year, and such use was as intended or directed or reasonably foreseeable.

64.     At all relevant times, paraquat manufactured, distributed, sold, and sprayed or caused to be sprayed by Defendants, Defendants' corporate predecessors, and others with whom they acted in concert, was typically sold to end-users in the form of liquid concentrates (and less commonly in the form of granular solids) designed to be diluted with water before or after loading it into the tank of a sprayer and applied by spraying it onto target weeds.

65.     At all relevant times, concentrates containing paraquat manufactured, distributed, sold, and sprayed or caused to be sprayed by Defendants, Defendants' corporate predecessors, and others with whom they acted in concert typically were formulated with one or more "surfactants" to increase the ability of the herbicide to stay in contact with the leaf, penetrate the leaf's waxy surface, and enter into plant cells, and the accompanying instructions typically told end-users to add a surfactant or crop oil (which as typically formulated contains a surfactant) before use.

66.     At all relevant times, paraquat typically was applied with a knapsack sprayer, hand-held sprayer, aircraft (i.e., crop duster), truck with attached pressurized tank, or tractor-drawn pressurized tank, and such use was as intended or directed or was reasonably foreseeable.

D.     **Paraquat Exposure**

67.     At all relevant times, it was reasonably foreseeable that when paraquat was used in the manner intended or directed or in a reasonably foreseeable manner, users of paraquat and persons nearby would be exposed to paraquat while it was being mixed and loaded into the tanks of sprayers, including as a result of spills, splashes, and leaks.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

68.     At all relevant times, it was reasonably foreseeable that when paraquat was used in the manner intended or directed or in a reasonably foreseeable manner, persons who sprayed paraquat or were in or near areas where it was being or recently had been sprayed would be exposed to paraquat, including as a result of spray drift, the movement of herbicide spray droplets from the target area to an area where herbicide application was not intended, typically by wind, and as a result of contact with sprayed plants.

69.     At all relevant times, it was reasonably foreseeable that when paraquat was used in the manner intended or directed or in a reasonably foreseeable manner, users of paraquat and persons nearby would be exposed to paraquat, including as a result of spills, splashes, and leaks, while equipment used to spray it was being emptied or cleaned or clogged spray nozzles, lines, or valves were being cleared.

70.     At all relevant times, it was reasonably foreseeable that paraquat could enter the human body via absorption through or penetration of the skin, mucous membranes, and other epithelial tissues, including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage was present.

71.     At all relevant times, it was reasonably foreseeable that paraquat could enter the human body via respiration into the lungs, including the deep parts of the lungs where respiration (gas exchange) occurred.

72.     At all relevant times, it was reasonably foreseeable that paraquat could enter the human body via ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

73. At all relevant times, it was reasonably foreseeable that paraquat that entered the human body via ingestion into the digestive tract could enter the enteric nervous system (the part of the nervous system that governs the function of the gastrointestinal tract).

74. At all relevant times, it was reasonably foreseeable that paraquat that entered the human body, whether via absorption, respiration, or ingestion, could enter the bloodstream.

75. At all relevant times, it was reasonably foreseeable that paraquat that entered the bloodstream could enter the brain, whether through the blood-brain barrier or parts of the brain not protected by the blood-brain barrier.

76. At all relevant times, it was reasonably foreseeable that paraquat that entered the nose and nasal passages could enter the brain through the olfactory bulb (a part of the brain involved in the sense of smell), which is not protected by the blood-brain barrier.

E.   **Parkinson's Disease**

77. PD is progressive neurodegenerative disorder of the brain that affects primarily the motor system, the part of the central nervous system that controls movement. Scientists who study PD generally agree that fewer than 10% of all PD cases are caused by inherited genetic mutations alone, and that more than 90% are caused by a combination of environmental factors, genetic susceptibility, and the aging process.

1.   **Symptoms and treatment**

78. The characteristic symptoms of PD are its "primary" motor symptoms: resting tremor (shaking movement when the muscles are relaxed), bradykinesia (slowness in voluntary movement and reflexes), rigidity (stiffness and resistance to passive movement), and postural instability (impaired balance). PD's primary motor symptoms often result in "secondary'' motor symptoms such as freezing of gait; shrinking handwriting; mask-like expression; slurred,

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

monotonous, quiet voice; stooped posture; muscle spasms; impaired coordination; difficulty swallowing; and excess saliva and drooling caused by reduced swallowing movements.

79.     Non-motor symptoms-such as loss of or altered sense of smell; constipation; low blood pressure on rising to stand; sleep disturbances; and depression-are present in most cases of PD, often for years before any of the primary motor symptoms appear.

80.     There is currently no cure for PD.  No treatment will slow, stop, or reverse its progression, and the treatments most-commonly prescribed for its motor symptoms tend to become progressively less effective, and to cause unwelcome side effects, the longer they are used.

## 2.     Pathophysiology

81.     The selective degeneration and death of dopaminergic neurons (dopamine-producing nerve cells) in a part of the brain called the substantia nigra pars compacta ("SNpc") is one of the primary pathophysiological hallmarks of PD.  Dopamine is a neurotransmitter (a chemical messenger that transmits signals from one neuron to another neuron, muscle cell, or gland cell) that is critical to the brain's control of motor function (among other things).  The death of dopaminergic neurons in the SNpc decreases the production of dopamine.

82.     Once dopaminergic neurons die, they are not replaced; when enough dopaminergic neurons have died, dopamine production falls below the level the brain requires for proper control of motor function, resulting in the motor symptoms of PD.  The presence of Lewy bodies (insoluble aggregates of a protein called alpha-synuclein) in many of the remaining dopaminergic neurons in the SNpc is another of the primary pathophysiological hallmarks of PD.  Dopaminergic neurons are particularly susceptible to oxidative stress, a disturbance in the normal balance between oxidants present in cells and cells' antioxidant defenses.  Scientists who study PD generally agree that oxidative stress is a major factor in—if not the precipitating cause of—the degeneration and

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

death of dopaminergic neurons in the SNpc and the accumulation of Lewy bodies in the remaining dopaminergic neurons that are the primary pathophysiological hallmarks of PD.

**F.    Paraquat' s Toxicity**

83.    Paraquat is highly toxic to both plants and animals.  Paraquat injures and kills plants by creating oxidative stress that causes or contributes to cause the degeneration and death of plant cells.  Paraquat injures and kills humans and other animals by creating oxidative stress that causes or contributes to cause the degeneration and death of animal cells.  Paraquat creates oxidative stress in the cells of plants and animals because of "redox properties" that are inherent in its chemical composition and structure: it is a strong oxidant, and it readily undergoes "redox cycling" in the presence of molecular oxygen, which is plentiful in living cells.

84.    The redox cycling of paraquat in living cells interferes with cellular functions that are necessary to sustain life—photosynthesis in the case of plant cells and cellular respiration in the case of animal cells.  The redox cycling of paraquat in living cells creates a "reactive oxygen species" known as superoxide radical, an extremely reactive molecule that can initiate a cascading series of chemical reactions that creates other reactive oxygen species that damage lipids, proteins, and nucleic acids—molecules that are essential components of the structures and functions of living cells.  Because the redox cycling of paraquat can repeat indefinitely in the conditions typically present in living cells, a single molecule of paraquat can trigger the production of countless molecules of destructive superoxide radical.  Significantly, Paraquat's redox properties have been known since at least the 1930s.

85.    That paraquat is toxic to the cells of plants and animals because it creates oxidative stress through redox cycling has been known since at least the 1960s.  The surfactants with which the concentrates containing paraquat manufactured, distributed, and sold by Defendants,

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 ~ FACSIMILE (206) 237-8650

1    Defendants' corporate predecessors, and others with whom they acted in concert typically were

2    formulated were likely to increase paraquat's toxicity to humans by increasing its ability to stay in

3    contact with or penetrate the skin, mucous membranes, and other epithelial tissues, including

4    tissues of the mouth, nose and nasal passages, trachea, and conducting airways, the lungs, and the

5    gastrointestinal tract.

6    **G.    Paraquat and Parkinson's Disease**

7        86.    The same redox properties that make paraquat toxic to plant cells and other types

8    of animal cells make it toxic to dopaminergic neurons—paraquat is a strong oxidant that interferes

9    with the function of, damages, and ultimately kills dopaminergic neurons by creating oxidative

10   stress through redox cycling.  Although PD is not known to occur naturally in any species other

11   than humans, PD research is often performed using "animal models," in which scientists artificially

12   produce in laboratory animals, conditions that show features of PD.  Paraquat is one of only a

13   handful of toxins that scientists use to produce animal models of PD.

14       87.    In animal models of PD, hundreds of studies involving various routes of exposure

15   have found that paraquat creates oxidative stress that results in the degeneration and death of

16   dopaminergic neurons in the SNpc, other pathophysiology consistent with that seen in human PD,

17   and motor deficits and behavioral changes consistent with those commonly seen in human PD.

18   Hundreds of in vitro studies have found that paraquat creates oxidative stress that results in the

19   degeneration and death of dopaminergic neurons (and many other types of animal cells).

20   Additionally, many epidemiological studies (studies of the patterns and causes of disease in

21   defined populations) have found an association between paraquat exposure and PD, including

22   multiple studies finding a two- to five-fold or greater increase in the risk of PD in populations with

23   occupational exposure to paraquat compared to populations without such exposure.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

## H.    Paraquat Regulation

88.    The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., which regulates the distribution, sale, and use of pesticides within the United States, requires that pesticides be registered with the EPA prior to their distribution, sale, or use, except as described by FIFRA. 7 U.S.C. 136a(a).  As part of the pesticide registration process, the EPA requires, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment.

89.    As a general rule, FIFRA requires registrants to perform health and safety testing of pesticides. FIFRA does not, however, require the EPA to perform health and safety testing of pesticides itself, and the EPA generally does not perform such testing.

90.    The EPA registers (or re-registers) a pesticide if it believes, based largely on studies and data submitted by the registrant, that:

    a.  its composition is such as to warrant the proposed claims for it, 7 U.S.C. § 136a(c)(5)(A);

    b.  its labeling and other material required to be submitted comply with the requirements of FIFRA, 7 U.S.C. § 136a(c)(5)(B);

    c.  it will perform its intended function without unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(C); and

    d.  when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(D).

91.    FIFRA defines "unreasonable adverse effects on the environment" as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).  Under FIFRA, "[a]s long as no cancellation proceedings are in effect registration of a pesticide shall be prima

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

1   facie evidence that the pesticide, its labeling and packaging comply with the registration provisions

2   of [FIFRA]." 7 U.S.C. § 136a(f)(2). However, FIFRA further provides that "[i]n no event shall

3   registration of an article be construed as a defense for the commission of any offense under

4   [FIFRA]." 7 U.S.C. § 136a(f)(2).

5       92.     The distribution or sale of a pesticide that is misbranded is an offense under FIFRA,

6   which provides in relevant part that "it shall be unlawful for any person in any State to distribute

7   or sell to any person . . . any pesticide which is . . . misbranded." 7 U.S.C. § 136j(a)(1)(E). A

8   pesticide is misbranded under FIFRA if, among other things:

9           a. its labeling bears any statement, design, or graphic representation relative thereto
               or to its ingredients that is false or misleading in any particular, 7 U.S.C. §
10              136(q)(1)(A);

11          b. the labeling accompanying it does not contain directions for use which are
               necessary for effecting the purpose for which the product is intended and if
12             complied with, together with any requirements imposed under Section 136a(d) of
               the title, are adequate to protect health and the environment, 7 U.S.C. §
13             136(q)(1)(F); or

14          c. the label does not contain a warning or caution statement that may be necessary and
               if complied with, together with any requirements imposed under section 136a(d) of
15             the title, is adequate to protect health and the environment," 7 U.S.C. §
               136(q)(l)(G).

16

17      93.     Plaintiff does not seek in this action to impose on Defendants any labeling or

18   packaging requirement in addition to or different from those required under FIFRA; accordingly,

     any allegation in this complaint that a Defendant breached a duty to provide adequate directions

19   for the use of paraquat or warnings about paraquat, breached a duty to provide adequate packaging

20   for paraquat, or concealed, suppressed, or omitted to disclose any material fact about paraquat or

21   engaged in any unfair or deceptive practice regarding paraquat, that allegation is intended and

22   should be construed to be consistent with that alleged breach, concealment, suppression, or

23   omission, or unfair or deceptive practice, having rendered the paraquat "misbranded" under

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

FIFRA; however, Plaintiff brings claims and seeks relief in this action only under state law, and do not bring any claims or seek any relief in this action under FIFRA.

## I.    **Plaintiff Dale Smith's Paraquat Exposure**

94.    Plaintiff Dale Smith (DOB: 4/17/61; SSN: ####-##-9591) was exposed to Paraquat and/or paraquat-containing products, which had been manufactured, supplied, produced, mixed and/or placed into the stream of commerce by Defendants.

95.    More specifically, beginning in or around 1973 and continuing up through approximately 1980, Dale Smith used a sprayer hitched to a tractor to spray paraquat and/or paraquat-containing products in the course of his work at an apple orchard owned by Gordon Roberts, deceased, in or around Oroville, Washington.  This paraquat and/or paraquat-containing product was purchased at a Northwest Wholesale store in or around Oroville, Washington, and designed, manufactured, distributed and/or sold by Chevron U.S.A, CP Chemical, Syngenta and/or Syngenta AG.

96.    Beginning in approximately 1984 and continuing until approximately 1998, Dale Smith sprayed Paraquat and/or paraquat-containing products in the course of his work as the groundskeeper for Oroville Grade School and Oroville High School in Oroville, Washington.  This Paraquat and/or paraquat-containing product was purchased at a Chamberlin store in or around Oroville, Washington, and designed, manufactured, distributed and/or sold by Chevron U.S.A, CP Chemical, Syngenta and/or Syngenta AG.

97.    As a direct and proximate result of this exposure, Plaintiff Dale Smith developed Parkinson's disease ("PD"), which he was diagnosed with on or about 1997.  He has now suffered with PD for roughly 24 years.

98.    Critically, before approximately April 26, 2021:

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

- No doctor told Plaintiff Dale Smith that his Parkinson's disease was or could have been caused by exposure to paraquat.

- Plaintiff Dale Smith had never read or heard of any articles in newspapers, scientific journals, or other publications that associated Parkinson's disease with paraquat.

- Plaintiff Dale Smith had never read or heard of any lawsuit alleging that paraquat causes Parkinson's disease.

Moreover, at no time when using paraquat himself was Plaintiff Dale Smith aware that exposure to paraquat could cause any latent injury, including any neurological injury or Parkinson's disease, or that any precautions were necessary to prevent any latent injury that could be caused by exposure to paraquat.

99.    The paraquat to which Plaintiff Dale Smith was exposed was sold and used in Washington, and was manufactured, distributed, and, on information and belief, sold by one or more of the Defendants and their corporate predecessors and others with whom they acted in concert intending or expecting that it would be sold and used in Washington.

100.    On information and belief, Plaintiff Dale Smith was exposed to paraquat:

- manufactured, distributed, and sold at different times as to each Defendant, its corporate predecessors, and others with whom they acted in concert, and not necessarily throughout the entire period of his exposure as to any particular Defendant, its corporate predecessors, and others with whom they acted in concert;

- that was sold and used in Washington, and was manufactured, distributed, and sold by SCPLLC, its corporate predecessors, and others with whom they acted in concert, including Chevron Chemical, intending, or expecting that it would be sold and used in Washington;

- that was sold and used in Washington, and was manufactured, distributed, and sold by SAG, its corporate predecessors, and others with whom they acted in concert, including Chevron Chemical, intending, or expecting that it would be sold and used in Washington;

- that was sold and used in Washington, and was manufactured, distributed, and sold by Chevron Chemical, acting in concert with ICI and ICI Americas, intending or expecting that it would be sold and used in Washington; and

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

- that was sold and used in Washington and was distributed and sold by Chamberlin and Northwest Wholesale.

## IV.  CLAIMS

101.    Plaintiff claims liability against Defendants based upon the theories of common law negligence; strict product liability, negligence, and breach of express and implied warranties under the Washington Product Liability Act (WPLA), RCW 7.72 *et seq*.; strict product liability under Section 402A and 402B of the Restatement of Torts; conspiracy; and any other applicable theory of liability.  The liability-creating conduct of Defendants consisted of negligent and unsafe design; failure to inspect, test, warn, instruct, monitor, and/or recall; failure to substitute safe products; marketing or installing unreasonably dangerous or extra-hazardous and/or defective products; marketing or installing products not reasonably safe as designed; and marketing or installing products not reasonably safe for lack of adequate warning and marketing or installing products with misrepresentations of product safety.

## COUNT ONE: NEGLIGENCE

### (Against All Defendants)

102.    Plaintiff repeats and realleges paragraphs 1-101 as though fully set forth herein.

103.    At all times relevant to this claim, Defendants, Defendants' corporate predecessors, and others with whom they acted in concert were engaged in the business of designing, manufacturing, distributing, and selling herbicides, and designed, manufactured, distributed, and sold paraquat.

104.    The paraquat that Defendants, Defendants' corporate predecessors, and others with whom they acted in concert designed, manufactured, distributed, and sold and to which Plaintiff was exposed was used in the intended and directed manner or a reasonably foreseeable manner.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

105.    At all times relevant to this claim, in designing, manufacturing, packaging, labeling, distributing, and selling paraquat, and in acting in concert with others who did so, Defendants, Defendants' corporate predecessors, and others with whom they acted in concert owed a duty to exercise ordinary care for the health and safety of the persons whom it was reasonably foreseeable could be exposed to it, including Plaintiff.

106.    When Defendants, Defendants' corporate predecessors, and others with whom they acted in concert designed, manufactured, packaged, labeled, distributed, and sold the paraquat to which Plaintiff was exposed, it was reasonably foreseeable, and Defendants, Defendants' corporate predecessors, and others with whom they acted in concert knew or in the exercise of ordinary case should have known, that when paraquat was used in the intended and directed manner or a reasonably foreseeable manner:

a.  it was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

b.  when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed, it was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including PD, to develop long after exposure.

107.    In breach of the aforementioned duty to Plaintiff, Defendants, Defendants' corporate predecessors, and others with whom they acted in concert negligently:

a.  failed to design, manufacture, formulate, and package paraquat to make it unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed;

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1

2

3

4

    b.  designed, manufactured, and formulated paraquat such that when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed, it was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including PD, to develop long after exposure;

5

6

7

    c.  failed to perform adequate testing to determine the extent to which exposure to paraquat was likely to occur through inhalation, ingestion, and absorption into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed;

8

9

10

    d.  failed to perform adequate testing to determine the extent to which paraquat spray drift was likely to occur, including its propensity to drift, the distance it was likely to drift, and the extent to which paraquat spray droplets were likely to enter the bodies of persons spraying it or other persons nearby during or after spraying;

11

12

13

14

    e.  failed to perform adequate testing to determine the extent to which paraquat, when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed, was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including PD, to develop long after exposure;

15

16

17

18

19

    f.  failed to perform adequate testing to determine the extent to which paraquat, when formulated or mixed with surfactants or other pesticides or used along with other pesticides, and inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed, was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including PD, to develop long after exposure;

20

21

22

    g.  failed to direct that paraquat be used in a manner that would have made it unlikely to have been inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

23

    h.  failed to warn that when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed,

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

paraquat was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including PD, to develop long after exposure.

108.     As a direct and proximate result of the negligence of Defendants, their corporate predecessors, and others with whom they acted in concert, Plaintiff developed PD; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

## COUNT TWO: STRICT PRODUCT LIABILITY – DESIGN DEFECT

### (Against Defendants Chevron USA, CP Chemical, SCPLLC and SAG)

109.     Plaintiff repeats and realleges paragraphs 1-108 as though fully set forth herein.

110.     At all relevant times, Defendants, Chevron USA, CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in concert were engaged in the U.S. paraquat business.

111.     At all relevant times, Defendants Chevron USA, CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in concert were engaged in the business of designing, manufacturing, distributing, and selling pesticides, and designed, manufactured, distributed, and sold paraquat.

112.     The paraquat that Defendants Chevron USA, CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in concert designed, manufactured, distributed, and sold and to which Plaintiff was exposed was in a defective condition that made it unreasonably dangerous, in that when used in the intended and directed manner or a reasonably

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1    foreseeable manner:

2       a.  it was designed, manufactured, formulated, and packaged such that it was likely to
           be inhaled, ingested, and absorbed into the bodies of persons who used it, who were
3          nearby while it was being used, or who entered fields or orchards where it had been
           sprayed or areas near where it had been sprayed; and
4
5       b.  when inhaled, ingested, or absorbed into the bodies of persons who used it, who
           were nearby while it was being used, or who entered fields or orchards where it had
6          been sprayed or areas near where it had been sprayed, it was likely to cause or
           contribute to cause latent neurological damage that was both permanent and
7          cumulative, and repeated exposures were likely to cause or contribute to cause
           clinically significant neurodegenerative disease, including PD, to develop long
           after exposure.
8
9    113.    This defective condition existed in the paraquat that Defendants Chevron USA, CP

10   Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in

11   concert designed, manufactured, distributed, and sold and to which Plaintiff was exposed when it

12   left the control of Defendants Chevron USA, CP Chemical, SCPLLC and SAG, their corporate

13   predecessors, and others with whom they acted in concert and was placed into the stream of

14   commerce.

15   114.    As a result of this defective condition, the paraquat that Defendants Chevron USA,

16   CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted

17   in concert designed, manufactured, distributed, and sold and to which Plaintiff was exposed either

18   failed to perform in the manner reasonably to be expected in light of its nature and intended

19   function, or the magnitude of the dangers outweighed its utility. The paraquat that Defendants,

20   Defendants' corporate predecessors, and others with whom they acted in concert designed,

21   manufactured, distributed, and sold and to which Plaintiff was exposed was used in the intended

22   and directed manner or a reasonably foreseeable manner.

23

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

**COUNT THREE: STRICT PRODUCT LIABILITY: FAILURE TO WARN**

**(Against Defendants Chevron USA, CP Chemical, SCPLLC and SAG)**

115.    Plaintiff repeats and realleges paragraphs 1-114 as though fully set forth herein.

116.    At all times relevant to this claim, Defendants Chevron USA, CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in concert were engaged in the business of designing, manufacturing, distributing, and selling pesticides, and designed, manufactured, distributed, and sold paraquat.

117.    When Defendants Chevron USA, CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in concert designed, manufactured, distributed, and sold the paraquat to which Plaintiff was exposed, Defendants Chevron USA, CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in concert knew or in the exercise of ordinary care should have known that when used in the intended and directed manner or a reasonably foreseeable manner:

   a.  it was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

   b.  when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed, it was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including PD, to develop long after exposure.

118.    The paraquat that Defendants Chevron USA, CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in concert designed, manufactured, distributed, and sold and to which Plaintiff was exposed was in a defective condition that made it unreasonably dangerous when it was used in the intended and directed manner or a reasonably

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

1 foreseeable manner, in that:

2     a. it was not accompanied by directions for use that would have made it unlikely to
3        be inhaled, ingested, and absorbed into the bodies of persons who used it, who were
       nearby while it was being used, or who entered fields or orchards where it had been
       sprayed or areas near where it had been sprayed; and

4

5     b. it was not accompanied by a warning that when inhaled, ingested, or absorbed into
       the bodies of persons who used it, who were nearby while it was being used, or who
6        entered fields or orchards where it had been sprayed or areas near where it had been
       sprayed, it was likely to cause or contribute to cause latent neurological damage
7        that was both permanent and cumulative, and that repeated exposures were likely
       to cause or contribute to cause clinically significant neurodegenerative disease,
       including PD, to develop long after exposure.

8

9     119. This defective condition existed in the paraquat that Defendants Chevron USA, CP

10 Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in

11 concert designed, manufactured, distributed, and sold and to which Plaintiff was exposed when it

12 left the control of Defendants Chevron USA, CP Chemical, SCPLLC and SAG, their corporate

13 predecessors, and others with whom they acted in concert and was placed into the stream of

commerce.

14

15     120. As a result of this defective condition, the paraquat that Defendants Chevron USA,

16 CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted

17 in concert designed, manufactured, distributed, and sold and to which Plaintiff was exposed either

18 failed to perform in the manner reasonably to be expected in light of its nature and intended

function, or the magnitude of the dangers outweighed its utility.

19

20     121. The paraquat that Defendants Chevron USA, CP Chemical, SCPLLC and SAG,

21 their corporate predecessors, and others with whom they acted in concert designed, manufactured,

22 distributed, and sold and to which Plaintiff was exposed was used in the intended and directed

manner or a reasonably foreseeable manner.

23

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

122.    As a direct and proximate result of the lack of adequate directions for the use of and warnings about the dangers of the paraquat manufactured, distributed and sold by Defendants Chevron USA, CP Chemical, SCPLLC and SAG, their corporate predecessors, and others with whom they acted in concert, Plaintiff developed PD; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

## COUNT FOUR: BREACH EXPRESSED AND IMPLIED WARRANTIES

### (Against All Defendants)

123.    Plaintiff repeats and realleges paragraphs 1-122 as though fully set forth herein.

124.    At all times relevant to this claim, Defendants, Defendants' corporate predecessors, and others with whom they acted in concert were engaged in the business of designing, manufacturing, distributing, and selling paraquat and other restricted-use pesticides and themselves out as having knowledge or skill regarding paraquat and other restricted-use pesticides.

125.    At all times relevant to this claim, Defendants, Defendants' corporate predecessors, and others with whom they acted in concert designed, manufactured, distributed, and sold paraquat.

126.    At the time of each sale of paraquat to which Plaintiff was exposed, Defendants, Defendants' corporate predecessors, and others with whom they acted in concert expressly and impliedly warranted that it was of merchantable quality, including that it was fit for the ordinary purposes for which such goods were used.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

127.    Defendants, Defendants' corporate predecessors, and others with whom they acted

in concert breached this warranty regarding each sale of paraquat to which Plaintiff was exposed,

in that it was not of merchantable quality because it was not fit for the ordinary purposes for which

such goods were used, and in particular:

> a. it was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and
>
> b. when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed, it was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including PD, to develop long after exposure.

128.    As a direct and proximate result of these breaches of express and implied warranties

by Defendants, their corporate predecessors, and others with whom they acted in concert, Plaintiff

developed PD; has suffered severe and permanent physical pain, mental anguish, and disability,

and will continue to do so for the remainder of his life; has suffered the loss of a normal life and

will continue to do so for the remainder of his life; has lost income that he otherwise would have

earned and will continue to do so for the remainder of his life; and has incurred reasonable

expenses for necessary medical treatment and will continue to do so for the remainder of his life.

## V.    REQUESTED RELIEF

129.    Plaintiff repeats and realleges paragraphs 1-128 as though fully set forth herein.

130.    As a proximate result of Defendants' negligence and/or product liability and/or

other basis of liability, Plaintiff Dale Smith sustained pain, suffering, and disability in an amount

not now known, but which will be proven at trial. Plaintiff Dale Smith is entitled to damages for

his physical pain and suffering, mental anguish, anxiety, physical impairment, disability,

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

1  disfigurement, loss of enjoyment of life, and his reasonable and necessary medical bills and other

2  expenses incurred as a result of his Parkinson's disease. Plaintiff Dale Smith sustained medical

3  expenses and economic losses in an amount to be proven at trial.

4      WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as

5  follows:

6      a.  Physical pain and suffering in the past and which, in reasonable probability, he will
         continue to suffer in the future;

7
8      b.  Physical impairment and incapacity in the past and which, in reasonable probability,
         he will continue to suffer in the future;

9      c.  Pain, suffering and mental anguish in the past and which, in reasonable probability, he
         will sustain in the future;

10
11     d.  Reasonable and necessary medical expenses for treatment received in the past and
         based upon reasonable medical probability, the reasonable medical expenses he will
         need in the future;

12
13     e.  Disfigurement in the past and which, in reasonable probability, he will continue to
         suffer in the future;

14     f.  Disability in the past and which, in reasonable probability, he will continue to suffer in
         the future;

15
16     g.  The lost earnings and loss of future earning capacity and value of future loss of
         household services of Plaintiff Dale Smith;

17     h.  Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action
         relevant to this action;

18
19     i.  Plaintiff be awarded all appropriate costs, fees, expenses, and pre-judgment and post
         judgment interest pursuant to the laws of the State of Washington as authorized by law
         on the judgments entered in Plaintiff's behalf;

20     j.  Other damages contemplated by law in amounts to be determined at trial; and

21
22     k.  Such other relief the court deems just and proper.

23

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1    DATED this _21st_ day of June 2021.

2

3                                              WEINSTEIN CAGGIANO PLLC

4

5                                              Brian D. Weinstein, WSBA No. 24497
                                               Alexandra B. Caggiano, WSBA No. 47862
6                                              Dylan J. Johnson, WSBA No. 54147
                                               600 University Street, Suite 1620
7                                              Seattle, Washington 98101
                                               Phone: (206) 508-7070
8                                              Fax: (206) 237-8650

9                                              Counsel for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

# EXHIBIT B

## <u>RETURN OF SERVICE</u>

### IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
### IN AND FOR THE COUNTY OF KING

Case Number: 21-2-08160-2 SEA

Plaintiff:
**DALE SMITH**

vs.

Defendant:
**CHEVRON U.S.A., INC.**

Service Documents:
Summons, Complaint for Personal
Injuries, Case Information Sheet, Area
Designation and Order Setting Civil
Asbestos Case Schedule, Affidavit of
Compliance, Demand for Six (6) Person
Jury, Notice of Consent To Accept
Electronic Service per CR5(b)(7)

Received on 22nd of June, 2021 at 3:30 pm, to be executed at 5416 Enterprise Dr., East Wentachee, WA 98802 within the county of Douglas by delivering to Northwest Wholesale, Inc., through its Registered Agent, Rodney Van Orman.

I, Karla D Brooks, do hereby affirm that on the 29th day of June, 2021 at 12:26 pm, I:

served a REGISTERED AGENT by delivering a true copy of the Summons, Complaint for Personal Injuries, Case Information Sheet, Area Designation and Order Setting Civil Asbestos Case Schedule, Affidavit of Compliance, Demand for Six (6) Person Jury, Notice of Consent To Accept Electronic Service per CR5(b)(7) with the date and hour of service endorsed thereon by me, to: Rodney Van Orman as Registered Agent at the address of: 5416 Enterprise Dr., East Wenatchee, WA 98802 on behalf of Northwest Wholesale, Inc..

## RETURN OF SERVICE For 21-2-08160-2 SEA

I certify that I am over the age of 18, have no interest in the above action, and declare under penalty of
perjury in the State of Washington that the statements contained herein are true and correct.  Signed this
30 day of June , 2021 , at Wenatchee , Washington.

Karla D Brooks
WA Chelan County #72

Our Job Serial Number: BRO-2021000230

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1c

# EXHIBIT C

1

2

DEPARTMENT 34

Trial Date: October 7, 2024

3

4

5

6

7

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8

DALE SMITH,

Plaintiff,

v.

CHEVRON U.S.A., INC., et al.,

Defendants.

9

NO. 21-2-08160-2 SEA

DECLARATION OF SERVICE

10

11

12

13

14

I, Julia Crippen, declare and state as follows:

15

I am and at all times herein a citizen of the United States, a resident of King County,

16

Washington, and am over the age of 18 years.

17

On the 26th day of March, 2024, I caused to be served true and correct copies of the

18

following documents to the counsel listed below:

19

1.       Note for Judge's Motion Docket

20

2.       Plaintiff's Motion to Compel Defendant Northwest Wholesale, Inc.'s Responses

21

to Plaintiff's Discovery Requests;

22

23

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070 – Facsimile (206) 237-8650

1    3.    Declaration of Gibbs C. Henderson in Support of Plaintiff's Motion To Compel

2    Defendant Northwest Wholesale, Inc.'s Responses To Plaintiff's Discovery Requests, *with*

3    *accompanying exhibits*;

4    4.    Declaration of Service.

| | | |
|---|---|---|
| **CO-COUNSEL FOR PLAINTIFFS**<br>Gibbs Henderson, TX Bar No. 24041084<br>Charles P. Stern, TX Bar No. 24106466<br>   (*To Be Admitted Pro Hac Vice*)<br>NACHAWATI LAW GROUP<br>5489 Blair Road<br>Dallas, Texas 75231<br>Phone: (214) 890-0711<br>Email: ghenderson@ntrial.com<br>Email: cstern@ntrial.com<br>Email: ewood@ntrial.com<br>Email: clopez@ntrial.com | (  )<br>(  )<br>(  )<br>(  )<br>( X ) | Legal Messenger<br>King County E-Service<br><br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |
| **COUNSEL FOR CHAMBERLIN**<br>**DISTRIBUTING COMPANY, INC., D/B/A**<br>**CHAMBERLIN AGRICULTURE**<br><br>Megan Cook, WSBA No. 45943<br>BULLIVANT HOUSER BAILEY PC<br>1 SW Columbia Street, Suite 800<br>Portland OR 97204<br>Phone:  (503) 228-6351<br>Email: megan.cook@bullivant.com<br>Email:  michele.snyder@bullivant.com<br><br>Daniel J. Park, WSBA No. 43748<br>BULLIVANT HOUSER BAILEY PC<br>925 Fourth Avenue, Suite 3800<br>Seattle, Washington 98104<br>Phone:  (206) 292-8930<br>Email: daniel.park@bullivant.com<br><br>Tyler D. Hotchkiss, WSBA No. 40604<br>Mari Foreman Groff, WSBA No. 56030<br>FOREMAN, HOTCHKISS, BAUSCHER &<br>ZIMMERMAN, PLLC<br>124 N Wenatchee Ave., Ste. A<br>Wenatchee, WA  98801-2239<br>Phone:  (509) 662-9602 | (  )<br>(  )<br>(  )<br>(  )<br>( X )<br>(  ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

**WEINSTEIN CAGGIANO PLLC**<br>**600 UNIVERSITY STREET, SUITE 1620**<br>**SEATTLE, WASHINGTON  98101**<br>(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| 1 | Email: tyler@fhbzlaw.com<br>Email: mari@fhbzlaw.com | | |
| 2 | | | |
| 3 | **COUNSEL FOR CHEVRON U.S.A. INC.** | ( ) | Legal Messenger |
| | | ( ) | King County E-Service |
| | Tyler L. Farmer, WSBA #39912 | ( ) | U.S. Mail |
| 4 | Chelsey L. Mam, WSBA #44609 | ( ) | Federal Express |
| | Elisabeth Read, WSBA #59762 | ( X ) | E-Mail |
| 5 | HARRIGAN LEYH FARMER & THOMSEN LLP | ( ) | Hand Deliver |
| | 999 Third Avenue, Suite 4400 | | |
| 6 | Seattle, WA 98104 | | |
| | Tel:    (206) 623-1700; Fax:  (206) 623-8717 | | |
| 7 | email: tylerf@harriganleyh.com | | |
| | email: chelseym@harriganleyh.com | | |
| 8 | email:  elisabeth.read@harriganleyh.com | | |
| | email:  KellieM@harriganleyh.com | | |
| 9 | email: erinf@harriganleyh.com | | |
| | | | |
| 10 | Jason Levin, WSBA #21964 | | |
| | ALSTON & BIRD LLP | | |
| 11 | 333 South Hope Street, 16th Floor | | |
| | Los Angeles, CA 90071-1410 | | |
| 12 | Telephone: 213-576-1000 | | |
| | Email: jason.levin@alston.com | | |
| 13 | Email: dana.camacho@alston.com | | |
| | | | |
| 14 | Debra Belott, DC Bar #993507 | | |
| | *Admitted Pro Hac Vice* | | |
| 15 | JONES DAY | | |
| | 51 Louisiana Ave. N.W. | | |
| 16 | Washington, DC 20001-2113 | | |
| | Tel:    (202) 879-3689 | | |
| 17 | Email: dbelott@jonesday.com | | |
| | | | |
| 18 | Michael A. Magee, PA #314489 | | |
| | *Admitted Pro Hac Vice* | | |
| 19 | JONES DAY | | |
| | 500 Grant Street, Suite 4500 | | |
| 20 | Pittsburgh, Pennsylvania 15219-2514 | | |
| | Phone:  412.394.7296 | | |
| 21 | Fax:    412.394.7959 | | |
| | Email:  mmagee@jonesday.com | | |
| 22 | | | |
| | Leon F. DeJulius Jr., NY Bar No. 5817275 | | |
| 23 | *(To Be Admitted Pro Hac Vice)* | | |
| | Sharyn A. Reisman, NY Bar No. 2889251 | | |

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| *(To Be Admitted Pro Hac Vice)*<br>JONES DAY<br>250 Vesey Street<br>New York, NY 10281-1047<br>Phone:  212-326-3830<br>Email: lfdejulius@jonesday.com<br>Email: sareisman@jonesday.com<br><br>Michael F. Gosling, CA Bar No. 305845<br>*(To Be Admitted Pro Hac Vice)*<br>JONES DAY<br>4655 Executive Drive, Suite 1500<br>San Diego, CA 92121<br>Phone:  858-314-1143<br>Email:  mgosling@jonesday.com<br><br>Danielle R. Leneck, CA Bar No. 313052<br>*(To Be Admitted Pro Hac Vice)*<br>JONES DAY<br>555 S. Flower Street, Floor 50<br>Los Angeles, CA 90071-2452<br>Phone:  213-243-2683<br>Email: dleneck@jonesday.com | | |
| **COUNSEL FOR NORTHWEST WHOLESALE, INC.**<br><br>Shawna M. Lydon, WSBA #34238<br>BETTS PATTERSON & MINES, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA 98101<br>Phone: 206-292-9988<br>slydon@bpmlaw.com<br>lbrown@bpmlaw.com<br>carkins@bpmlaw.com<br>dmarsh@bpmlaw.com<br><br>Thomas F. O'Connell, WSBA No. 16539<br>DAVIS, ARNEIL LAW FIRM, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551<br>Email: tom@dadkp.com<br>Email: kate@dadkp.com | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |
| **COUNSEL FOR SYNGENTA CROP PROTECTION, LLC** | ( )<br>( ) | Legal Messenger<br>King County E-Service |

DECLARATION OF SERVICE  - 4

| | | |
|---|---|---|
| **( )** | U.S. Mail | |
| **( )** | Federal Express | |
| **( X )** | E-Mail | |
| **( )** | Hand Deliver | |

Angelo J. Calfo, WSBA No. 27079
Andrew DeCarlow, WSBA No. 54471
MORGAN, LEWIS & BOCKIUS LLP
1301 2nd Ave, Suite 3000
Seattle, WA 98101-3808
Phone: 206-274-6400
Fax: 206-274-6401
Email: angelo.calfo@morganlewis.com
Email: andrew.decarlow@morganlewis.com
Email: lixi.colmenero@morganlewis.com
Email: trang.la@morganlewis.com

Ragan Naresh, DC No. 984732
*Admitted Pro Hac Vice*
Nick Aquart
      *(Pro Hac Vice to be submitted)*
Patrick L. Butler
      *(Pro Hac Vice to be submitted)*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, D.C. 20004
Phone: (202) 389-5151
Email: ragan.naresh@kirkland.com
Email: nick.aquart@kirkland.com

Paul J. Sampson
*Admitted Pro Hac Vice*
Christopher D. Mack
*Admitted Pro Hac Vice*
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Phone: (801) 877- 8100
Email: paul.sampson@kirkland.com
Email: chris.mack@kirkland.com

Leslie Smith, IL No. 6275944
*Admitted Pro Hac Vice*
Brad Weidenhammer, IL No. 6284229
*Admitted Pro Hac Vice*
Cassandra Catalano, IL No. 6324399
      *(To Be Admitted Pro Hac Vice)*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Phone: (312) 862-2141

DECLARATION OF SERVICE  - 5

| Email: lsmith@kirkland.com<br>Email: bweidenhammer@kirkland.com<br>Email: cassandra.catalano@kirkland.com<br>Email: julie.siegal@kirkland.com | | |
|---|---|---|

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED at Seattle, Washington, this 26th day of March, 2024.

*s/ Julia Crippen*
Julia Crippen
Legal Assistant

DECLARATION OF SERVICE - 6

**WEINSTEIN CAGGIANO PLLC**
**600 UNIVERSITY STREET, SUITE 1620**
**SEATTLE, WASHINGTON 98101**
(206) 508-7070 – Facsimile (206) 237-8650

# EXHIBIT D

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

THE HONORABLE ANGELA KAAKE
Trial Date: October 7, 2024

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

DALE SMITH,

     Plaintiff,

v.

CHEVRON U.S.A., INC., et al.,

     Defendants.

NO. 21-2-08160-2 SEA

DECLARATION OF SERVICE

I, Julia Crippen, declare and state as follows:

I am and at all times herein a citizen of the United States, a resident of King County, Washington, and am over the age of 18 years.

On the 26th day of April, 2024, I caused to be served true and correct copies of the following documents to the counsel listed below:

1.     Note for Judge's Motion Docket;

2.     Plaintiff's Motion To Strike Defendant Northwest Wholesale, Inc.'s Disclosure of Possible Primary Witnesses;

3.     Declaration of Charles P. Stern in Support of Plaintiff's Motion To Strike Defendant Northwest Wholesale, Inc.'s Disclosure of Possible Primary Witnesses, *with accompanying exhibits*;

DECLARATION OF SERVICE - 1

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – Facsimile (206) 237-8650

1       4.      Declaration of Service

| | | |
|---|---|---|
| **CO-COUNSEL FOR PLAINTIFFS** | ( ) | Legal Messenger |
| Gibbs Henderson, TX Bar No. 24041084 | ( ) | King County E-Service |
| *Admitted Pro Hac Vice* | ( ) | |
| Charles P. Stern, TX Bar No. 24106466 | ( ) | U.S. Mail |
| *Admitted Pro Hac Vice* | ( ) | Federal Express |
| NACHAWATI LAW GROUP | **( X )** | E-Mail |
| 5489 Blair Road, | | Hand Deliver |
| Dallas, Texas 75231 | | |
| Phone: (214) 890-0711 | | |
| Email: ghenderson@ntrial.com | | |
| Email: cstern@ntrial.com | | |
| Email: ewood@ntrial.com | | |
| Email: clopez@ntrial.com | | |
| Email: rhernandez@ntrial.com | | |
| | | |
| Khaldoun A. Baghdadi, CA Bar No. 190111 | | |
| *Admitted Pro Hac Vice* | | |
| Michael A. Kelly, CA Bar No.  71460 | | |
| *Admitted Pro Hac Vice* | | |
| Sara M. Peters, CA Bar No. 260610 | | |
| *Admitted Pro Hac Vice* | | |
| WALKUP, MELODIA, KELLY & SCHOENBERGER | | |
| 650 California Street, 26th Floor | | |
| San Francisco, CA 94108 | | |
| Phone: (415) 981-7210 | | |
| Email:  kbaghdadi@walkuplawoffice.com | | |
| Email:  mkelly@walkuplawoffice.com | | |
| Email:  speters@walkuplawoffice.com | | |
| Email**:** lmiranda@WalkupLawOffice.com | | |
| Email**:** lconnors@walkuplawoffice.com | | |
| Email: afreeman@walkuplawoffice.com | | |
| | | |
| Peter Flowers, IL Bar No. 06210847 | | |
| *Admitted Pro Hac Vice* | | |
| MEYERS & FLOWERS, LLC | | |
| 3 North Second St, Suite 300 | | |
| St. Charles, IL 60174 | | |
| Phone:  (630) 232-6333 | | |
| Email**:**  pjf@meyers-flowers.com | | |
| | | |
| Robert E. Kennedy, Ohio Bar No.  0006174 | | |
| *Admitted Pro Hac Vice* | | |
| David C. Landever, Ohio Bar No.  0065377 | | |
| *Admitted Pro Hac Vice* | | |

**WEINSTEIN CAGGIANO PLLC**
**600 UNIVERSITY STREET, SUITE 1620**
**SEATTLE, WASHINGTON  98101**
(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| WEISMAN KENNEDY & BERRIS CO LPA<br>2900 Detroit Avenue, 2nd Floor<br>Cleveland, OH  44113<br>Phone:  (216) 789-2130<br>Phone:  (216) 781-1111<br>Email**:** ekennedy@weismanlaw.com<br>Email**:** dlandever@weismanlaw.com<br>Email**:** drozman@weismanlaw.com | | |
| **COUNSEL FOR CHAMBERLIN**<br>**DISTRIBUTING COMPANY, INC., D/B/A**<br>**CHAMBERLIN AGRICULTURE**<br><br>Megan Cook, WSBA No. 45943<br>BULLIVANT HOUSER BAILEY PC<br>1 SW Columbia Street, Suite 800<br>Portland OR 97204<br>Phone:  (503) 228-6351<br>Email: megan.cook@bullivant.com<br>Email:  michele.snyder@bullivant.com<br><br>Daniel J. Park, WSBA No. 43748<br>BULLIVANT HOUSER BAILEY PC<br>925 Fourth Avenue, Suite 3800<br>Seattle, Washington 98104<br>Phone:  (206) 292-8930<br>Email: daniel.park@bullivant.com<br><br>Tyler D. Hotchkiss, WSBA No. 40604<br>Mari Foreman Groff, WSBA No. 56030<br>FOREMAN, HOTCHKISS, BAUSCHER &<br>ZIMMERMAN, PLLC<br>124 N Wenatchee Ave., Ste. A<br>Wenatchee, WA  98801-2239<br>Phone:  (509) 662-9602<br>Email: tyler@fhbzlaw.com<br>Email: mari@fhbzlaw.com | ( )<br>( )<br>( )<br>( )<br>( **X** )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |
| **COUNSEL FOR CHEVRON U.S.A. INC.**<br><br>Tyler L. Farmer, WSBA #39912<br>Chelsey L. Mam, WSBA #44609<br>Elisabeth Read, WSBA #59762<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>999 Third Avenue, Suite 4400<br>Seattle, WA 98104<br>Tel: (206) 623-1700; Fax: (206) 623-8717 | ( )<br>( )<br>( )<br>( )<br>( **X** )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

DECLARATION OF SERVICE  - 3

Email: tyler.farmer@bclplaw.com
Email: chelsey.mam@bclplaw.com
Email: elisabeth.read@bclplaw.com
Email: erin.fujita@bclplaw.com

Jason Levin, WSBA #21964
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone: 213-576-1000
Email: jason.levin@alston.com
Email: dana.camacho@alston.com

Debra Belott, DC Bar #993507
*Admitted Pro Hac Vice*
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001-2113
Tel:    (202) 879-3689
Email: dbelott@jonesday.com

Michael A. Magee, PA #314489
*Admitted Pro Hac Vice*
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219-2514
Phone:  412.394.7296
Fax:    412.394.7959
Email:  mmagee@jonesday.com

Leon F. DeJulius Jr., NY Bar No. 5817275
*Admitted Pro Hac Vice*
Sharyn A. Reisman, NY Bar No. 2889251
*Admitted Pro Hac Vice*
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Phone:  212-326-3830
Email: lfdejulius@jonesday.com
Email: sareisman@jonesday.com

Michael F. Gosling, CA Bar No. 305845
*Admitted Pro Hac Vice*
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121

**WEINSTEIN CAGGIANO PLLC**
**600 UNIVERSITY STREET, SUITE 1620**
**SEATTLE, WASHINGTON  98101**
(206) 508-7070 – Facsimile (206) 237-8650

| | | | |
|---|---|---|---|
| Phone:  858-314-1143<br>Email:  mgosling@jonesday.com<br><br>Danielle R. Leneck, CA Bar No. 313052<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>555 S. Flower Street, Floor 50<br>Los Angeles, CA 90071-2452<br>Phone:  213-243-2683<br>Email: dleneck@jonesday.com | | | |
| **COUNSEL FOR NORTHWEST WHOLESALE, INC.**<br><br>Shawna M. Lydon, WSBA #34238<br>BETTS PATTERSON & MINES, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA 98101<br>Phone: 206-292-9988<br>Email: slydon@bpmlaw.com<br>Email: lbrown@bpmlaw.com<br>Email: carkins@bpmlaw.com<br>Email: skangas@bpmlaw.com<br>Email: dmarsh@bpmlaw.com<br><br>Thomas F. O'Connell, WSBA No. 16539<br>DAVIS, ARNEIL LAW FIRM, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551<br>Email: tom@dadkp.com<br>Email: kate@dadkp.com | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver | |
| **COUNSEL FOR SYNGENTA CROP PROTECTION, LLC**<br><br>Angelo J. Calfo, WSBA No. 27079<br>Andrew DeCarlow, WSBA No. 54471<br>Per Jansen, WSBA No. 49966<br>MORGAN, LEWIS & BOCKIUS LLP<br>1301 2nd Ave, Suite 3000<br>Seattle, WA 98101-3808<br>Phone: 206-274-6400<br>Fax: 206-274-6401<br>Email: angelo.calfo@morganlewis.com<br>Email: andrew.decarlow@morganlewis.com<br>Email: per.jansen@morganlewis.com | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver | |

DECLARATION OF SERVICE  - 5

**WEINSTEIN CAGGIANO PLLC**<br>**600 UNIVERSITY STREET, SUITE 1620**<br>**SEATTLE, WASHINGTON  98101**<br>(206) 508-7070 – Facsimile (206) 237-8650

1 | Email: lixi.colmenero@morganlewis.com
Email: trang.la@morganlewis.com
2 | Ragan Naresh, DC No. 984732
*Admitted Pro Hac Vice*
3 | Patrick L. Butler
*(Pro Hac Vice to be submitted)*
4 | KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
5 | Washington, D.C. 20004
Phone: (202) 389-5151
6 | Email: ragan.naresh@kirkland.com

7 | Paul J. Sampson
*Admitted Pro Hac Vice*
8 | Christopher D. Mack
*Admitted Pro Hac Vice*
9 | KIRKLAND & ELLIS LLP
95 South State Street
10 | Salt Lake City, UT 84111
Phone: (801) 877- 8100
11 | Email: paul.sampson@kirkland.com
Email: chris.mack@kirkland.com
12 |
Leslie Smith, IL No. 6275944
13 | *Admitted Pro Hac Vice*
Brad Weidenhammer, IL No. 6284229
14 | *Admitted Pro Hac Vice*
Cassandra Catalano, IL No. 6324399
15 | *Admitted Pro Hac Vice*
KIRKLAND & ELLIS LLP
16 | 300 North LaSalle
Chicago, IL 60654
17 | Phone: (312) 862-2141
Email: lsmith@kirkland.com
18 | Email: bweidenhammer@kirkland.com
Email: cassandra.catalano@kirkland.com
19 | Email: julie.siegal@kirkland.com

20 |    I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

21 |

22 |    DATED at Seattle, Washington, this 26th day of April, 2024.

23 |    *s/ Julia Crippen*
    Julia Crippen
    Legal Assistant

DECLARATION OF SERVICE  - 6

# EXHIBIT E

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

THE HONORABLE ANGELA KAAKE
Trial Date: February 17, 2025

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

DALE SMITH,

      Plaintiff,

v.

CHEVRON U.S.A., INC., et al.,

      Defendants.

NO. 21-2-08160-2 SEA

DECLARATION OF SERVICE

I, Julia Crippen, declare and state as follows:

I am and at all times herein a citizen of the United States, a resident of King County, Washington, and am over the age of 18 years.

On the 18th day of July, 2024, I caused to be served true and correct copies of the following documents to the counsel listed below:

1.      Note for Motion Docket;

2.      Plaintiff's Motion to Compel Defendant Northwest Wholesale, Inc. to Respond to and Supplement Discovery;

3.      Declaration of Charles P. Stern In Support of Plaintiff's Motion to Compel Defendant Northwest Wholesale, Inc. to Respond to and Supplement Discovery, *with Accompanying Exhibits*; and

DECLARATION OF SERVICE  - 1

1          4.      Declaration of Service.

| **CO-COUNSEL FOR PLAINTIFFS** | ( ) | Legal Messenger |
| --- | --- | --- |
| Gibbs Henderson, TX Bar No. 24041084 | ( ) | King County E-Service |
| *Admitted Pro Hac Vice* | ( ) | |
| Charles P. Stern, TX Bar No. 24106466 | ( ) | U.S. Mail |
| *Admitted Pro Hac Vice* | ( ) | Federal Express |
| NACHAWATI LAW GROUP | **( X )** | E-Mail |
| 5489 Blair Road, | | Hand Deliver |
| Dallas, Texas 75231 | | |
| Phone: (214) 890-0711 | | |
| Email: ghenderson@ntrial.com | | |
| Email: cstern@ntrial.com | | |
| Email: ewood@ntrial.com | | |
| Email: clopez@ntrial.com | | |
| | | |
| Khaldoun A. Baghdadi, CA Bar No. 190111 | | |
| *Admitted Pro Hac Vice* | | |
| Michael A. Kelly, CA Bar No.  71460 | | |
| *Admitted Pro Hac Vice* | | |
| Sara M. Peters, CA Bar No. 260610 | | |
| *Admitted Pro Hac Vice* | | |
| WALKUP, MELODIA, KELLY & SCHOENBERGER | | |
| 650 California Street, 26th Floor | | |
| San Francisco, CA 94108 | | |
| Phone: (415) 981-7210 | | |
| Email:  kbaghdadi@walkuplawoffice.com | | |
| Email:  mkelly@walkuplawoffice.com | | |
| Email:  speters@walkuplawoffice.com | | |
| Email:  lconnors@walkuplawoffice.com | | |
| Email:  afreeman@walkuplawoffice.com | | |
| Email:  cmegino@WalkupLawOffice.com | | |
| | | |
| Peter Flowers, IL Bar No. 06210847 | | |
| *Admitted Pro Hac Vice* | | |
| MEYERS & FLOWERS, LLC | | |
| 3 North Second St, Suite 300 | | |
| St. Charles, IL 60174 | | |
| Phone:  (630) 232-6333 | | |
| Email:  pjf@meyers-flowers.com | | |
| | | |
| Robert E. Kennedy, Ohio Bar No.  0006174 | | |
| *Admitted Pro Hac Vice* | | |
| David C. Landever, Ohio Bar No.  0065377 | | |
| *Admitted Pro Hac Vice* | | |
| WEISMAN KENNEDY & BERRIS CO LPA | | |

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| 2900 Detroit Avenue, 2nd Floor<br>Cleveland, OH  44113<br>Phone:  (216) 789-2130<br>Phone:  (216) 781-1111<br>Email:  ekennedy@weismanlaw.com<br>Email:  dlandever@weismanlaw.com<br>Email:  drozman@weismanlaw.com | | |
| **COUNSEL FOR CHEVRON U.S.A. INC.**<br>Tyler L. Farmer, WSBA #39912<br>Chelsey L. Mam, WSBA #44609<br>Elisabeth Read, WSBA #59762<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>999 Third Avenue, Suite 4400, Seattle, WA 98104<br>Phone: (206) 623-1700; Fax: (206) 623-8717<br>Email: tyler.farmer@bclplaw.com<br>Email: chelsey.mam@bclplaw.com<br>Email: elisabeth.read@bclplaw.com<br>Email: erin.fujita@bclplaw.com<br><br>Jason Levin, WSBA #21964<br>ALSTON & BIRD LLP<br>333 South Hope Street, 16th Floor<br>Los Angeles, CA 90071-1410<br>Phone: 213-576-1000<br>Email: jason.levin@alston.com<br>Email: dana.camacho@alston.com<br><br>Debra Belott, DC Bar #993507<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>51 Louisiana Ave. N.W.<br>Washington, DC 20001-2113<br>Phone: (202) 879-3689<br>Email: dbelott@jonesday.com<br><br>Michael A. Magee, PA #314489<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, Pennsylvania 15219-2514<br>Phone:  412.394.7296; Fax:  412.394.7959<br>Email:  mmagee@jonesday.com<br><br>Leon F. DeJulius Jr., NY Bar No. 5817275 | (  )<br>(  )<br>(  )<br>(  )<br>( X )<br>(  ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

**WEINSTEIN CAGGIANO PLLC**
**600 UNIVERSITY STREET, SUITE 1620**
**SEATTLE, WASHINGTON  98101**
(206) 508-7070 – Facsimile (206) 237-8650

1 | *Admitted Pro Hac Vice*
Sharyn A. Reisman, NY Bar No. 2889251
2 | *Admitted Pro Hac Vice*
Melanie K. Chan, NY Bar No. 5746615
3 | *Admitted Pro Hac Vice*
Kristina F. Moore, NY Bar No. 5798376
4 |  *(To Be Admitted Pro Hac Vice)*
JONES DAY
5 | 250 Vesey Street
New York, NY 10281-1047
6 | Phone:  212-326-3830;  212-326-3654
Email: lfdejulius@jonesday.com
7 | Email: sareisman@jonesday.com
Email: melaniechan@jonesday.com
8 | Email: kfmoore@jonesday.com

9 | Michael F. Gosling, CA Bar No. 305845
*Admitted Pro Hac Vice*
10 | Kristin M. Lahaszow,  CA Bar No. 341754
*Admitted Pro Hac Vice*
11 | JONES DAY
4655 Executive Drive, Suite 1500
12 | San Diego, CA 92121
Phone:  858-314-1143; 858-314-1200
13 | Email:  mgosling@jonesday.com
Email:  klahaszow@jonesday.com
14 |
Danielle R. Leneck, CA Bar No. 313052
15 | *Admitted Pro Hac Vice*
Kendra L. Marvel, CA Bar No. 284117
16 |  *(To Be Admitted Pro Hac Vice)*
JONES DAY
17 | 555 S. Flower Street, Floor 50
Los Angeles, CA 90071-2452
18 | Phone:  213-243-2683
Email: dleneck@jonesday.com
19 | Email: **kmarvel@jonesday.com**

20 | Tracy K. Stratford, OH Bar No. 69457
 *(To Be Admitted Pro Hac Vice)*
21 | JONES DAY
901 Lakeside Ave.
22 | Cleveland, OH 44114
Phone: 216-586-3939
23 | Email: Tkstratford@Jonesday.com

DECLARATION OF SERVICE  - 4

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | **COUNSEL FOR NORTHWEST WHOLESALE, INC.**<br><br>Shawna M. Lydon, WSBA #34238<br>Samantha A. Shaw, WSBA #59450<br>BETTS PATTERSON & MINES, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA 98101<br>Phone: 206-292-9988<br>Email: slydon@bpmlaw.com<br>Email: sshaw@bpmlaw.com<br>Email: carkins@bpmlaw.com<br>Email: skangas@bpmlaw.com<br>Email: klangridge@bpmlaw.com<br>Email: dmarsh@bpmlaw.com<br><br>Thomas F. O'Connell, WSBA No. 16539<br>DAVIS, ARNEIL LAW FIRM, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551<br>Email: tom@dadkp.com<br>Email: Denise@dadkp.com | (  )    Legal Messenger<br>(  )    King County E-Service<br>(  )    U.S. Mail<br>(  )    Federal Express<br>( X )    E-Mail<br>(  )    Hand Deliver |
| 12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23 | **COUNSEL FOR SYNGENTA CROP PROTECTION, LLC**<br><br>Angelo J. Calfo, WSBA No. 27079<br>Andrew DeCarlow, WSBA No. 54471<br>MORGAN, LEWIS & BOCKIUS LLP<br>1301 2nd Ave, Suite 3000<br>Seattle, WA 98101-3808<br>Phone: 206-274-6400<br>Fax: 206-274-6401<br>Email: angelo.calfo@morganlewis.com<br>Email: andrew.decarlow@morganlewis.com<br>Email: lixi.colmenero@morganlewis.com<br>Email: trang.la@morganlewis.com<br><br>Ragan Naresh, DC No. 984732<br>*Admitted Pro Hac Vice*<br>Seantyel Hardy, DC No. 1644128<br>*Admitted Pro Hac Vice*<br>Patrick L. Butler<br>   *(Pro Hac Vice to be submitted)*<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Ave NW | (  )    Legal Messenger<br>(  )    King County E-Service<br>(  )    U.S. Mail<br>(  )    Federal Express<br>( X )    E-Mail<br>(  )    Hand Deliver |

**WEINSTEIN CAGGIANO PLLC**<br>**600 UNIVERSITY STREET, SUITE 1620**<br>**SEATTLE, WASHINGTON  98101**<br>(206) 508-7070 – Facsimile (206) 237-8650

1  Washington, D.C. 20004
   Phone: (202) 389-5151
2  Email: ragan.naresh@kirkland.com
   Email: seantyel.hardy@kirkland.com
3
   Leslie Smith, IL No. 6275944
4  *Admitted Pro Hac Vice*
   Brad Weidenhammer, IL No. 6284229
5  *Admitted Pro Hac Vice*
   Cassandra Catalano, IL No. 6324399
6  *Admitted Pro Hac Vice*
   KIRKLAND & ELLIS LLP
7  300 North LaSalle
   Chicago, IL 60654
8  Phone: (312) 862-2141
   Email: lsmith@kirkland.com
9  Email: bweidenhammer@kirkland.com
   Email: cassandra.catalano@kirkland.com
10 Email: julie.siegal@kirkland.com

11         I declare under penalty of perjury under the laws of the state of Washington that the

12 foregoing is true and correct.

13         DATED at Seattle, Washington, this 18th day of July, 2024.

14                              *s/ Julia Crippen*
                               Julia Crippen
15                             Legal Assistant

16

17

18

19

20

21

22

23

# EXHIBIT F

1

2

THE HONORABLE ANGELA KAAKE
Trial Date: May 5, 2025

3

4

5

6

7 SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8 DALE SMITH,                              NO. 21-2-08160-2 SEA

9          Plaintiff,                      DECLARATION OF SERVICE

10 v.

11 CHEVRON U.S.A., INC., et al.,

12          Defendants.

13

14          I, Julia Crippen, declare and state as follows:

15          I am and at all times herein a citizen of the United States, a resident of King County,

Washington, and am over the age of 18 years.

16

17          On the 9th day of October, 2024, I caused to be served true and correct copies of the

following documents to the counsel listed below:

18

19          1.      Notice for Hearing;

20          2.      Plaintiff's Motion for Leave to Serve Additional Interrogatories Upon Defendant

Northwest Wholesale, Inc.;

21

22          3.      Declaration of Charles P. Stern in Support of Plaintiff's Motion for Leave to

Serve Additional Interrogatories Upon Defendant Northwest Wholesale, Inc, *with accompanying*

23 *exhibits;* and

DECLARATION OF SERVICE  - 1                        **WEINSTEIN CAGGIANO PLLC**
                                                   **600 UNIVERSITY STREET, SUITE 1620**
                                                   **SEATTLE, WASHINGTON  98101**
                                                   (206) 508-7070 – Facsimile (206) 237-8650

1      4.      Declaration of Service.

| **CO-COUNSEL FOR PLAINTIFFS** | ( ) | Legal Messenger |
|---|---|---|
| Gibbs Henderson, TX Bar No. 24041084 | ( ) | King County E-Service |
| *Admitted Pro Hac Vice* | ( ) | |
| Charles P. Stern, TX Bar No. 24106466 | ( ) | U.S. Mail |
| *Admitted Pro Hac Vice* | ( ) | Federal Express |
| NACHAWATI LAW GROUP | **( X )** | E-Mail |
| 5489 Blair Road, | | Hand Deliver |
| Dallas, Texas 75231 | | |
| Phone: (214) 890-0711 | | |
| Email: ghenderson@ntrial.com | | |
| Email: cstern@ntrial.com | | |
| Email: ewood@ntrial.com | | |
| Email: clopez@ntrial.com | | |
| | | |
| Khaldoun A. Baghdadi, CA Bar No. 190111 | | |
| *Admitted Pro Hac Vice* | | |
| Michael A. Kelly, CA Bar No. 71460 | | |
| *Admitted Pro Hac Vice* | | |
| Sara M. Peters, CA Bar No. 260610 | | |
| *Admitted Pro Hac Vice* | | |
| WALKUP, MELODIA, KELLY & SCHOENBERGER | | |
| 650 California Street, 26th Floor | | |
| San Francisco, CA 94108 | | |
| Phone: (415) 981-7210 | | |
| Email: kbaghdadi@walkuplawoffice.com | | |
| Email: mkelly@walkuplawoffice.com | | |
| Email: speters@walkuplawoffice.com | | |
| Email: lconnors@walkuplawoffice.com | | |
| Email: afreeman@walkuplawoffice.com | | |
| Email: cmegino@WalkupLawOffice.com | | |
| | | |
| Peter Flowers, IL Bar No. 06210847 | | |
| *Admitted Pro Hac Vice* | | |
| Frank Cesarone, IL Bar No. 6307510 | | |
|   (*To Be Admitted Pro Hac Vice*) | | |
| MEYERS & FLOWERS, LLC | | |
| 3 North Second St, Suite 300 | | |
| St. Charles, IL 60174 | | |
| Phone: (630) 232-6333 | | |
| Email: pjf@meyers-flowers.com | | |
| Email: fvc@meyers-flowers.com | | |
| | | |
| Robert E. Kennedy, Ohio Bar No. 0006174 | | |
| *Admitted Pro Hac Vice* | | |

**WEINSTEIN CAGGIANO PLLC**
**600 UNIVERSITY STREET, SUITE 1620**
**SEATTLE, WASHINGTON  98101**
(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| 1 | David C. Landever, Ohio Bar No. 0065377<br>*Admitted Pro Hac Vice*<br>WEISMAN KENNEDY & BERRIS CO LPA<br>2900 Detroit Avenue, 2nd Floor<br>Cleveland, OH 44113<br>Phone: (216) 789-2130<br>Phone: (216) 781-1111<br>Email**:** ekennedy@weismanlaw.com<br>Email**:** dlandever@weismanlaw.com<br>Email**:** drozman@weismanlaw.com<br><br>Sarah S. Doles, Illinois Bar No. 6239179<br>*Admitted Pro Hac Vice*<br>LEVIN PAPANTONIO PROCTOR BUCHANAN<br>O'BRIEN BARR & MOUGEY, P.A.<br>316 South Baylen St, Suite 600<br>Pensacola, FL 32502<br>Phone: (850) 495-5010<br>Email: sdoles@levinlaw.com<br>Email: awoods@levinlaw.com | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | **COUNSEL FOR CHEVRON U.S.A. INC.**<br>Tyler L. Farmer, WSBA #39912<br>Chelsey L. Mam, WSBA #44609<br>Elisabeth Read, WSBA #59762<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>999 Third Avenue, Suite 4400, Seattle, WA 98104<br>Phone: (206) 623-1700; Fax: (206) 623-8717<br>Email: tyler.farmer@bclplaw.com<br>Email: chelsey.mam@bclplaw.com<br>Email: elisabeth.read@bclplaw.com<br>Email: erin.fujita@bclplaw.com<br><br>Jason Levin, WSBA #21964<br>ALSTON & BIRD LLP<br>333 South Hope Street, 16th Floor<br>Los Angeles, CA 90071-1410<br>Phone: 213-576-1000<br>Email: jason.levin@alston.com<br>Email: dana.camacho@alston.com<br><br>Debra Belott, DC Bar #993507<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>51 Louisiana Ave. N.W.<br>Washington, DC 20001-2113 | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |

**WEINSTEIN CAGGIANO PLLC**<br>**600 UNIVERSITY STREET, SUITE 1620**<br>**SEATTLE, WASHINGTON 98101**<br>(206) 508-7070 – Facsimile (206) 237-8650

| | |
|---|---|
| 1 | Phone: (202) 879-3689 |
| | Email: dbelott@jonesday.com |
| 2 | |
| | Michael A. Magee, PA #314489 |
| 3 | *Admitted Pro Hac Vice* |
| | JONES DAY |
| 4 | 500 Grant Street, Suite 4500 |
| | Pittsburgh, Pennsylvania 15219-2514 |
| 5 | Phone:  412.394.7296; Fax:  412.394.7959 |
| | Email:  mmagee@jonesday.com |
| 6 | |
| | Leon F. DeJulius Jr., NY Bar No. 5817275 |
| 7 | *Admitted Pro Hac Vice* |
| | Sharyn A. Reisman, NY Bar No. 2889251 |
| 8 | *Admitted Pro Hac Vice* |
| | Melanie K. Chan, NY Bar No. 5746615 |
| 9 | *Admitted Pro Hac Vice* |
| | Kristina F. Moore, NY Bar No. 5798376 |
| 10 | *Admitted Pro Hac Vice* |
| | JONES DAY |
| 11 | 250 Vesey Street |
| | New York, NY 10281-1047 |
| 12 | Phone:  212-326-3830;  212-326-3654 |
| | Email: lfdejulius@jonesday.com |
| 13 | Email: sareisman@jonesday.com |
| | Email: melaniechan@jonesday.com |
| 14 | Email: kfmoore@jonesday.com |
| 15 | Kristin M. Lahaszow,  CA Bar No. 341754 |
| | *Admitted Pro Hac Vice* |
| 16 | JONES DAY |
| | 4655 Executive Drive, Suite 1500 |
| 17 | San Diego, CA 92121 |
| | Phone:  858-314-1143; 858-314-1200 |
| 18 | Email:  klahaszow@jonesday.com |
| 19 | Danielle R. Leneck, CA Bar No. 313052 |
| | *Admitted Pro Hac Vice* |
| 20 | Kendra L. Marvel, CA Bar No. 284117 |
| | *Admitted Pro Hac Vice* |
| 21 | JONES DAY |
| | 555 S. Flower Street, Floor 50 |
| 22 | Los Angeles, CA 90071-2452 |
| | Phone:  213-243-2683 |
| 23 | Email: dleneck@jonesday.com |
| | Email: kmarvel@jonesday.com |

DECLARATION OF SERVICE  - 4

| | | |
|---|---|---|
| Tracy K. Stratford, OH Bar No. 69457<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>901 Lakeside Ave.<br>Cleveland, OH 44114<br>Phone: 216-586-3939<br>Email: Tkstratford@Jonesday.com | | |
| **COUNSEL FOR NORTHWEST WHOLESALE, INC.**<br>Shawna M. Lydon, WSBA #34238<br>BETTS PATTERSON & MINES, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA 98101<br>Phone: 206-292-9988<br>Email: slydon@bpmlaw.com<br>Email: skangas@bpmlaw.com<br>Email: klangridge@bpmlaw.com<br>Email: dmarsh@bpmlaw.com<br><br>Thomas F. O'Connell, WSBA No. 16539<br>DAVIS, ARNEIL LAW FIRM, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551<br>Email: tom@dadkp.com<br>Email: ruth@dadkp.com | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |
| **COUNSEL FOR SYNGENTA CROP PROTECTION, LLC**<br>Ari M. Sillman, WSBA #60798<br>Angelo J. Calfo, WSBA No. 27079<br>Andrew DeCarlow, WSBA No. 54471<br>MORGAN, LEWIS & BOCKIUS LLP<br>1301 2nd Ave, Suite 3000<br>Seattle, WA 98101-3808<br>Phone: 206-274-6400<br>Fax: 206-274-6401<br>Email: ari.sillman@morganlewis.com<br>Email: angelo.calfo@morganlewis.com<br>Email: andrew.decarlow@morganlewis.com<br>Email: lixi.colmenero@morganlewis.com<br>Email: trang.la@morganlewis.com<br><br>Ragan Naresh, DC No. 984732<br>*Admitted Pro Hac Vice*<br>Whitney Leets, IL No. 6336246 | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| *Admitted Pro Hac Vice*<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Ave NW<br>Washington, D.C. 20004<br>Phone: (202) 389-5151;  (202) 389-3091<br>Email: ragan.naresh@kirkland.com<br>Email: whitney.leets@kirkland.com<br><br>Leslie Smith, IL No. 6275944<br>*Admitted Pro Hac Vice*<br>Brad Weidenhammer, IL No. 6284229<br>*Admitted Pro Hac Vice*<br>Cassandra Catalano, IL No. 6324399<br>*Admitted Pro Hac Vice*<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>Phone: (312) 862-2141<br>Email: lsmith@kirkland.com<br>Email: bweidenhammer@kirkland.com<br>Email: cassandra.catalano@kirkland.com | | |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED at Seattle, Washington, this 9th day of October, 2024.

*s/ Julia Crippen*
Julia Crippen
Legal Assistant

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070 – Facsimile (206) 237-8650

# EXHIBIT G

**From:** Julia Crippen
**To:** afreeman@walkuplawoffice.com ; Andrew DeCarlow; Angelo Calfo ; Brad Weidenhammer; Carol Arkins; Cassandra Catalano; Charlie Stern; Chelsey L. Mam; Christopher D. Mack ; Cindy Lopez; Daine Marsh; dana.camacho@alston.com; Danielle R. Leneck; David C. Landever; Debra R. Belott; Denise@dadkp.com; drozman@weismanlaw.com ; Elisabeth Read; erin.fujita@bclplaw.com; Erin Wood; Gibbs Henderson; Jason Levin; Julie M.K. Siegal; Khaldoun A. Baghdadi; klangridge@bpmlaw.com; Kristin M. Lahaszow; lconnors@walkuplawoffice.com ; Leon F. DeJulius Jr.; Leslie Smith; lixi.colmenero@morganlewis.com; lmiranda@WalkupLawOffice.com ; Melanie K. Chan; Michael A. Kelly; Michael A. Magee; Michael F. Gosling; Paul Sampson ; Per Jansen; Peter Flowers; Ragan Naresh; Robert E. Kennedy; Samantha A. Shaw; Sara M. Peters; Service; Sharyn A. Reisman; Shawna M. Lydon; skangas@bpmlaw.com; Thomas F. O"Connell; trang.la@morganlewis.com; Tyler L. Farmer
**Subject:** Smith v Chevron - Notice of Intent to Take Video Dep of NWW"s 30b6 Witness & DOS
**Date:** Thursday, May 23, 2024 3:23:20 PM
**Attachments:** image001.png
2024-05-23.Smith.P"s NOVD of NWW 30b6.pdf
2024-05-23.Smith.DOS (P"s NOVD of NWW 30b6).pdf

---

This message originated from outside your organization

---

Please see attached:

1.    Plaintiff's Notice of Intent to Take the Videotaped Deposition of Defendant Northwest Wholesale, Inc.'s 30(b)(6) Witness; and

2.    Declaration of Service.



**Julia Crippen**
**Legal Assistant**
600 University Street, Suite 1620
Seattle, Washington 98101
T: (206) 508-7070
F: (206) 237-8650
www.weinsteincaggiano.com

# EXHIBIT H

SUPERIOR COURT OF WASHINGTON
FOR KING COUNTY

_____

DALE SMITH,                          )
                                     )
                  Plaintiff,         )
                                     ) No. 21-2-08160-2 SEA
        vs.                          )
                                     )
CHEVRON U.S.A., INC., et al.,        )
                                     )
                  Defendants.        )
                                     )
_____


Deposition Upon Oral Examination

of

NORTHWEST WHOLESALE, INC.
30(b)(6) DEPOSITION, BY RODNEY VAN ORMAN

_____


Taken at 701 Pike Street, Suite 1025
Seattle, Washington


DATE:  September 25, 2024

REPORTED BY:  Wade J. Johnson, RPR
              CCR No.:  2574

Page 2

```
 1              A P P E A R A N C E S

 2

 3   For the Plaintiff:

 4          Charles P. Stern
            Nachawati Law Group
 5          5489 Blair Road
            Dallas, Texas 75231
 6          cstern@ntrial.com

 7

 8   Counsel for Northwest Wholesale, Inc.:

 9          Shawna M. Lydon
            Betts Patterson & Mines, P.S.
10          701 Pike Street
            Suite 1400
11          Seattle, Washington 98101
            Slydon@bpmlaw.com
12

13   Counsel for Chevron U.S.A. INC.:

14          Debra Belott (Zoom)
            Jones Day
15          51 Louisiana Avenue Northwest
            Washington, DC 20001-2113
16          dbelott@jonesday.com

17

18   COUNSEL FOR SYNGENTA CROP PROTECTION, LLC:

19          Andrew DeCarlow (Zoom)
            Morgan, Lewis & Bockius LLP
20          1301 2nd Ave
            Suite 3000
21          Seattle, WA 98101-3808
            andrew.decarlow@morganlewis.com
22

23   The Videographer:

24          Gabe Fabens

25                  --oOo--
```

Page 3

```
 1                    I N D E X

 2   EXAMINATION BY:                           PAGE

 3   Mr. Stern . . . . . . . . . . . . . . . . . 6

 4   Ms. Lydon . . . . . . . . . . . . . . . . 222

 5   Ms. Belott. . . . . . . . . . . . . . . . 234

 6   Mr. DeCarlow. . . . . . . . . . . . . . . 241

 7   Mr. Stern . . . . . . . . . . . . . . . . 242

 8                    * * *

 9

10   EXHIBITS FOR IDENTIFICATION:

11   NUMBER                                    PAGE

12   Exhibit 1    Defendant Northwest Wholesale,
13                Inc. Responses and Objections to
                  Plaintiff's Third Set of
14                Discovery . . . . . . . . . . . 13

15   Exhibit 2    Email from Shawna Lydon to Charlie
                  Stern and others, 07/29/24. . . . 18

16   Exhibit 3    Report of Mark Lew, M.D.,
17                Concerning Neurological Examination
                  of Dale Smith . . . . . . . . . . 23

18   Exhibit 4    Plaintiff's Third Amended Notice
                  of Intent to Take the Videotaped
19                Deposition of Defendant Northwest
                  Wholesale, Inc.'s 30(b)(6)
20                Witness . . . . . . . . . . . . . 38

21   Exhibit 5    "About Northwest Wholesale" . . . 40

22   Exhibit 6    Defendant NW Wholesale's Responses
                  to Plaintiff's Second Set of
23                Interrogatories Propounded to
                  Defendant Northwest Wholesale,
24                Inc. . . . . . . . . . . . . . . 54

25
```

Page 4

```
 1                    I N D E X

 2   EXHIBITS FOR IDENTIFICATION:

 3   Number                                    PAGE

 4
     Exhibit 7    Gordon Roberts Obituary . . . . . 85
 5
     Exhibit 8    Cashmere Record Article . . . . . 95
 6
 7   Exhibit 9    Chevron Meeting Report,
                  03/29/74 . . . . . . . . . . . . 138
 8   Exhibit 10   CTL Meeting Notes, 10/06 through
                  10/09, 1975. . . . . . . . . . . 149
 9
     Exhibit 11   Letter from K. Fletcher to
10                Dr. R.D. Cavalli, 11/11/75 . . . 157

11   Exhibit 12   Letter from R.E. Rodman to
                  J.N. Ospenson, 03/29/76. . . . . 161
12
     Exhibit 13   Letter from R.D. Cavalli to
13                J.N. Ospenson, 09/29/76. . . . . 167

14   Exhibit 14   "Paraquat Worker Safety" . . . . 170

15   Exhibit 15   Letter from J.N. Ospenson, to
                  J.N. Sullivan, 11/14/85. . . . . 129
16
17   Exhibit 16   Kitsap Sun Article . . . . . . . 206

18   Exhibit 17   Longview Daily News Article. . . 208

19   Exhibit 18   The Bellingham Herald Article. . 210

20   Exhibit 19   Spokane Chronicle Article. . . . 212

21   Exhibit 20   Defendant Northwest Wholesale,
                  Inc.'s Objections to Plaintiff's
22                30(b)(6) Notice of Intent to Take
                  Videotaped Deposition . . . . . . 38

23

24                    * * * *

25
```

Page 5

```
 1       SEATTLE, WASHINGTON; WEDNESDAY, SEPTEMBER 25, 2024

 2                      8:43 A.M.

 3                      --oOo--

 4

 5          THE VIDEOGRAPHER:  Good morning,

 6   everyone.  We are going on the record now.  The time is

 7   8:43 a.m.  The date is September 25th, 2024.  This is

 8   Volume 1, Media Unit 1 of the video-recorded deposition

 9   of Rodney Van Orman.  And this is taken in the matter

10   of Smith vs. Chevron USA, Incorporated, et al.  And

11   this is filed in the Superior Court of the State of

12   Washington in and for County of King.  The case number

13   is 21-2-08160-2 SEA.

14          And this deposition is being held at the

15   offices of Betts Patterson & Mines, in Seattle, at 701

16   Pike Street, in Suite 1025, Seattle, Washington 98101.

17          My name is Gabe Fabens; I'm the

18   videographer.  The court reporter is Wade Johnson.  And

19   today we are both on behalf of Pohlman Reporting

20   Company.

21          And, Counsel, will you please identify

22   yourself for the record, and the witness may be sworn

23   in.

24          MR. STERN:  Charlie Stern, plaintiff.

25          MS. LYDON:  Shawna Lydon, on behalf of
```

```
 1                    C E R T I F I C A T E

 2    STATE OF WASHINGTON )
                          )  ss
 3    COUNTY OF KING      )

 4

 5            I, the undersigned Washington Certified Court
      Reporter, pursuant to RCW 5.28.010, authorized to
 6    administer oaths and affirmations in and for the State
      of Washington, do hereby certify:  That the foregoing
 7    deposition of the witness named herein was taken
      stenographically before me and reduced to a typed
 8    format under my direction;

 9            That, according to CR 30(e), the witness was
      given the opportunity to examine, read and sign the
10    deposition after same was transcribed, unless indicated
      in the record that the review was waived;
11
              That I am not a relative or employee of any
12    attorney or counsel or participant and that I am not
      financially or otherwise interested in the action or
13    the outcome herein;

14            That the deposition, as transcribed, is a
      full, true and correct transcript of the testimony,
15    including questions and answers and all objections,
      motions and examinations and said transcript was
16    prepared pursuant to the Washington Administrative Code
      308-14-135 preparation guidelines.

17

18
                      /s/WADE J. JOHNSON, CCR
19                    State of Washington CCR #2574
                      My CCR certification expires on 09/18/25.
20

21

22

23

24

25
```

# EXHIBIT I



February 8, 2025

**<u>CONFIDENTIAL</u>**

**<u>*Via E-Mail: acohen@bpmlaw.com*</u>**
Ms. Anne Cohen
**Betts Patterson & Mines, P.S.**
701 Pike Street, Suite 1400
Seattle, WA 98101

Re:     *Dale Smith vs. Chevron U.S.A., Inc.; Et al.*; Case No. 21-2-08160-2 SEA; filed in the
        Superior Court of the State of Washington, King County.

Dear Counsel:

As indicated in my January 24, 2025 letter, the operative case management order requires the parties to engage in alternative dispute resolution by April 7, 2025. As of today, Plaintiff is waiting for a substantive response to said letter.

In hopes of facilitating a response and in an effort to make any mediation more meaningful, Plaintiff hereby makes a settlement demand of                for full and final settlement of his claims against Northwest Wholesale, Inc.

I am happy to discuss this further.

This demand is confidential. As this litigation is ongoing, Plaintiff reserves the right to modify this demand.

Please confirm receipt of this letter.

Best,

Charlie Stern

CPS/cl

cc:     Khaldoun A. Baghdadi – Via E-Mail
        Peter Flowers – Via E-Mail
        Gibbs C. Henderson – Via E-Mail

**O:** 214.890.0711
**F:** 214.890.0712

5489 Blair Road, Dallas, TX 75231

| | |
|---|---|
| **From:** | Cindy Lopez |
| **To:** | "acohen@bpmlaw.com" |
| **Cc:** | Charlie Stern; kbaghdadi@walkuplawoffice.com; pjf@meyers-flowers.com; Gibbs Henderson |
| **Subject:** | Dale Smith vs. Northwest Wholesale Inc.; Case No. 21-2-08160-2 SEA - Confidential Correspondence |
| **Date:** | Saturday, February 8, 2025 11:08:17 AM |
| **Attachments:** | image001.png |
| | 2025.0208 Letter NWW re demand.pdf |

Dear Counsel,

Please see attached correspondence forwarded on behalf of attorney Charlie Stern with regard to the above-referenced matter.

Thank you.

## Cindy Lopez
### Paralegal

**D:** 469-324-0747 **O:** 214-890-0711 **F:** 214-890-0712

 NACHAWATI LAW GROUP    5489 Blair Rd. / Dallas, TX 75231
ntrial.com

**LAW IS OUR PASSION. JUSTICE IS OUR BUSINESS.**

**Confidentiality Notice:** The information contained in this email message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error please notify us immediately by telephone and return the original message to us by mail. Thank you.

# EXHIBIT J

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**The Honorable Jason Poydras**
**Date of Motion:  January 17, 2025**
**Nature of Motion:  Motion to Continue**
**Without Oral Argument**

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| DALE SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON U.S.A., INC.; CHEVRON PHILLIPS CHEMICAL COMPANY LP; CHAMBERLIN DISTRIBUTING COMPANY, INC. d/b/a CHAMBERLIN AGRICULTURE; NORTHWEST WHOLESALE, INC.; SYGENTA CROP PROTECTION, LLC; and SYNGENTA AG,<br><br>Defendants. | NO. 21-2-08160-2 SEA<br><br>DEFENDANT NORTHWEST WHOLESALE, INC.'S SUPPLEMENT TO ITS MOTION TO CONTINUE TRIAL DATE AND PRETRIAL DATES AND CONFERENCES |

Defendant Northwest Wholesale, Inc. ("NWW") continues to request the same relief requested in its Motion to Continue Trial Date and Pretrial Dates and Continue Time to Respond to Pending Motions (Dkt. 383)("Motion to Continue"). In other words, NWW continues to request a continuance of the trial date and pending pre-trial deadlines and enlarging the time that NWW has to respond to the following pending motions: Dkt 323- Chevron USA Inc's Motion for Summary Judgment; Dkt 366 Plaintiff's Motion to Exclude Certain Testimony of Elizabeth L. Anderson, PhD. ATS Fellow; Dkt. 373 Plaintiff's Motion to Exclude Certain Testimony of Mark Lew, MD.

DEFENDANT NORTHWEST WHOLESALE,
INC.'S SUPPLEMENT TO ITS MOTION TO
CONTINUE TRIAL DATE AND PRETRIAL
DATES AND CONFERENCES

- 1 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1025
701 Pike Street
Seattle, Washington 98101
(206) 292-9988

2309702/021125 1249/0425-1878

NWW files this supplement so that the court may be fully advised as to its changed circumstances since the briefing on its Motion to Continue has been completed, namely that NWW is no longer seeking to substitute James Murphy of Murphy Armstrong, LLP into this matter as counsel.[1] Therefore, Mr. Murphy's conflict with the existing trial date is no longer a reason for NWW's motion to continue.

However, the undersigned still has her own conflict with the existing trial date. *Peterson v. Kennewick,* et. al., Case No. 19-2-02157-8 SEA has been pending since 2018 (having begun with service of an unfiled Complaint that was removed to US District Court and then remanded) and filed since 2019. Dkt. 1.

On Reply, NWW pointed out that even if Mr. Murphy was not allowed to substitute in as counsel for NWW, the undersigned has her own existing conflict with the current May 5, 2025 trial date. *Peterson v. Kennewick,* et. al., Case No. 19-2-02157-8 SEA has been pending since 2018 (having begun with service of an unfiled Complaint that was removed to US District Court and then remanded) and filed since 2019. Dkt. 1.

On Friday, February 7, 2025, the undersigned learned that NWW agreed that she should continue to represent NWW in this matter, forgoing its earlier request that James Murphy should substitute in as counsel for NWW. A call was placed to Mr. Stern, counsel for Plaintiff, and he was informed that the undersigned would be continuing on as trial counsel for NWW. See, Second Supplemental Declaration of A. Cohen, ¶ 2. ("Cohen Decl."). The undersigned pointed out to Mr. Stern that her own trial conflict, her lack of prior involvement in this matter, and lack of knowledge about this matter still supports NWW's Motion to Continue. Mr. Stern asked the court to be notified immediately via email and this was done. Cohen Decl., ¶ 3.

---

[1] As previously explained, attorney Shawna Lydon had been counsel for NWW since Karen Bamberger left her employment at BPM. On December 31, 2024, Shawna Lydon ceased her employment at BPM.

DEFENDANT NORTHWEST WHOLESALE, INC.'S SUPPLEMENT TO ITS MOTION TO CONTINUE TRIAL DATE AND PRETRIAL DATES AND CONFERENCES

- 2 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1025
701 Pike Street
Seattle, Washington 98101
(206) 292-9988

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

There is a pending motion to continue in *Peterson,* which my office filed on January 28, 2025. The motion to continue in the *Peterson* matter is wholly based on the circumstances in the *Peterson* matter and is entirely unrelated to the status of this matter. Plaintiffs in the *Peterson* matter opposed that motion to continue, and the undersigned is aware of no decision by Judge Dixon as of the time of this writing. Absent Judge Dixon granting the undersigned's motion to continue in the *Peterson* matter, the trial date in the *Peterson* matter remains May 12, 2025.

To the extent the trial date in *Peterson* is continued, that would cure the trial conflict the undersigned has with the current trial date in this matter. However, it does not change the fact that NWW would still be prejudiced if required to go to trial in May 2025 under the circumstances presented here.

In a 41-page Complaint, Plaintiff asserts that he was injured by exposure to parquat and/or parquat-containing products, including those allegedly purchased at a NWW store and that this exposure caused him Parkinson's disease. *See*, Complaint. Dkt. 1. Plaintiff's claims against NWW include negligence and breach of express and implied warranties. From the Compliant, Plaintiff appears to claim that NWW – allegedly a distributor – knew or should have known that parquat has "redox properties" which allegedly triggers the production of superoxide radicals, ultimately causing oxidative stress that contributes to latent neurodegenerative damage. Id.

The court retains the discretion to grant NWW a short continuance so as to allow the undersigned as newly substituted counsel for NWW to adequately prepare for its defense at trial in this matter while meeting her obligation to her clients and the court in the *Peterson* matter.

I certify that this memorandum contains 736 words, in compliance with the Local Civil Rules.

DEFENDANT NORTHWEST WHOLESALE, INC.'S SUPPLEMENT TO ITS MOTION TO CONTINUE TRIAL DATE AND PRETRIAL DATES AND CONFERENCES

- 3 -

2309702/021125 1249/0425-1878

Betts
Patterson
Mines
**One Convention Place**
Suite 1025
701 Pike Street
Seattle, Washington 98101
(206) 292-9988

1      DATED this 11th day of February, 2025.

2                                              BETTS, PATTERSON & MINES, P.S.

3

4                                              By s/ Anne Cohen
                                                   Anne Cohen, WSBA #41183
5                                              Attorneys for Defendant Northwest
                                               Wholesale, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANT NORTHWEST WHOLESALE,
INC.'S SUPPLEMENT TO ITS MOTION TO
CONTINUE TRIAL DATE AND PRETRIAL                    - 4 -
DATES AND CONFERENCES

2309702/021125 1249/0425-1878

Betts
Patterson
Mines
**One Convention Place**
Suite 1025
701 Pike Street
Seattle, Washington 98101
(206) 292-9988

**CERTIFICATE OF SERVICE**

I, Cheryl Erickson, declare as follows:

1)      I am a citizen of the United States and a resident of the State of Washington.  I am over the age of 18 years and not a party to the within entitled cause.  I am employed by the law firm of Betts, Patterson & Mines, P.S.

2)      By the end of the business day on February 11, 2025, I caused to be served upon counsel of record at the addresses and in the manner described below, the following documents:

- **Defendant Northwest Wholesale, Inc.'s Supplement To Its Motion To Continue Trial Date And Pretrial Dates And Conferences;**

- **Second Supplemental Declaration Of Anne Cohen In Support Of Defendant Northwest Wholesale, Inc.'s Supplement To Its Motion To Continue Trial Date And Pretrial Dates And Conferences**

- **Certificate of Service.**

| *Counsel for Plaintiff Smith*: | | |
|---|---|---|
| Dylan J. Johnson | ☑ | KCSC E-service (B. Weinstein) |
| Alexandra B. Caggiano | ☐ | U.S. Mail |
| Brian D. Weinstein | ☐ | Hand Delivery |
| Weinstein Caggiano PLLC | ☐ | Facsimile |
| 600 University Street, Suite 1620 | ☐ | Overnight |
| Seattle, WA 98101-4106 | ☑ | Email |
| dylan@weinsteincaggiano.com | | |
| alex@weinsteincaggiano.com | | |
| brian@weinsteincaggiano.com | | |

| *Counsel for Plaintiff Smith*: | | |
|---|---|---|
| Gibbs C. Henderson | ☐ | KCSC E-service |
| Charles P. Stern, *pro hac vice* | ☐ | U.S. Mail |
| Nachawati Law Group | ☐ | Hand Delivery |
| 5473 Blair Road | ☐ | Facsimile |
| Dallas, TX  75231 | ☐ | Overnight |
| ghenderson@ntrial.com | ☑ | Email |
| cstern@ntrial.com | | |

DEFENDANT NORTHWEST WHOLESALE, INC.'S SUPPLEMENT TO ITS MOTION TO CONTINUE TRIAL DATE AND PRETRIAL DATES AND CONFERENCES

- 5 -

**Betts
Patterson
Mines**
**One Convention Place**
Suite 1025
701 Pike Street
Seattle, Washington 98101
(206) 292-9988

2309702/021125 1249/0425-1878

1

***Counsel for Plaintiff Smith***:          ☐    KCSC E-service
Michael A. Kelly, *pro hac vice*            ☐    U.S. Mail

2
Sara M. Peters, *pro hac vice*              ☐    Hand Delivery
Khaldoun A. Baghdadi, *pro hac vice*        ☐    Facsimile

3
Walkup, Melodia, Kelly & Schoenberger       ☐    Overnight
650 California Street, 26th Fl.             ☒    Email

4
San Francisco, CA  94108

5
mkelly@walkuplawoffice.com
speters@walkuplawoffice.com

6
kbaghdadi@walkuplawoffice.com

7
***Counsel for Plaintiff Smith***:          ☐    KCSC E-service
Robert E. Kennedy, *pro hac vice*           ☐    U.S. Mail

8
David C. Landever, *pro hac vice*           ☐    Hand Delivery
Weisman Kennedy & Berris Co LPA             ☐    Facsimile

9
2900 Detroit Avenue, 2nd Floor              ☐    Overnight
Cleveland, OH 44113                         ☒    Email

10
ekennedy@weismanlaw.com

11
dlandever@weismanlaw.com

12
***Counsel for Plaintiff Smith***:          ☐    KCSC E-service

13
Peter Flowers, *pro hac vice*               ☐    U.S. Mail
Frank Cesarone, *pro hac vice*              ☐    Hand Delivery

14
Meyers & Flowers                            ☐    Facsimile
3 North Second Street, Suite 300            ☐    Overnight

15
St. Charles, IL  60174                      ☒    Email
pjf@meyers-flowers.com

16
fvc@meyers-flowers.com

17
***Counsel for Plaintiff Smith***:          ☐    KCSC E-service

18
Sarah Shoemake Doles, *pro hac vice*        ☐    U.S. Mail
c/o Levin Papantonio Proctor Buchanan       ☐    Hand Delivery

19
O'Brien Barr & Mougey, P.A.                 ☐    Facsimile
316 South Baylen Street, Suite 600          ☐    Overnight

20
Pensacola, FL  32502                        ☒    Email
sdoles@levinlaw.com

21

22

23

24

25

DEFENDANT NORTHWEST WHOLESALE,
INC.'S SUPPLEMENT TO ITS MOTION TO
CONTINUE TRIAL DATE AND PRETRIAL            - 6 -
DATES AND CONFERENCES

2309702/021125 1249/0425-1878

**Betts**
**Patterson**
**Mines**
**One Convention Place**
Suite 1025
701 Pike Street
Seattle, Washington 98101
(206) 292-9988

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

***Counsel for Defendant Chevron U.S.A.*:**
Jason Levin
Alston & Bird
333 S. Hope Street, Suite 1600
Los Angeles, CA 90071-1410
jason.levin@alston.com

- ☑ KCSC E-service
- ☐ U.S. Mail
- ☐ Hand Delivery
- ☐ Facsimile
- ☐ Overnight
- ☑ Email

***Counsel for Defendant Chevron U.S.A.*:**
Debra R. Belott, *pro hac vice*
Jones Day
51 Louisiana Avenue NW
Washington, DC 03689
dbelott@jonesday.com

- ☐ KCSC E-service
- ☐ U.S. Mail
- ☐ Hand Delivery
- ☐ Facsimile
- ☐ Overnight
- ☑ Email

***Counsel for Defendant Chevron U.S.A.*:**
Melanie K. Chan, *pro hac vice*
Kristina F. Moore, *pro hac vice*
Thaddeus J. Lopatka, *pro hac vice*
Jones Day
250 Vesey Street
New York, NY 10281-1047
melaniechan@jonesday.com
kfmoore@jonesday.com
tlopatka@jonesday.com

- ☐ KCSC E-service
- ☐ U.S. Mail
- ☐ Hand Delivery
- ☐ Facsimile
- ☐ Overnight
- ☑ Email

***Counsel for Defendant Chevron U.S.A.*:**
Kristin M. Lahaszow, *pro hac vice*
Jones Day
4655 Executive Drive, Suite 1500
San Diego, CA 92121
klahaszow@jonesday.com

- ☐ KCSC E-service
- ☐ U.S. Mail
- ☐ Hand Delivery
- ☐ Facsimile
- ☐ Overnight
- ☑ Email

***Counsel for Defendant Chevron U.S.A.*:**
Tyler L. Farmer
Chelsey L. Mam
Elisabeth Read
Bryan Cave Leighton Paisner LLP
999 Third Avenue, Suite 4400
Seattle, WA 98104
tyler.farmer@bclplaw.com
chelsey.mam@bclplaw.com
elisabeth.read@bclplaw.com

- ☐ KCSC E-service
- ☐ U.S. Mail
- ☐ Hand Delivery
- ☐ Facsimile
- ☐ Overnight
- ☑ Email

DEFENDANT NORTHWEST WHOLESALE,
INC.'S SUPPLEMENT TO ITS MOTION TO
CONTINUE TRIAL DATE AND PRETRIAL
DATES AND CONFERENCES

- 7 -

2309702/021125 1249/0425-1878

Betts
Patterson
Mines
**One Convention Place**
Suite 1025
701 Pike Street
Seattle, Washington 98101
(206) 292-9988

1

***Counsel for Defendant Chevron U.S.A.***:          ☐  KCSC E-service
Tracy K. Stratford, *pro hac vice*                    ☐  U.S. Mail

2

Jones Day                                              ☐  Hand Delivery
901 Lakeside Avenue                                    ☐  Facsimile

3

Cleveland, OH 44114                                    ☐  Overnight
tkstratford@jonesday.com                               ☒  Email

4

5

***Counsel for Defendant Chevron U.S.A.***:          ☐  KCSC E-service
Kendra L. Marvel, *pro hac vice*                      ☐  U.S. Mail

6

Jones Day                                              ☐  Hand Delivery
555 S. Flower Street, 50th Floor                      ☐  Facsimile

7

Los Angeles, CA  90071-2452                            ☐  Overnight
kmarvel@jonesday.com                                   ☒  Email

8

9

***Counsel for Defendants Syngenta Crop***:          ☒  KCSC E-service
Angelo J. Calfo                                        ☐  U.S. Mail

10

Andrew DeCarlow                                        ☐  Hand Delivery
Ari Sillman                                            ☐  Facsimile

11

Morgan, Lewis & Bockius LLP                            ☐  Overnight
1301 Second Avenue, Suite 2800                        ☒  Email

12

Seattle, WA 98101
angelo.calfo@morganlewis.com

13

andrew.decarlow@morganlewis.com

14

ari.sillman@morganlewis.com

15

***Counsel for Defendants Syngenta Crop***:          ☐  KCSC E-service
John P. Bailey                                         ☐  U.S. Mail

16

448 M Street NW, Apt. 4                                ☐  Hand Delivery
Washington, DC 20001-5733                              ☐  Facsimile

17

john.patrick.bailey@gmail.com                          ☐  Overnight
                                                        ☒  Email

18

19

***Counsel for Defendants Syngenta Crop***:          ☐  KCSC E-service
Ragan Naresh (DC), *pro hac vice*                     ☐  U.S. Mail

20

Kirkland & Ellis LLP                                   ☐  Hand Delivery
95 South State Street                                  ☐  Facsimile

21

Salt Lake City, UT  84111                              ☐  Overnight
ragan.naresh@kirkland.com                              ☒  Email

22

23

24

25

DEFENDANT NORTHWEST WHOLESALE,
INC.'S SUPPLEMENT TO ITS MOTION TO          - 8 -
CONTINUE TRIAL DATE AND PRETRIAL
DATES AND CONFERENCES

**Betts
Patterson
Mines**
**One Convention Place**
Suite 1025
701 Pike Street
Seattle, Washington 98101
(206) 292-9988

2309702/021125 1249/0425-1878

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

***Counsel for Defendants Syngenta Crop***   ☐  KCSC E-service
***Protection***:   ☐  U.S. Mail
Leslie Smith, *pro hac vice*   ☐  Hand Delivery
Brad Weidenhammer, *pro hac vice*   ☐  Facsimile
Cassandra Catalano*, pro hac vice*   ☐  Overnight
Kirkland & Ellis LLP   ☒  Email
300 North LaSalle
Chicago, IL 60654
lsmith@kirkland.com
bweidenhammer@kirkland
cassandra.catalano@kirkland.com

***Counsel for Syngenta Crop***:   ☐  KCSC E-service
Whitney Leets, *pro hac vice*   ☐  U.S. Mail
Kirkland & Ellis LLP   ☐  Hand Delivery
1301 Pennsylvania Avenue N.W.   ☐  Facsimile
Washington, D.C. 20004   ☐  Overnight
whitney.leets@kirkland.com   ☒  Email

***Counsel for Syngenta Crop***:   ☐  KCSC E-service
Thomas Leahy, *pro hac vice*   ☐  U.S. Mail
Kirkland & Ellis LLP   ☐  Hand Delivery
333 West Wolf Point Plaza   ☐  Facsimile
Chicago, IL 60654   ☐  Overnight
thomas.leahy@kirkland.com   ☒  Email

***Co-Counsel for NW Wholesale***:   ☐  KCSC E-service
Thomas F. O'Connell   ☐  U.S. Mail
Davis Arneil Law Firm, LLP   ☐  Hand Delivery
617 Washington Street   ☐  Facsimile
Wenatchee, WA 98801-2600   ☐  Overnight
tom@dadkp.com   ☒  Email

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 11th day of February, 2025.

_____
*/s Cheryl Erickson*
Cheryl Erickson

DEFENDANT NORTHWEST WHOLESALE,
INC.'S SUPPLEMENT TO ITS MOTION TO
CONTINUE TRIAL DATE AND PRETRIAL
DATES AND CONFERENCES

- 9 -

Betts
Patterson
Mines
**One Convention Place**
Suite 1025
701 Pike Street
Seattle, Washington 98101
(206) 292-9988

# EXHIBIT K

**Cindy Lopez**

---

**Subject:**                   FW: RCW 408 Settlement offer from NWW


**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Thursday, February 20, 2025 9:54 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Cc:** Cheryl J. Erickson <cerickson@bpmlaw.com>
**Subject:** Re: RCW 408 Settlement offer from NWW

I am happy to discuss the drafting of the formal agreement you mention below when you are back or available.

But this email is an agreement to your client's terms articulated below.

I have emailed the Court with you cc'd.

Have a good day.

---

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Thursday, February 20, 2025 9:45 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Cc:** Cheryl J. Erickson <cerickson@bpmlaw.com>
**Subject:** Re: RCW 408 Settlement offer from NWW

We accept the settlement offer. I will email the Court with you CC'd as discussed below.

---

**From:** Anne Cohen <acohen@bpmlaw.com>
**Sent:** Thursday, February 20, 2025 8:57 AM
**To:** Charlie Stern <cstern@ntrial.com>
**Cc:** Cheryl J. Erickson <cerickson@bpmlaw.com>
**Subject:** RE: RCW 408 Settlement offer from NWW

This message originated from outside your organization

---

Absolutely. If you send me an email accepting the offer, then I have no problem with your client simply informing the court that the claims against NWW are resolved and as a result, NWW withdraws its motion to continue. That way, there's less likelihood the time difference will get in our way.


You can tell the court that a formal document striking the motion to continue will be forthcoming.

Sincerely,

**Anne Cohen**

**Managing Shareholder**

*Admitted in Oregon, Washington and Utah*

Betts, Patterson & Mines, P.S.

US Bancorp Tower

111 SW 5th Avenue, Suite 3650

Portland, OR 97204

D 503.961.6540 | F 503.961.6339





**Confidentiality Notice:  This email and any attachments may contain confidential or attorney-client protected information that may not be further distributed by any means without permission of the sender.  If you are not the intended recipient, you are hereby notified that you are not permitted to read its content and that any disclosure, copying, printing, distribution or use of any of the information is prohibited.  If you have received this email in error, please immediately notify the sender by return e-mail and delete the message and its attachments without saving in any manner.**

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Thursday, February 20, 2025 6:34 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Subject:** Re: RCW 408 Settlement offer from NWW

If my client accepts, I assume that we can send an immediate joint email to the Court indicating that the Motion to Continue is stricken and that the Court can anticipate an immediate Notice to Strike?

---

**From:** Anne Cohen <acohen@bpmlaw.com>
**Sent:** Thursday, February 20, 2025 8:26 AM
**To:** Charlie Stern <cstern@ntrial.com>
**Subject:** RCW 408 Settlement offer from NWW

This message originated from outside your organization

---

RCW 408 Settlement communication – not admissible at trial for any purpose

HI Charles,

I have authority to offer            to fully, finally and forever resolve any and all claims against Northwest Wholesale, Inc. This offer anticipates the drafting of a settlement agreement to be signed by our respective clients, and to include a confidentiality provision. I know you disagree, but my folks feel strongly that NWW should never have been in this case to begin with.

I can also tell you that Judge Dixon declined to continue the *Peterson* trial date.

I traveling in Germany through the end of the week, so please be aware of the time difference for further settlement communication.

Sincerely,

**Anne Cohen**

**Managing Shareholder**

*Admitted in Oregon, Washington and Utah*

Betts, Patterson & Mines, P.S.

US Bancorp Tower

111 SW 5th Avenue, Suite 3650

Portland, OR 97204

D 503.961.6540 | F 503.961.6339





Confidentiality Notice:  This email and any attachments may contain confidential or attorney-client protected information that may not be further distributed by any means without permission of the sender.  If you are not the intended recipient, you are hereby notified that you are not permitted to read its content and that any disclosure, copying, printing, distribution or use of any of the information is prohibited.  If you have received this email in error, please immediately notify the sender by return e-mail and delete the message and its attachments without saving in any manner.

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Wednesday, February 19, 2025 3:16 PM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Subject:** Re: You free for a call? Meet and Confer re Supplemental Motion - Smith

Anne, I havent heard back from you.

Do you have any updates?

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Tuesday, February 18, 2025 8:58 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Subject:** Re: You free for a call? Meet and Confer re Supplemental Motion - Smith


Anne,


I am available to talk if needed.  As discussed yesterday during our call, if there is a possibility of anything happening, we need to talk ASAP.


Charlie

---

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Monday, February 17, 2025 10:11 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Subject:** Re: You free for a call? Meet and Confer re Supplemental Motion - Smith


Talk then.


I assume you have presented the demand to your client.  If you have authority in response to my demand or a counter-offer, that would be helpful.


Time is of the essence.  We can chat at 1pm your time.

---

**From:** Anne Cohen <acohen@bpmlaw.com>
**Sent:** Monday, February 17, 2025 9:50 AM
**To:** Charlie Stern <cstern@ntrial.com>
**Subject:** RE: You free for a call? Meet and Confer re Supplemental Motion - Smith

This message originated from outside your organization

My direct dial is 503-961-6540.

**Anne Cohen**

**Managing Shareholder**

*Admitted in Oregon, Washington and Utah*

Betts, Patterson & Mines, P.S.

US Bancorp Tower

111 SW 5th Avenue, Suite 3650

Portland, OR 97204

D 503.961.6540 | F 503.961.6339





Confidentiality Notice:  This email and any attachments may contain confidential or attorney-client protected information that may not be further distributed by any means without permission of the sender.  If you are not the intended recipient, you are hereby notified that you are not permitted to read its content and that any disclosure, copying, printing, distribution or use of any of the information is prohibited.  If you have received this email in error, please immediately notify the sender by return e-mail and delete the message and its attachments without saving in any manner.

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Monday, February 17, 2025 7:22 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Subject:** Re: You free for a call? Meet and Confer re Supplemental Motion - Smith

Sounds good.  That is 3 my time.  What # can I call you at?

---

**From:** Anne Cohen <acohen@bpmlaw.com>
**Sent:** Monday, February 17, 2025 9:14 AM
**To:** Charlie Stern <cstern@ntrial.com>
**Subject:** RE: You free for a call? Meet and Confer re Supplemental Motion - Smith

This message originated from outside your organization

---

How about 1 pm?

**Anne Cohen**

**Managing Shareholder**

*Admitted in Oregon, Washington and Utah*

Betts, Patterson & Mines, P.S.

US Bancorp Tower

111 SW 5th Avenue, Suite 3650

Portland, OR 97204

D 503.961.6540 | F 503.961.6339





**Confidentiality Notice:  This email and any attachments may contain confidential or attorney-client protected information that may not be further distributed by any means without permission of the sender.  If you are not the intended recipient, you are hereby notified that you are not permitted to read its content and that any disclosure, copying, printing, distribution or use of any of the information is prohibited.  If you have received this email in error, please immediately notify the sender by return e-mail and delete the message and its attachments without saving in any manner.**

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Monday, February 17, 2025 6:54 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Subject:** Re: You free for a call? Meet and Confer re Supplemental Motion - Smith

Great.

What time works?  I am free.

---

**From:** Anne Cohen <acohen@bpmlaw.com>
**Sent:** Monday, February 17, 2025 8:51 AM
**To:** Charlie Stern <cstern@ntrial.com>
**Subject:** RE: You free for a call? Meet and Confer re Supplemental Motion - Smith

This message originated from outside your organization

---

Hi Charles,

I am just seeing your email from Saturday now. Unless I am expecting something, I don't generally check my email over the weekend.

I'm available for a call in the afternoon today, with the caveat that I am trying to set up another call for a submission in another case by noon tomorrow.

8

Sincerely,


**Anne Cohen**

**Managing Shareholder**

*Admitted in Oregon, Washington and Utah*

Betts, Patterson & Mines, P.S.

US Bancorp Tower

111 SW 5th Avenue, Suite 3650

Portland, OR 97204

D 503.961.6540 | F 503.961.6339




**Confidentiality Notice:  This email and any attachments may contain confidential or attorney-client protected information that may not be further distributed by any means without permission of the sender.  If you are not the intended recipient, you are hereby notified that you are not permitted to read its content and that any disclosure, copying, printing, distribution or use of any of the information is prohibited.  If you have received this email in error, please immediately notify the sender by return e-mail and delete the message and its attachments without saving in any manner.**

---

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Sunday, February 16, 2025 11:57 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Subject:** Re: You free for a call? Meet and Confer re Supplemental Motion - Smith


Anne, this is the third email I have sent to you hoping to meet and confer with you regarding your motion.  If I do not hear back, I will be calling you at 9am your time tomorrow (2/17/25).

Please call me if you get this email.

214-608-6929

---

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Saturday, February 15, 2025 7:36 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Subject:** Re: You free for a call?

I never heard back from you.

Give me a call this weekend if you can.

I'd like to discuss a few things involving your and my clients.

---

**From:** Charlie Stern
**Sent:** Friday, February 14, 2025 2:52 PM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Subject:** You free for a call?

If so, call me at 214-608-6929

Get Outlook for iOS

# EXHIBIT L

THE HONORABLE MARY ROBERTS
Trial Date: December 12, 2022

**SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

| | |
|---|---|
| **DALE SMITH,** | NO. 21-2-08160-2 SEA |
| **Plaintiff,** | |
| v. | |
| **CHEVRON U.S.A., INC., et al.,** | |
| **Defendants.** | |

I, Tammy Covert, declare and state as follows:

1.    I am and at all times herein a citizen of the United States, a resident of Dallas County, Texas, and am over the age of 18 years.

2.    On the 30ᵗʰ day of September 2021, I caused to be served true and correct copies of:

    (1)    Plaintiff's First Set of Interrogatories and Requests for Production Propounded to Defendant Northwest Wholesale, Inc.; and

    (2)    Declaration of Service on the following:

**FEARS NACHAWATI PLLC**
5473 BLAIR ROAD
DALLAS, TEXAS 75231
(214) 890-0711 - FACSIMILE (214) 890-0712

| | | |
|---|---|---|
| **CHAMBERLIN DISTRIBUTING COMPANY, INC.**<br>Tyler D. Hotchkiss, WSBA No. 40604<br>Mari Foreman Groff, WSBA No. 56030<br>Foreman, Hotchkiss, Bauscher & Zimmerman, PLLC<br>124 N. Wenatchee Ave., Suite A<br>Wenatchee, Washington<br>Email: tyler@fhbzlaw.com<br>Email: mari@fhbzlaw.com | ☐<br>☐<br>☐<br>☐<br>☐<br>☐ | Legal Messenger<br>Facsimile<br>U.S. Mail<br>Federal Express<br>E-Service/E-Mail<br>Hand Deliver |
| **CHAMBERLIN DISTRIBUTING COMPANY, INC.**<br>Megan Cook, WSBA No. 45943<br>Bullivant Houser Bailey, PC<br>One SW Columbia St., Suite 800<br>Portland, OR  97204<br>Phone:  (503) 228-6351<br>Email:  megan.cook@bullivant.com | ☐<br>☐<br>☐<br>☐<br>☐<br>☐ | Legal Messenger<br>Facsimile<br>U.S. Mail<br>Federal Express<br>E-Service/E-Mail<br>Hand Deliver |
| **CHAMBERLIN DISTRIBUTING COMPANY, INC.**<br>Monica Ghosh<br>Bullivant Houser Bailey PC<br>925 Fourth Avenue, Suite 3800<br>Seattle, WA  98104<br>Phone: (206) 521-6476<br>Email: monica.ghosh@bullivant.com | ☐<br>☐<br>☐<br>☐<br>☐<br>☐ | Legal Messenger<br>Facsimile<br>U.S. Mail<br>Federal Express<br>E-Service/E-Mail<br>Hand Deliver |
| **NORTHWEST WHOLESALE, INC.**<br>Thomas F. O'Connell, WSBA No. 16539<br>Davis, Arneil Law Firm, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551<br>Email: tom@dadkp.com<br>Email: ruth@dadkp.com | ☐<br>☐<br>☐<br>☐<br>☒<br>☐ | Legal Messenger<br>Facsimile<br>U.S. Mail<br>Federal Express<br>**E-Service/E-Mail**<br>Hand Deliver |
| **NORTHWEST WHOLESALE, INC.**<br>S. Karen Bamberger, WSBA No. 18478<br>Betts Patterson & Mines, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA  98101-3927<br>Phone: 206-292-9988<br>kbamberger@bpmlaw.com | ☐<br>☐<br>☐<br>☐<br>☒<br>☐ | Legal Messenger<br>Facsimile<br>U.S. Mail<br>Federal Express<br>**E-Service/E-Mail**<br>Hand Deliver |
| **SYNGENTA CROP PROTECTION, LLC**<br>**SYNGENTA AG**<br>Angelo J. Calfo, WSBA No. 27079<br>Calfo Eakes LLP<br>1301 Second Avenue, Suite 2800<br>Seattle, WA 98101<br>Phone: (206) 407-2200<br>Fax: (206) 407-2224<br>Email: angeloc@calfoeakes.com | ☐<br>☐<br>☐<br>☐<br>☐<br>☐ | Legal Messenger<br>Facsimile<br>U.S. Mail<br>Federal Express<br>E-Service/E-Mail<br>Hand Deliver |

FEARS NACHAWATI PLLC<br>5473 BLAIR ROAD<br>DALLAS, TEXAS  75231<br>(214) 890-0711 - FACSIMILE (214) 890-0712

| | | |
|---|---|---|
| **SYNGENTA CROP PROTECTION, LLC**<br>**SYNGENTA AG**<br>Ragan Naresh, DC No. 984732<br>1301 Pennsylvania Ave. NW<br>Washington, DC  20004<br>Phone: (202) 389-5267<br>Email: ragan.naresh@kirkland.com | ☐<br>☐<br>☐<br>☐<br>☐<br>☐ | Legal Messenger<br>Facsimile<br>U.S. Mail<br>Federal Express<br>E-Service/E-Mail<br>Hand Deliver |
| **CHEVRON U.S.A., INC.**<br>Jason Levin, WSBN 21964<br>Steptoe & Johnson LLP<br>633 West Fifth Street, Suite 1900<br>Los Angeles, CA  90071<br>Phone:  (213) 439-9455<br>jlevin@steptoe.com | ☐<br>☐<br>☐<br>☐<br>☐<br>☐ | Legal Messenger<br>Facsimile<br>U.S. Mail<br>Federal Express<br>E-Service/E-Mail<br>Hand Deliver |

I declare under penalty of perjury under the laws of the state of Texas that the foregoing is true and correct.

DATED at Dallas, Texas, this 30th day of September 2021.

FEARS NACHAWATI PLLC

*/s/ Tammy Covert*
Tammy Covert
Paralegal

FEARS NACHAWATI PLLC
5473 BLAIR ROAD
DALLAS, TEXAS  75231
(214) 890-0711  -  FACSIMILE (214) 890-0712

THE HONORABLE MARY ROBERTS
Trial Date:  December 12, 2022

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

DALE SMITH,

     Plaintiff,

v.

CHEVRON U.S.A., INC., et al.,

     Defendants.

NO. 21-2-08160-2 SEA

I, Tammy Covert, declare and state as follows:

1.    I am and at all times herein a citizen of the United States, a resident of Dallas County, Texas, and am over the age of 18 years.

2.    On the 16th day of November 2021, I caused to be served true and correct copies of:

    (1)    Plaintiff's Second Set of Interrogatories Propounded to Defendant Northwest Wholesale, Inc.; and

    (2)    Declaration of Service on the following:

FEARS NACHAWATI PLLC
5473 BLAIR ROAD
DALLAS, TEXAS  75231
(214) 890-0711  -  FACSIMILE (214) 890-0712

| | |
|---|---|
| **CHAMBERLIN DISTRIBUTING COMPANY, INC.**<br>Tyler D. Hotchkiss, WSBA No. 40604<br>Mari Foreman Groff, WSBA No. 56030<br>FOREMAN, HOTCHKISS, BAUSCHER & ZIMMERMAN, PLLC<br>124 N. Wenatchee Ave., Suite A<br>Wenatchee, Washington<br>Email: tyler@fhbzlaw.com<br>Email: mari@fhbzlaw.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☐ E-Service/E-Mail<br>☐ Hand Deliver |
| **CHAMBERLIN DISTRIBUTING COMPANY, INC.**<br>Megan Cook, WSBA No. 45943<br>BULLIVANT HOUSER BAILEY, PC<br>One SW Columbia St., Suite 800<br>Portland, OR 97204<br>Phone: (503) 228-6351<br>Email: megan.cook@bullivant.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☐ E-Service/E-Mail<br>☐ Hand Deliver |
| **CHAMBERLIN DISTRIBUTING COMPANY, INC.**<br>Monica Ghosh<br>BULLIVANT HOUSER BAILEY PC<br>925 Fourth Avenue, Suite 3800<br>Seattle, WA 98104<br>Phone: (206) 521-6476<br>Email: monica.ghosh@bullivant.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☐ E-Service/E-Mail<br>☐ Hand Deliver |
| **NORTHWEST WHOLESALE, INC.**<br>Thomas F. O'Connell, WSBA No. 16539<br>DAVIS, ARNEIL LAW FIRM, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551<br>Email: tom@dadkp.com<br>Email: christine@dadkp.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☒ **E-Service/E-Mail**<br>☐ Hand Deliver |
| **NORTHWEST WHOLESALE, INC.**<br>S. Karen Bamberger, WSBA No. 18478<br>BETTS PATTERSON & MINES, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA 98101-3927<br>Phone: 206-292-9988<br>kbamberger@bpmlaw.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☒ **E-Service/E-Mail**<br>☐ Hand Deliver |
| **SYNGENTA CROP PROTECTION, LLC**<br>Angelo J. Calfo, WSBA No. 27079<br>CALFO EAKES LLP<br>1301 Second Avenue, Suite 2800<br>Seattle, WA 98101<br>Phone: (206) 407-2200<br>Fax: (206) 407-2224<br>Email: angeloc@calfoeakes.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☐ E-Service/E-Mail<br>☐ Hand Deliver |

**FEARS NACHAWATI PLLC**
5473 BLAIR ROAD
DALLAS, TEXAS 75231
(214) 890-0711 · FACSIMILE (214) 890-0712

| **SYNGENTA CROP PROTECTION, LLC**<br>Ragan Naresh, DC No. 984732<br>KIRKLAND & ELLIS<br>1301 Pennsylvania Ave. NW<br>Washington, DC 20004<br>Phone: (202) 389-5267<br>Email: ragan.naresh@kirkland.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☐ E-Service/E-Mail<br>☐ Hand Deliver |
| --- | --- |
| **SYNGENTA CROP PROTECTION, LLC**<br>Leslie Smith, IL No. 6275944<br>Brad Weidenhammer, IL No. 6284229<br>KIRKLAND & ELLIS<br>300 North LaSalle<br>Chicago, IL 60654<br>Phone: (312) 862-2141<br>Email: lsmith@kirkland.com<br>Email: bweidenhammer@kirkland.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☐ E-Service/E-Mail<br>☐ Hand Deliver |
| **CHEVRON U.S.A., INC.**<br>Jason Levin, WSBN 21964<br>STEPTOE & JOHNSON LLP<br>633 West Fifth Street, Suite 1900<br>Los Angeles, CA 90071<br>Phone: (213) 439-9455<br>Email: jlevin@steptoe.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☐ E-Service/E-Mail<br>☐ Hand Deliver |
| **CHEVRON U.S.A., INC.**<br>Debra R. Belott, WSBN 993507<br>JONES DAY<br>51 Louisiana Ave., N.W.<br>Washington, DC 20001-2113<br>Phone: (202) 879-3689<br>Email: dbelott@jonesday.com | ☐ Legal Messenger<br>☐ Facsimile<br>☐ U.S. Mail<br>☐ Federal Express<br>☐ E-Service/E-Mail<br>☐ Hand Deliver |

I declare under penalty of perjury under the laws of the state of Texas that the foregoing is true and correct.

DATED at Dallas, Texas, this 16th day of November 2021.

FEARS NACHAWATI PLLC

*/s/ Tammy Covert*
Tammy Covert
Paralegal

THE HONORABLE ANGELA KAAKE
Trial Date: October 7, 2024

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

DALE SMITH,

     Plaintiff,

v.

CHEVRON U.S.A., INC., et al.,

     Defendants.

NO. 21-2-08160-2 SEA

DECLARATION OF SERVICE

I, Julia Crippen, declare and state as follows:

I am and at all times herein a citizen of the United States, a resident of King County, Washington, and am over the age of 18 years.

On the 22nd day of May, 2024, I caused to be served true and correct copies of the following documents to the counsel listed below:

1.    Plaintiff's Third Set of Discovery Directed to Defendant Northwest Wholesale, Inc., *with Accompanying Exhibit*; and

2.    Declaration of Service.

| **CO-COUNSEL FOR PLAINTIFFS** | ( ) | Legal Messenger |
|---|---|---|
| Gibbs Henderson, TX Bar No. 24041084 | ( ) | King County E-Service |
| *Admitted Pro Hac Vice* | ( ) | |
| Charles P. Stern, TX Bar No. 24106466 | ( ) | U.S. Mail |
| *Admitted Pro Hac Vice* | ( ) | Federal Express |

DECLARATION OF SERVICE - 1

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| NACHAWATI LAW GROUP<br>5489 Blair Road,<br>Dallas, Texas 75231<br>Phone: (214) 890-0711<br>Email: ghenderson@ntrial.com<br>Email: cstern@ntrial.com<br>Email: ewood@ntrial.com<br>Email: clopez@ntrial.com<br><br>Khaldoun A. Baghdadi, CA Bar No. 190111<br>*Admitted Pro Hac Vice*<br>Michael A. Kelly, CA Bar No. 71460<br>*Admitted Pro Hac Vice*<br>Sara M. Peters, CA Bar No. 260610<br>*Admitted Pro Hac Vice*<br>WALKUP, MELODIA, KELLY & SCHOENBERGER<br>650 California Street, 26th Floor<br>San Francisco, CA 94108<br>Phone: (415) 981-7210<br>Email: kbaghdadi@walkuplawoffice.com<br>Email: mkelly@walkuplawoffice.com<br>Email: speters@walkuplawoffice.com<br>Email: lmiranda@WalkupLawOffice.com<br>Email: lconnors@walkuplawoffice.com<br>Email: afreeman@walkuplawoffice.com<br><br>Peter Flowers, IL Bar No. 06210847<br>*Admitted Pro Hac Vice*<br>MEYERS & FLOWERS, LLC<br>3 North Second St, Suite 300<br>St. Charles, IL 60174<br>Phone: (630) 232-6333<br>Email: pjf@meyers-flowers.com<br><br>Robert E. Kennedy, Ohio Bar No. 0006174<br>*Admitted Pro Hac Vice*<br>David C. Landever, Ohio Bar No. 0065377<br>*Admitted Pro Hac Vice*<br>WEISMAN KENNEDY & BERRIS CO LPA<br>2900 Detroit Avenue, 2nd Floor<br>Cleveland, OH 44113<br>Phone: (216) 789-2130<br>Phone: (216) 781-1111<br>Email: ekennedy@weismanlaw.com<br>Email: dlandever@weismanlaw.com<br>Email: drozman@weismanlaw.com | ( **X** ) | E-Mail<br>Hand Deliver |

WEINSTEIN CAGGIANO PLLC<br>600 UNIVERSITY STREET, SUITE 1620<br>SEATTLE, WASHINGTON 98101<br>(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| **COUNSEL FOR CHEVRON U.S.A. INC.**<br>Tyler L. Farmer, WSBA #39912<br>Chelsey L. Mam, WSBA #44609<br>Elisabeth Read, WSBA #59762<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>999 Third Avenue, Suite 4400, Seattle, WA 98104<br>Tel: (206) 623-1700; Fax: (206) 623-8717<br>Email: tyler.farmer@bclplaw.com<br>Email: chelsey.mam@bclplaw.com<br>Email: elisabeth.read@bclplaw.com<br>Email: erin.fujita@bclplaw.com<br><br>Jason Levin, WSBA #21964<br>ALSTON & BIRD LLP<br>333 South Hope Street, 16th Floor<br>Los Angeles, CA 90071-1410<br>Telephone: 213-576-1000<br>Email: jason.levin@alston.com<br>Email: dana.camacho@alston.com<br><br>Debra Belott, DC Bar #993507<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>51 Louisiana Ave. N.W.<br>Washington, DC 20001-2113<br>Tel:    (202) 879-3689<br>Email: dbelott@jonesday.com<br><br>Michael A. Magee, PA #314489<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, Pennsylvania 15219-2514<br>Phone:  412.394.7296; Fax:  412.394.7959<br>Email:  mmagee@jonesday.com<br><br>Leon F. DeJulius Jr., NY Bar No. 5817275<br>*Admitted Pro Hac Vice*<br>Sharyn A. Reisman, NY Bar No. 2889251<br>*Admitted Pro Hac Vice*<br>Melanie K. Chan, NY Bar No. 5746615<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>250 Vesey Street | (  )<br>(  )<br>(  )<br>(  )<br>( X )<br>(  ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

**WEINSTEIN CAGGIANO PLLC**<br>600 UNIVERSITY STREET, SUITE 1620<br>SEATTLE, WASHINGTON  98101<br>(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| New York, NY 10281-1047<br>Phone:  212-326-3830;  212-326-3654<br>Email: lfdejulius@jonesday.com<br>Email: sareisman@jonesday.com<br>Email:  melaniechan@jonesday.com<br><br>Michael F. Gosling, CA Bar No. 305845<br>*Admitted Pro Hac Vice*<br>Kristin M. Lahaszow,  CA Bar No. 341754<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>4655 Executive Drive, Suite 1500<br>San Diego, CA 92121<br>Phone:  858-314-1143; 858-314-1200<br>Email:  mgosling@jonesday.com<br>Email:  klahaszow@jonesday.com<br><br>Danielle R. Leneck, CA Bar No. 313052<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>555 S. Flower Street, Floor 50<br>Los Angeles, CA 90071-2452<br>Phone:  213-243-2683<br>Email: dleneck@jonesday.com | | |
| **COUNSEL FOR NORTHWEST WHOLESALE, INC.**<br><br>Shawna M. Lydon, WSBA #34238<br>Samantha A. Shaw, WSBA #59450<br>BETTS PATTERSON & MINES, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA 98101<br>Phone: 206-292-9988<br>Email: slydon@bpmlaw.com<br>Email: sshaw@bpmlaw.com<br>Email: carkins@bpmlaw.com<br>Email: skangas@bpmlaw.com<br>Email: klangridge@bpmlaw.com<br>Email: dmarsh@bpmlaw.com<br><br>Thomas F. O'Connell, WSBA No. 16539<br>DAVIS, ARNEIL LAW FIRM, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551 | (  )<br>(  )<br>(  )<br>(  )<br>( X )<br>(  ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

WEINSTEIN CAGGIANO PLLC<br>600 UNIVERSITY STREET, SUITE 1620<br>SEATTLE, WASHINGTON  98101<br>(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| Email: tom@dadkp.com<br>Email: Denise@dadkp.com | | |
| **COUNSEL FOR SYNGENTA CROP<br>PROTECTION, LLC**<br><br>Angelo J. Calfo, WSBA No. 27079<br>Andrew DeCarlow, WSBA No. 54471<br>Per Jansen, WSBA No. 49966<br>MORGAN, LEWIS & BOCKIUS LLP<br>1301 2nd Ave, Suite 3000<br>Seattle, WA 98101-3808<br>Phone: 206-274-6400<br>Fax: 206-274-6401<br>Email: angelo.calfo@morganlewis.com<br>Email: andrew.decarlow@morganlewis.com<br>Email: per.jansen@morganlewis.com<br>Email: lixi.colmenero@morganlewis.com<br>Email: trang.la@morganlewis.com<br><br>Ragan Naresh, DC No. 984732<br>*Admitted Pro Hac Vice*<br>Patrick L. Butler<br>   *(Pro Hac Vice to be submitted)*<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Ave NW<br>Washington, D.C. 20004<br>Phone: (202) 389-5151<br>Email: ragan.naresh@kirkland.com<br><br>Paul J. Sampson<br>*Admitted Pro Hac Vice*<br>Christopher D. Mack<br>*Admitted Pro Hac Vice*<br>KIRKLAND & ELLIS LLP<br>95 South State Street<br>Salt Lake City, UT 84111<br>Phone: (801) 877- 8100<br>Email: paul.sampson@kirkland.com<br>Email: chris.mack@kirkland.com<br><br>Leslie Smith, IL No. 6275944<br>*Admitted Pro Hac Vice*<br>Brad Weidenhammer, IL No. 6284229<br>*Admitted Pro Hac Vice*<br>Cassandra Catalano, IL No. 6324399 | ( )<br>( )<br>( )<br>( )<br>( **X** )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – Facsimile (206) 237-8650

| *Admitted Pro Hac Vice* | | |
|---|---|---|
| KIRKLAND & ELLIS LLP | | |
| 300 North LaSalle | | |
| Chicago, IL 60654 | | |
| Phone: (312) 862-2141 | | |
| Email: lsmith@kirkland.com | | |
| Email: bweidenhammer@kirkland.com | | |
| Email: cassandra.catalano@kirkland.com | | |
| Email: julie.siegal@kirkland.com | | |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED at Seattle, Washington, this 22nd day of May, 2024.

*s/ Julia Crippen*
Julia Crippen
Legal Assistant

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070 – Facsimile (206) 237-8650

THE HONORABLE ANGELA KAAKE
Trial Date: February 17, 2025

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| DALE SMITH, | NO. 21-2-08160-2 SEA |
| Plaintiff, | DECLARATION OF SERVICE |
| v. | |
| CHEVRON U.S.A., INC., et al., | |
| Defendants. | |

I, Julia Crippen, declare and state as follows:

I am and at all times herein a citizen of the United States, a resident of King County, Washington, and am over the age of 18 years.

On the 17th day of July, 2024, I caused to be served true and correct copies of the following documents to the counsel listed below:

1.    Plaintiff's Expert-Related Interrogatories And Requests For Production To Defendants Chevron U.S.A., Inc. and Northwest Wholesale, Inc.; and

2.    Declaration of Service.

| **CO-COUNSEL FOR PLAINTIFFS** | ( ) | Legal Messenger |
|---|---|---|
| Gibbs Henderson, TX Bar No. 24041084 | ( ) | King County E-Service |
| *Admitted Pro Hac Vice* | ( ) | |
| Charles P. Stern, TX Bar No. 24106466 | ( ) | U.S. Mail |
| *Admitted Pro Hac Vice* | ( ) | Federal Express |

DECLARATION OF SERVICE - 1

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| NACHAWATI LAW GROUP<br>5489 Blair Road,<br>Dallas, Texas 75231<br>Phone: (214) 890-0711<br>Email: ghenderson@ntrial.com<br>Email: cstern@ntrial.com<br>Email: ewood@ntrial.com<br>Email: clopez@ntrial.com<br><br>Khaldoun A. Baghdadi, CA Bar No. 190111<br>*Admitted Pro Hac Vice*<br>Michael A. Kelly, CA Bar No. 71460<br>*Admitted Pro Hac Vice*<br>Sara M. Peters, CA Bar No. 260610<br>*Admitted Pro Hac Vice*<br>WALKUP, MELODIA, KELLY & SCHOENBERGER<br>650 California Street, 26th Floor<br>San Francisco, CA 94108<br>Phone: (415) 981-7210<br>Email: kbaghdadi@walkuplawoffice.com<br>Email: mkelly@walkuplawoffice.com<br>Email: speters@walkuplawoffice.com<br>Email: lconnors@walkuplawoffice.com<br>Email: afreeman@walkuplawoffice.com<br>Email: cmegino@WalkupLawOffice.com<br><br>Peter Flowers, IL Bar No. 06210847<br>*Admitted Pro Hac Vice*<br>MEYERS & FLOWERS, LLC<br>3 North Second St, Suite 300<br>St. Charles, IL 60174<br>Phone: (630) 232-6333<br>Email: pjf@meyers-flowers.com<br><br>Robert E. Kennedy, Ohio Bar No. 0006174<br>*Admitted Pro Hac Vice*<br>David C. Landever, Ohio Bar No. 0065377<br>*Admitted Pro Hac Vice*<br>WEISMAN KENNEDY & BERRIS CO LPA<br>2900 Detroit Avenue, 2nd Floor<br>Cleveland, OH 44113<br>Phone: (216) 789-2130<br>Phone: (216) 781-1111<br>Email: ekennedy@weismanlaw.com<br>Email: dlandever@weismanlaw.com<br>Email: drozman@weismanlaw.com | ( X ) | E-Mail<br>Hand Deliver |

DECLARATION OF SERVICE - 2

| | | | |
|---|---|---|---|
| 1 | **COUNSEL FOR CHEVRON U.S.A. INC.** | ( ) | Legal Messenger |
| | Tyler L. Farmer, WSBA #39912 | ( ) | King County E-Service |
| 2 | Chelsey L. Mam, WSBA #44609 | ( ) | U.S. Mail |
| | Elisabeth Read, WSBA #59762 | ( ) | Federal Express |
| 3 | BRYAN CAVE LEIGHTON PAISNER LLP | ( X ) | E-Mail |
| | 999 Third Avenue, Suite 4400, Seattle, WA 98104 | ( ) | Hand Deliver |
| 4 | Phone: (206) 623-1700; Fax: (206) 623-8717 | | |
| | Email: tyler.farmer@bclplaw.com | | |
| 5 | Email: chelsey.mam@bclplaw.com | | |
| | Email: elisabeth.read@bclplaw.com | | |
| 6 | Email: erin.fujita@bclplaw.com | | |
| 7 | Jason Levin, WSBA #21964 | | |
| | ALSTON & BIRD LLP | | |
| 8 | 333 South Hope Street, 16th Floor | | |
| | Los Angeles, CA 90071-1410 | | |
| 9 | Phone: 213-576-1000 | | |
| | Email: jason.levin@alston.com | | |
| 10 | Email: dana.camacho@alston.com | | |
| 11 | Debra Belott, DC Bar #993507 | | |
| | *Admitted Pro Hac Vice* | | |
| 12 | JONES DAY | | |
| | 51 Louisiana Ave. N.W. | | |
| 13 | Washington, DC 20001-2113 | | |
| | Phone: (202) 879-3689 | | |
| 14 | Email: dbelott@jonesday.com | | |
| 15 | Michael A. Magee, PA #314489 | | |
| | *Admitted Pro Hac Vice* | | |
| 16 | JONES DAY | | |
| | 500 Grant Street, Suite 4500 | | |
| 17 | Pittsburgh, Pennsylvania 15219-2514 | | |
| | Phone: 412.394.7296; Fax: 412.394.7959 | | |
| 18 | Email: mmagee@jonesday.com | | |
| 19 | Leon F. DeJulius Jr., NY Bar No. 5817275 | | |
| | *Admitted Pro Hac Vice* | | |
| 20 | Sharyn A. Reisman, NY Bar No. 2889251 | | |
| | *Admitted Pro Hac Vice* | | |
| 21 | Melanie K. Chan, NY Bar No. 5746615 | | |
| | *Admitted Pro Hac Vice* | | |
| 22 | Kristina F. Moore, NY Bar No. 5798376 | | |
| | *(To Be Admitted Pro Hac Vice)* | | |
| 23 | JONES DAY | | |
| | 250 Vesey Street | | |

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| New York, NY 10281-1047 | | |
| Phone:  212-326-3830;  212-326-3654 | | |
| Email: lfdejulius@jonesday.com | | |
| Email: sareisman@jonesday.com | | |
| Email: melaniechan@jonesday.com | | |
| Email: kfmoore@jonesday.com | | |
| | | |
| Michael F. Gosling, CA Bar No. 305845 | | |
| *Admitted Pro Hac Vice* | | |
| Kristin M. Lahaszow,  CA Bar No. 341754 | | |
| *Admitted Pro Hac Vice* | | |
| JONES DAY | | |
| 4655 Executive Drive, Suite 1500 | | |
| San Diego, CA 92121 | | |
| Phone:  858-314-1143; 858-314-1200 | | |
| Email:  mgosling@jonesday.com | | |
| Email:  klahaszow@jonesday.com | | |
| | | |
| Danielle R. Leneck, CA Bar No. 313052 | | |
| *Admitted Pro Hac Vice* | | |
| Kendra L. Marvel, CA Bar No. 284117 | | |
|  *(To Be Admitted Pro Hac Vice)* | | |
| JONES DAY | | |
| 555 S. Flower Street, Floor 50 | | |
| Los Angeles, CA 90071-2452 | | |
| Phone:  213-243-2683 | | |
| Email: dleneck@jonesday.com | | |
| Email: **kmarvel@jonesday.com** | | |
| | | |
| Tracy K. Stratford, OH Bar No. 69457 | | |
|  *(To Be Admitted Pro Hac Vice)* | | |
| JONES DAY | | |
| 901 Lakeside Ave. | | |
| Cleveland, OH 44114 | | |
| Phone: 216-586-3939 | | |
| Email: Tkstratford@Jonesday.com | | |
| **COUNSEL FOR NORTHWEST WHOLESALE, INC.**<br><br>Shawna M. Lydon, WSBA #34238<br>Samantha A. Shaw, WSBA #59450<br>BETTS PATTERSON & MINES, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA 98101<br>Phone: 206-292-9988 | (    )<br>(    )<br>(    )<br>(    )<br>( X )<br>(    ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

DECLARATION OF SERVICE  - 4

| | | |
|---|---|---|
| Email: slydon@bpmlaw.com<br>Email: sshaw@bpmlaw.com<br>Email: carkins@bpmlaw.com<br>Email: skangas@bpmlaw.com<br>Email: klangridge@bpmlaw.com<br>Email: dmarsh@bpmlaw.com<br><br>Thomas F. O'Connell, WSBA No. 16539<br>DAVIS, ARNEIL LAW FIRM, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551<br>Email: tom@dadkp.com<br>Email: Denise@dadkp.com | | |
| **COUNSEL FOR SYNGENTA CROP**<br>**PROTECTION, LLC**<br><br>Angelo J. Calfo, WSBA No. 27079<br>Andrew DeCarlow, WSBA No. 54471<br>MORGAN, LEWIS & BOCKIUS LLP<br>1301 2nd Ave, Suite 3000<br>Seattle, WA 98101-3808<br>Phone: 206-274-6400<br>Fax: 206-274-6401<br>Email: angelo.calfo@morganlewis.com<br>Email: andrew.decarlow@morganlewis.com<br>Email: lixi.colmenero@morganlewis.com<br>Email: trang.la@morganlewis.com<br><br>Ragan Naresh, DC No. 984732<br>*Admitted Pro Hac Vice*<br>Seantyel Hardy, DC No. 1644128<br>*Admitted Pro Hac Vice*<br>Patrick L. Butler<br>  *(Pro Hac Vice to be submitted)*<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Ave NW<br>Washington, D.C. 20004<br>Phone: (202) 389-5151<br>Email: ragan.naresh@kirkland.com<br>Email: seantyel.hardy@kirkland.com<br><br>Leslie Smith, IL No. 6275944<br>*Admitted Pro Hac Vice*<br>Brad Weidenhammer, IL No. 6284229<br>*Admitted Pro Hac Vice* | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

DECLARATION OF SERVICE - 5

**WEINSTEIN CAGGIANO PLLC**<br>**600 UNIVERSITY STREET, SUITE 1620**<br>**SEATTLE, WASHINGTON 98101**<br>(206) 508-7070 – Facsimile (206) 237-8650

1

| Cassandra Catalano, IL No. 6324399 | | |
| --- | --- | --- |
| *Admitted Pro Hac Vice* | | |
| KIRKLAND & ELLIS LLP | | |
| 300 North LaSalle | | |
| Chicago, IL 60654 | | |
| Phone: (312) 862-2141 | | |
| Email: lsmith@kirkland.com | | |
| Email: bweidenhammer@kirkland.com | | |
| Email: cassandra.catalano@kirkland.com | | |
| Email: julie.siegal@kirkland.com | | |

2

3

4

5

6

        I declare under penalty of perjury under the laws of the state of Washington that the

7

foregoing is true and correct.

8

        DATED at Seattle, Washington, this 17th day of July, 2024.

9

10
                                        *s/ Julia Crippen*
                                        Julia Crippen
                                        Legal Assistant

11

12

13

14

15

16

17

18

19

20

21

22

23

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070 – Facsimile (206) 237-8650

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

THE HONORABLE ANGELA KAAKE
Trial Date: May 5, 2025

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

DALE SMITH,

    Plaintiff,

v.

CHEVRON U.S.A., INC., et al.,

    Defendants.

NO. 21-2-08160-2 SEA

DECLARATION OF SERVICE

I, Dylan J. Johnson, declare and state as follows:

I am and at all times herein a citizen of the United States, a resident of King County, Washington, and am over the age of 18 years.

On the 24th day of October, 2024, I caused to be served true and correct copies of the following documents to the counsel listed below:

1.    Plaintiff's Contention Interrogatories to Defendant Northwest Wholesale, Inc.; and

2.    Declaration of Service.

| **CO-COUNSEL FOR PLAINTIFFS** | ( ) | Legal Messenger |
|---|---|---|
| Gibbs Henderson, TX Bar No. 24041084 | ( ) | King County E-Service |
| *Admitted Pro Hac Vice* | ( ) | |
| Charles P. Stern, TX Bar No. 24106466 | ( ) | U.S. Mail |
| *Admitted Pro Hac Vice* | ( ) | Federal Express |

DECLARATION OF SERVICE - 1

| | | |
|---|---|---|
| NACHAWATI LAW GROUP<br>5489 Blair Road,<br>Dallas, Texas 75231<br>Phone: (214) 890-0711<br>Email: ghenderson@ntrial.com<br>Email: cstern@ntrial.com<br>Email: ewood@ntrial.com<br>Email: clopez@ntrial.com<br><br>Khaldoun A. Baghdadi, CA Bar No. 190111<br>*Admitted Pro Hac Vice*<br>Michael A. Kelly, CA Bar No.  71460<br>*Admitted Pro Hac Vice*<br>Sara M. Peters, CA Bar No. 260610<br>*Admitted Pro Hac Vice*<br>WALKUP, MELODIA, KELLY & SCHOENBERGER<br>650 California Street, 26th Floor<br>San Francisco, CA 94108<br>Phone: (415) 981-7210<br>Email:  kbaghdadi@walkuplawoffice.com<br>Email:  mkelly@walkuplawoffice.com<br>Email:  speters@walkuplawoffice.com<br>Email**:**  lconnors@walkuplawoffice.com<br>Email:  afreeman@walkuplawoffice.com<br>Email:  cmegino@WalkupLawOffice.com<br><br>Peter Flowers, IL Bar No. 06210847<br>*Admitted Pro Hac Vice*<br>Frank Cesarone, IL Bar No. 6307510<br>*Admitted Pro Hac Vice*<br>MEYERS & FLOWERS, LLC<br>3 North Second St, Suite 300<br>St. Charles, IL 60174<br>Phone:  (630) 232-6333<br>Email:  pjf@meyers-flowers.com<br>Email:  fvc@meyers-flowers.com<br><br>Robert E. Kennedy, Ohio Bar No.  0006174<br>*Admitted Pro Hac Vice*<br>David C. Landever, Ohio Bar No.  0065377<br>*Admitted Pro Hac Vice*<br>WEISMAN KENNEDY & BERRIS CO LPA<br>2900 Detroit Avenue, 2nd Floor<br>Cleveland, OH  44113<br>Phone:  (216) 789-2130<br>Phone:  (216) 781-1111 | ( X ) | E-Mail<br>Hand Deliver |

**WEINSTEIN CAGGIANO PLLC**<br>**600 UNIVERSITY STREET, SUITE 1620**<br>**SEATTLE, WASHINGTON  98101**<br>(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| Email**:** ekennedy@weismanlaw.com<br>Email**:** dlandever@weismanlaw.com<br>Email**:** drozman@weismanlaw.com<br><br>Sarah S. Doles, Illinois Bar No. 6239179<br>*Admitted Pro Hac Vice*<br>LEVIN PAPANTONIO PROCTOR BUCHANAN<br>O'BRIEN BARR & MOUGEY, P.A.<br>316 South Baylen St, Suite 600<br>Pensacola, FL 32502<br>Phone:  (850) 495-5010<br>Email:  sdoles@levinlaw.com<br>Email:  awoods@levinlaw.com | | |
| **COUNSEL FOR CHEVRON U.S.A. INC.**<br>Tyler L. Farmer, WSBA #39912<br>Chelsey L. Mam, WSBA #44609<br>Elisabeth Read, WSBA #59762<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>999 Third Avenue, Suite 4400, Seattle, WA 98104<br>Phone: (206) 623-1700; Fax: (206) 623-8717<br>Email: tyler.farmer@bclplaw.com<br>Email: chelsey.mam@bclplaw.com<br>Email: elisabeth.read@bclplaw.com<br>Email: erin.fujita@bclplaw.com<br><br>Jason Levin, WSBA #21964<br>ALSTON & BIRD LLP<br>333 South Hope Street, 16th Floor<br>Los Angeles, CA 90071-1410<br>Phone: 213-576-1000<br>Email: jason.levin@alston.com<br>Email: dana.camacho@alston.com<br><br>Debra Belott, DC Bar #993507<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>51 Louisiana Ave. N.W.<br>Washington, DC 20001-2113<br>Phone: (202) 879-3689<br>Email: dbelott@jonesday.com<br><br>Michael A. Magee, PA #314489<br>*Admitted Pro Hac Vice*<br>JONES DAY<br>500 Grant Street, Suite 4500 | (   )<br>(   )<br>(   )<br>(   )<br>( X )<br>(   ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

WEINSTEIN CAGGIANO PLLC<br>600 UNIVERSITY STREET, SUITE 1620<br>SEATTLE, WASHINGTON 98101<br>(206) 508-7070 – Facsimile (206) 237-8650

Pittsburgh, Pennsylvania 15219-2514
Phone: 412.394.7296; Fax: 412.394.7959
Email: mmagee@jonesday.com

Leon F. DeJulius Jr., NY Bar No. 5817275
*Admitted Pro Hac Vice*
Sharyn A. Reisman, NY Bar No. 2889251
*Admitted Pro Hac Vice*
Melanie K. Chan, NY Bar No. 5746615
*Admitted Pro Hac Vice*
Kristina F. Moore, NY Bar No. 5798376
*Admitted Pro Hac Vice*
Thaddeus J. Lopatka, NY Bar No. 5602503
*Admitted Pro Hac Vice*
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Phone: 212-326-3830; 212-326-3654
Email: lfdejulius@jonesday.com
Email: sareisman@jonesday.com
Email: melaniechan@jonesday.com
Email: kfmoore@jonesday.com
Email: tlopatka@jonesday.com

Kristin M. Lahaszow, CA Bar No. 341754
*Admitted Pro Hac Vice*
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Phone: 858-314-1143; 858-314-1200
Email: klahaszow@jonesday.com

Danielle R. Leneck, CA Bar No. 313052
*Admitted Pro Hac Vice*
Kendra L. Marvel, CA Bar No. 284117
*Admitted Pro Hac Vice*
JONES DAY
555 S. Flower Street, Floor 50
Los Angeles, CA 90071-2452
Phone: 213-243-2683
Email: dleneck@jonesday.com
Email: kmarvel@jonesday.com

Tracy K. Stratford, OH Bar No. 69457
*Admitted Pro Hac Vice*
JONES DAY

DECLARATION OF SERVICE - 4

| | | |
|---|---|---|
| 901 Lakeside Ave.<br>Cleveland, OH 44114<br>Phone: 216-586-3939<br>Email: Tkstratford@Jonesday.com | | |
| **COUNSEL FOR NORTHWEST WHOLESALE, INC.**<br>Shawna M. Lydon, WSBA #34238<br>BETTS PATTERSON & MINES, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA 98101<br>Phone: 206-292-9988<br>Email: slydon@bpmlaw.com<br>Email: skangas@bpmlaw.com<br>Email: klangridge@bpmlaw.com<br>Email: dmarsh@bpmlaw.com<br><br>Thomas F. O'Connell, WSBA No. 16539<br>DAVIS, ARNEIL LAW FIRM, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551<br>Email: tom@dadkp.com<br>Email: ruth@dadkp.com | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |
| **COUNSEL FOR SYNGENTA CROP PROTECTION, LLC**<br>Ari M. Sillman, WSBA #60798<br>Angelo J. Calfo, WSBA No. 27079<br>Andrew DeCarlow, WSBA No. 54471<br>MORGAN, LEWIS & BOCKIUS LLP<br>1301 2nd Ave, Suite 3000<br>Seattle, WA 98101-3808<br>Phone: 206-274-6400<br>Fax: 206-274-6401<br>Email: ari.sillman@morganlewis.com<br>Email: angelo.calfo@morganlewis.com<br>Email: andrew.decarlow@morganlewis.com<br>Email: lixi.colmenero@morganlewis.com<br>Email: trang.la@morganlewis.com<br><br>Ragan Naresh, DC No. 984732<br>*Admitted Pro Hac Vice*<br>Whitney Leets, IL No. 6336246<br>*Admitted Pro Hac Vice*<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Ave NW | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

**WEINSTEIN CAGGIANO PLLC**<br>**600 UNIVERSITY STREET, SUITE 1620**<br>**SEATTLE, WASHINGTON 98101**<br>(206) 508-7070 – Facsimile (206) 237-8650

| | | |
|---|---|---|
| Washington, D.C. 20004<br>Phone: (202) 389-5151;  (202) 389-3091<br>Email: ragan.naresh@kirkland.com<br>Email: whitney.leets@kirkland.com<br><br>Leslie Smith, IL No. 6275944<br>*Admitted Pro Hac Vice*<br>Brad Weidenhammer, IL No. 6284229<br>*Admitted Pro Hac Vice*<br>Cassandra Catalano, IL No. 6324399<br>*Admitted Pro Hac Vice*<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>Phone: (312) 862-2141<br>Email: lsmith@kirkland.com<br>Email: bweidenhammer@kirkland.com<br>Email: cassandra.catalano@kirkland.com | | |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED at Seattle, Washington, this 24th day of October, 2024.

*s/ Dylan J. Johnson*
Dylan J. Johnson
Attorney

**WEINSTEIN CAGGIANO PLLC**
**600 UNIVERSITY STREET, SUITE 1620**
**SEATTLE, WASHINGTON  98101**
(206) 508-7070 – Facsimile (206) 237-8650

# EXHIBIT M

**Cindy Lopez**

---

**Subject:**    FW: NWW Motion to Continue Trial Date - Smith

**From:** Charlie Stern
**Sent:** Thursday, February 20, 2025 9:50 AM
**To:** [poydras.court@kingcounty.gov](poydras.court@kingcounty.gov) <[Poydras.Court@kingcounty.gov](Poydras.Court@kingcounty.gov)>
**Cc:** Anne Cohen <[acohen@bpmlaw.com](acohen@bpmlaw.com)>; Gibbs Henderson <[ghenderson@ntrial.com](ghenderson@ntrial.com)>; Khaldoun Baghdadi <[kbaghdadi@walkuplawoffice.com](kbaghdadi@walkuplawoffice.com)>; Peter J. Flowers <[pjf@meyers-flowers.com](pjf@meyers-flowers.com)>; [alex@weinsteincaggiano.com](alex@weinsteincaggiano.com) <[alex@weinsteincaggiano.com](alex@weinsteincaggiano.com)>
**Subject:** NWW Motion to Continue Trial Date - Smith

Mr. Dunham:

Please be advised that the claims against Northwest Wholesale are resolved, and, as a result, Northwest Wholesale will be withdrawing its Motion to Continue the Trial Date, thus the motion is moot.

Northwest Wholesale's counsel, cc'd on this email, is traveling abroad.  But she has represented to me that a formal pleading striking the motion to continue is forthcoming.

Please pass this message along to the Court and that Northwest Wholesale will shortly be completing the appropriate formal filings.

Thank you and please let me know if you have any questions.

Charlie Stern (Plaintiff's Counsel)

**Charlie Stern**
Partner

D: 214-608-6929 **O:** 214-890-0711 **F:** 214-890-0712

 5489 Blair Rd. / Dallas, TX 75231
[ntrial.com](ntrial.com)

_____

**LAW IS OUR PASSION. JUSTICE IS OUR BUSINESS.**

**Confidentiality Notice:** The information contained in this email message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error please notify us immediately by telephone and return the original message to us by mail. Thank you.

# EXHIBIT N

**Cindy Lopez**

___

**Subject:** FW: Smith v. Chevron U.S.A., Inc., et al. | Cause No. 21-2-08160-2 SEA

**From:** Court, Poydras <Poydras.Court@kingcounty.gov>
**Sent:** Thursday, February 20, 2025 11:55 AM
**To:** Tyler Farmer <Tyler.Farmer@bclplaw.com>
**Cc:** Charlie Stern <cstern@ntrial.com>; Anne Cohen <acohen@bpmlaw.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>; afreeman@walkuplawoffice.com <afreeman@walkuplawoffice.com>; andrew.decarlow@morganlewis.com <andrew.decarlow@morganlewis.com>; Calfo, Angelo <angelo.calfo@morganlewis.com>; bweidenhammer@kirkland.com <bweidenhammer@kirkland.com>; cassandra.catalano@kirkland.com <cassandra.catalano@kirkland.com>; Chelsey Mam <Chelsey.Mam@bclplaw.com>; Cindy Lopez <clopez@ntrial.com>; dana.camacho@alston.com <dana.camacho@alston.com>; dbelott@jonesday.com <dbelott@jonesday.com>; dlandever@weismanlaw.com <dlandever@weismanlaw.com>; dleneck@jonesday.com <dleneck@jonesday.com>; drozman@weismanlaw.com <drozman@weismanlaw.com>; ekennedy@weismanlaw.com <ekennedy@weismanlaw.com>; Elisabeth Read <Elisabeth.Read@bclplaw.com>; Erin Fujita <erin.fujita@bclplaw.com>; Erin Wood <ewood@ntrial.com>; Gibbs Henderson <ghenderson@ntrial.com>; jason.levin@alston.com <jason.levin@alston.com>; john.patrick.bailey@gmail.com <john.patrick.bailey@gmail.com>; kate@dadkp.com <kate@dadkp.com>; kbaghdadi@walkuplawoffice.com <kbaghdadi@walkuplawoffice.com>; Kellie McDonald <Kellie.McDonald@bclplaw.com>; klahaszow@jonesday.com <klahaszow@jonesday.com>; lconnors@walkuplawoffice.com <lconnors@walkuplawoffice.com>; lfdejulius@jonesday.com <lfdejulius@jonesday.com>; lixi.colmenero@morganlewis.com <lixi.colmenero@morganlewis.com>; lmiranda@walkuplawoffice.com <lmiranda@walkuplawoffice.com>; lsmith@kirkland.com <lsmith@kirkland.com>; mari@fhbzlaw.com <mari@fhbzlaw.com>; melaniechan@jonesday.com <melaniechan@jonesday.com>; mgosling@jonesday.com <mgosling@jonesday.com>; mkelly@walkuplawoffice.com <mkelly@walkuplawoffice.com>; mmagee@jonesday.com <mmagee@jonesday.com>; pjf@meyers-flowers.com <pjf@meyers-flowers.com>; ragan.naresh@kirkland.com <ragan.naresh@kirkland.com>; sdoles@levinlaw.com <sdoles@levinlaw.com>; sareisman@jonesday.com <sareisman@jonesday.com>; service@weinsteincaggiano.com <service@weinsteincaggiano.com>; speters@walkuplawoffice.com <speters@walkuplawoffice.com>; Tammy Covert <tcovert@ntrial.com>; tom@dadkp.com <tom@dadkp.com>; trang.la@morganlewis.com <trang.la@morganlewis.com>; wcarson@fnlawfirm.com <wcarson@fnlawfirm.com>; thomas.leahy@kirkland.com <thomas.leahy@kirkland.com>; fvc@meyers-flowers.com <fvc@meyers-flowers.com>; awoods@levinlaw.com <awoods@levinlaw.com>
**Subject:** RE: Smith v. Chevron U.S.A., Inc., et al. | Cause No. 21-2-08160-2 SEA

This message originated from outside your organization

___

Good Morning,

Counsel, I am emailing you on behalf of Judge Poydras with regards to the pending motion to continue that is before this Court. The Judge wanted me to let the parties know that, after review of the pleadings, he intends to grant the motion. However, he understands that Counsel are very busy with litigation elsewhere across the country and that your availabilities may vary wildly, so he has not yet decided on a date of continuance.

Accordingly, the Court asks the parties to discuss their schedules amongst themselves and provide the Court with 2 or 3 windows of mutual availability that the Court can then use to determine a date of continuance that the Court can schedule around.

If the parties could do this at their soonest opportunity, it would be greatly appreciated, particularly since we have other pending motions in the case and would like to resolve this matter as swiftly as possible.

Please let me know if you have any questions.


Regards,


Alec Unis
Bailiff Covering for Judge Jason Poydras
King County Superior Court
Mailing Address:  513 3rd Ave, Rm C-203  |  Seattle, WA  98104
Courtroom W-719
PH:  206.477.1435
EMAIL:  Poydras.court@kingcounty.gov

**Judge Poydras is currently in the process of recruiting a new bailiff.  To contact the Court, email poydras.court@kingcounty.gov and your message will reach the Court's coverage bailiff.  Please anticipate potential delayed responses during  the recruitment process.  Thank you in advance for patience with any delays.**

**If an attorney is communicating substantive information to court staff, *the e-mail must also be sent to opposing counsel and so indicate on its face*.  Substantive information includes information regarding the likelihood of settlement, the timing of witnesses, anticipated problems with scheduling, concerns regarding security and other case-specific issues.**

---

**From:** Court, Poydras <Poydras.Court@kingcounty.gov>
**Sent:** Tuesday, February 18, 2025 2:38 PM
**To:** Tyler Farmer <Tyler.Farmer@bclplaw.com>
**Cc:** Charlie Stern <cstern@ntrial.com>; Anne Cohen <acohen@bpmlaw.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>; afreeman@walkuplawoffice.com; andrew.decarlow@morganlewis.com; Calfo, Angelo <angelo.calfo@morganlewis.com>; bweidenhammer@kirkland.com; cassandra.catalano@kirkland.com; Chelsey Mam <Chelsey.Mam@bclplaw.com>; Cindy Lopez <clopez@ntrial.com>; dana.camacho@alston.com; dbelott@jonesday.com; dlandever@weismanlaw.com; dleneck@jonesday.com; drozman@weismanlaw.com; ekennedy@weismanlaw.com; Elisabeth Read <Elisabeth.Read@bclplaw.com>; Erin Fujita <erin.fujita@bclplaw.com>; Erin Wood <ewood@ntrial.com>; Henderson Gibbs <ghenderson@ntrial.com>; jason.levin@alston.com; john.patrick.bailey@gmail.com; kate@dadkp.com; kbaghdadi@walkuplawoffice.com; Kellie McDonald <Kellie.McDonald@bclplaw.com>; klahaszow@jonesday.com; lconnors@walkuplawoffice.com; lfdejulius@jonesday.com; lixi.colmenero@morganlewis.com; lmiranda@walkuplawoffice.com; lsmith@kirkland.com; mari@fhbzlaw.com; melaniechan@jonesday.com; mgosling@jonesday.com; mkelly@walkuplawoffice.com; mmagee@jonesday.com; pjf@meyers-flowers.com; ragan.naresh@kirkland.com; sdoles@levinlaw.com; sareisman@jonesday.com; service@weinsteincaggiano.com; speters@walkuplawoffice.com; Tammy Covert <tcovert@ntrial.com>; tom@dadkp.com; trang.la@morganlewis.com; wcarson@fnlawfirm.com; thomas.leahy@kirkland.com; fvc@meyers-flowers.com; awoods@levinlaw.com
**Subject:** RE: Smith v. Chevron U.S.A., Inc., et al. | Cause No. 21-2-08160-2 SEA


Good afternoon,

Please see attached signed order.

Thank you,

2

# EXHIBIT O

**Cindy Lopez**

---

**Subject:** FW: Smith v. Chevron U.S.A., Inc., et al. | Cause No. 21-2-08160-2 SEA
**Attachments:** Re: are we meeting on Smith today? the Zoom link fell off my calendar if so

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Thursday, February 20, 2025 12:15 PM
**To:** Court, Poydras <Poydras.Court@kingcounty.gov>
**Cc:** alex@weinsteincaggiano.com <alex@weinsteincaggiano.com>; Anne Cohen <acohen@bpmlaw.com>
**Subject:** Re: Smith v. Chevron U.S.A., Inc., et al. | Cause No. 21-2-08160-2 SEA

In response to the email below, Plaintiff's counsel wants to make sure the Court is fully apprised of the situation.

Northwest Wholesale's counsel is CC'd. Northwest Wholesale is the Defendant who filed the Motion to Continue, which was joined by no other parties and opposed by Plaintiff.

As I mentioned in the email attached, Plaintiff and NWW have resolved. The NWW Motion to Continue, referenced below, is moot. This was the Motion to Continue that I was referring to in my emails attached with Court today.

I want to be sure Judge Poydras is aware of the situation and that Northwest Wholesale is no longer in the case and the motion to continue is moot.

Thank you.

---

**From:** Court, Poydras <Poydras.Court@kingcounty.gov>
**Sent:** Thursday, February 20, 2025 11:55 AM
**To:** Tyler Farmer <Tyler.Farmer@bclplaw.com>
**Cc:** Charlie Stern <cstern@ntrial.com>; Anne Cohen <acohen@bpmlaw.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>; afreeman@walkuplawoffice.com <afreeman@walkuplawoffice.com>; andrew.decarlow@morganlewis.com <andrew.decarlow@morganlewis.com>; Calfo, Angelo <angelo.calfo@morganlewis.com>; bweidenhammer@kirkland.com <bweidenhammer@kirkland.com>; cassandra.catalano@kirkland.com <cassandra.catalano@kirkland.com>; Chelsey Mam <Chelsey.Mam@bclplaw.com>; Cindy Lopez <clopez@ntrial.com>; dana.camacho@alston.com <dana.camacho@alston.com>; dbelott@jonesday.com <dbelott@jonesday.com>; dlandever@weismanlaw.com <dlandever@weismanlaw.com>; dleneck@jonesday.com <dleneck@jonesday.com>; drozman@weismanlaw.com <drozman@weismanlaw.com>; ekennedy@weismanlaw.com <ekennedy@weismanlaw.com>; Elisabeth Read <Elisabeth.Read@bclplaw.com>; Erin Fujita <erin.fujita@bclplaw.com>; Erin Wood <ewood@ntrial.com>; Gibbs Henderson <ghenderson@ntrial.com>; jason.levin@alston.com <jason.levin@alston.com>; john.patrick.bailey@gmail.com <john.patrick.bailey@gmail.com>; kate@dadkp.com <kate@dadkp.com>; kbaghdadi@walkuplawoffice.com <kbaghdadi@walkuplawoffice.com>; Kellie McDonald <Kellie.McDonald@bclplaw.com>; klahaszow@jonesday.com <klahaszow@jonesday.com>; lconnors@walkuplawoffice.com <lconnors@walkuplawoffice.com>; lfdejulius@jonesday.com <lfdejulius@jonesday.com>; lixi.colmenero@morganlewis.com <lixi.colmenero@morganlewis.com>; lmiranda@walkuplawoffice.com <lmiranda@walkuplawoffice.com>; lsmith@kirkland.com <lsmith@kirkland.com>; mari@fhbzlaw.com <mari@fhbzlaw.com>; melaniechan@jonesday.com <melaniechan@jonesday.com>; mgosling@jonesday.com <mgosling@jonesday.com>; mkelly@walkuplawoffice.com <mkelly@walkuplawoffice.com>; mmagee@jonesday.com <mmagee@jonesday.com>; pjf@meyers-flowers.com <pjf@meyers-flowers.com>;

1

ragan.naresh@kirkland.com <ragan.naresh@kirkland.com>; sdoles@levinlaw.com <sdoles@levinlaw.com>; sareisman@jonesday.com <sareisman@jonesday.com>; service@weinsteincaggiano.com <service@weinsteincaggiano.com>; speters@walkuplawoffice.com <speters@walkuplawoffice.com>; Tammy Covert <tcovert@ntrial.com>; tom@dadkp.com <tom@dadkp.com>; trang.la@morganlewis.com <trang.la@morganlewis.com>; wcarson@fnlawfirm.com <wcarson@fnlawfirm.com>; thomas.leahy@kirkland.com <thomas.leahy@kirkland.com>; fvc@meyers-flowers.com <fvc@meyers-flowers.com>; awoods@levinlaw.com <awoods@levinlaw.com>

**Subject:** RE: Smith v. Chevron U.S.A., Inc., et al. | Cause No. 21-2-08160-2 SEA

This message originated from outside your organization

Good Morning,

Counsel, I am emailing you on behalf of Judge Poydras with regards to the pending motion to continue that is before this Court. The Judge wanted me to let the parties know that, after review of the pleadings, he intends to grant the motion. However, he understands that Counsel are very busy with litigation elsewhere across the country and that your availabilities may vary wildly, so he has not yet decided on a date of continuance.

Accordingly, the Court asks the parties to discuss their schedules amongst themselves and provide the Court with 2 or 3 windows of mutual availability that the Court can then use to determine a date of continuance that the Court can schedule around.

If the parties could do this at their soonest opportunity, it would be greatly appreciated, particularly since we have other pending motions in the case and would like to resolve this matter as swiftly as possible.

Please let me know if you have any questions.

Regards,

Alec Unis
Bailiff Covering for Judge Jason Poydras
King County Superior Court
Mailing Address:  513 3rd Ave, Rm C-203  |  Seattle, WA  98104
Courtroom W-719
PH:  206.477.1435
EMAIL:  Poydras.court@kingcounty.gov

**Judge Poydras is currently in the process of recruiting a new bailiff.  To contact the Court, email poydras.court@kingcounty.gov and your message will reach the Court's coverage bailiff.  Please anticipate potential delayed responses during  the recruitment process.  Thank you in advance for patience with any delays.**

**If an attorney is communicating substantive information to court staff, *the e-mail must also be sent to opposing counsel and so indicate on its face*.  Substantive information includes information regarding the likelihood of settlement, the timing of witnesses, anticipated problems with scheduling, concerns regarding security and other case-specific issues.**

**From:** Court, Poydras <Poydras.Court@kingcounty.gov>
**Sent:** Tuesday, February 18, 2025 2:38 PM

# EXHIBIT P

**Cindy Lopez**

---

**Subject:**             FW: Smith v. Chevron U.S.A., Inc., et al.  | Cause No. 21-2-08160-2 SEA

**From:** Court, Poydras <Poydras.Court@kingcounty.gov>
**Sent:** Thursday, February 20, 2025 12:43 PM
**To:** Tyler Farmer <Tyler.Farmer@bclplaw.com>
**Cc:** Charlie Stern <cstern@ntrial.com>; Anne Cohen <acohen@bpmlaw.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>; afreeman@walkuplawoffice.com <afreeman@walkuplawoffice.com>; andrew.decarlow@morganlewis.com <andrew.decarlow@morganlewis.com>; Calfo, Angelo <angelo.calfo@morganlewis.com>; bweidenhammer@kirkland.com <bweidenhammer@kirkland.com>; cassandra.catalano@kirkland.com <cassandra.catalano@kirkland.com>; Chelsey Mam <Chelsey.Mam@bclplaw.com>; Cindy Lopez <clopez@ntrial.com>; dana.camacho@alston.com <dana.camacho@alston.com>; dbelott@jonesday.com <dbelott@jonesday.com>; dlandever@weismanlaw.com <dlandever@weismanlaw.com>; dleneck@jonesday.com <dleneck@jonesday.com>; drozman@weismanlaw.com <drozman@weismanlaw.com>; ekennedy@weismanlaw.com <ekennedy@weismanlaw.com>; Elisabeth Read <Elisabeth.Read@bclplaw.com>; Erin Fujita <erin.fujita@bclplaw.com>; Erin Wood <ewood@ntrial.com>; Gibbs Henderson <ghenderson@ntrial.com>; jason.levin@alston.com <jason.levin@alston.com>; john.patrick.bailey@gmail.com <john.patrick.bailey@gmail.com>; kate@dadkp.com <kate@dadkp.com>; kbaghdadi@walkuplawoffice.com <kbaghdadi@walkuplawoffice.com>; Kellie McDonald <Kellie.McDonald@bclplaw.com>; klahaszow@jonesday.com <klahaszow@jonesday.com>; lconnors@walkuplawoffice.com <lconnors@walkuplawoffice.com>; lfdejulius@jonesday.com <lfdejulius@jonesday.com>; lixi.colmenero@morganlewis.com <lixi.colmenero@morganlewis.com>; lmiranda@walkuplawoffice.com <lmiranda@walkuplawoffice.com>; lsmith@kirkland.com <lsmith@kirkland.com>; mari@fhbzlaw.com <mari@fhbzlaw.com>; melaniechan@jonesday.com <melaniechan@jonesday.com>; mgosling@jonesday.com <mgosling@jonesday.com>; mkelly@walkuplawoffice.com <mkelly@walkuplawoffice.com>; mmagee@jonesday.com <mmagee@jonesday.com>; pjf@meyers-flowers.com <pjf@meyers-flowers.com>; ragan.naresh@kirkland.com <ragan.naresh@kirkland.com>; sdoles@levinlaw.com <sdoles@levinlaw.com>; sareisman@jonesday.com <sareisman@jonesday.com>; service@weinsteincaggiano.com <service@weinsteincaggiano.com>; speters@walkuplawoffice.com <speters@walkuplawoffice.com>; Tammy Covert <tcovert@ntrial.com>; tom@dadkp.com <tom@dadkp.com>; trang.la@morganlewis.com <trang.la@morganlewis.com>; wcarson@fnlawfirm.com <wcarson@fnlawfirm.com>; thomas.leahy@kirkland.com <thomas.leahy@kirkland.com>; fvc@meyers-flowers.com <fvc@meyers-flowers.com>; awoods@levinlaw.com <awoods@levinlaw.com>
**Subject:** RE: Smith v. Chevron U.S.A., Inc., et al. | Cause No. 21-2-08160-2 SEA

## This message originated from outside your organization

Good Morning,

As Counsel has pointed out to the Court, the moving party for the motion to continue, NW Wholesalers, has settled their dispute with the plaintiff in this case. As a result, please disregard the previous email with the Court's instructions. I have discussed this matter with Judge Poydras and he agrees that the motion will be moot as soon as the notice of settlement is filed, and a copy sent to our court for confirmation. He will hold off on issuing his decision in the meantime, but if you could file that document and send a copy at your earliest convenience, then I can formally strike the hearing from our calendar and remove the pleadings from our pending work queue.

However, and for clarity of the record, the Court requests that the notice of settlement specifically include language stating that the pending motion to continue (and any other pending motions exclusively between these two parties I may be unaware of) is/are to be stricken or considered moot and will not be considered by the Court.

Regards,


Alec Unis

Bailiff Covering for Judge Jason Poydras
King County Superior Court
Mailing Address:  513 3rd Ave, Rm C-203  |  Seattle, WA  98104
Courtroom W-719
PH:  206.477.1435
EMAIL:  Poydras.court@kingcounty.gov

**Judge Poydras is currently in the process of recruiting a new bailiff.  To contact the Court, email poydras.court@kingcounty.gov and your message will reach the Court's coverage bailiff.  Please anticipate potential delayed responses during  the recruitment process.  Thank you in advance for patience with any delays.**

*If an attorney is communicating substantive information to court staff, **the e-mail must also be sent to opposing counsel and so indicate on its face**.  Substantive information includes information regarding the likelihood of settlement, the timing of witnesses, anticipated problems with scheduling, concerns regarding security and other case-specific issues.*

---

**From:** Court, Poydras
**Sent:** Thursday, February 20, 2025 9:55 AM
**To:** Tyler Farmer <Tyler.Farmer@bclplaw.com>
**Cc:** Charlie Stern <cstern@ntrial.com>; Anne Cohen <acohen@bpmlaw.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>; afreeman@walkuplawoffice.com; andrew.decarlow@morganlewis.com; Calfo, Angelo <angelo.calfo@morganlewis.com>; bweidenhammer@kirkland.com; cassandra.catalano@kirkland.com; Chelsey Mam <Chelsey.Mam@bclplaw.com>; Cindy Lopez <clopez@ntrial.com>; dana.camacho@alston.com; dbelott@jonesday.com; dlandever@weismanlaw.com; dleneck@jonesday.com; drozman@weismanlaw.com; ekennedy@weismanlaw.com; Elisabeth Read <Elisabeth.Read@bclplaw.com>; Erin Fujita <erin.fujita@bclplaw.com>; Erin Wood <ewood@ntrial.com>; Henderson Gibbs <ghenderson@ntrial.com>; jason.levin@alston.com; john.patrick.bailey@gmail.com; kate@dadkp.com; kbaghdadi@walkuplawoffice.com; Kellie McDonald <Kellie.McDonald@bclplaw.com>; klahaszow@jonesday.com; lconnors@walkuplawoffice.com; lfdejulius@jonesday.com; lixi.colmenero@morganlewis.com; lmiranda@walkuplawoffice.com; lsmith@kirkland.com; mari@fhbzlaw.com; melaniechan@jonesday.com; mgosling@jonesday.com; mkelly@walkuplawoffice.com; mmagee@jonesday.com; pjf@meyers-flowers.com; ragan.naresh@kirkland.com; sdoles@levinlaw.com; sareisman@jonesday.com; service@weinsteincaggiano.com; speters@walkuplawoffice.com; Tammy Covert <tcovert@ntrial.com>; tom@dadkp.com; trang.la@morganlewis.com; wcarson@fnlawfirm.com; thomas.leahy@kirkland.com; fvc@meyers-flowers.com; awoods@levinlaw.com
**Subject:** RE: Smith v. Chevron U.S.A., Inc., et al. | Cause No. 21-2-08160-2 SEA
**Importance:** High


Good Morning,

Counsel, I am emailing you on behalf of Judge Poydras with regards to the pending motion to continue that is before this Court. The Judge wanted me to let the parties know that, after review of the pleadings, he intends to grant the motion. However, he understands that Counsel are very busy with litigation elsewhere across the country and that your availabilities may vary wildly, so he has not yet decided on a date of continuance.

Accordingly, the Court asks the parties to discuss their schedules amongst themselves and provide the Court with 2 or 3 windows of mutual availability that the Court can then use to determine a date of continuance that the Court can schedule around.

If the parties could do this at their soonest opportunity, it would be greatly appreciated, particularly since we have other pending motions in the case and would like to resolve this matter as swiftly as possible.

Please let me know if you have any questions.


Regards,


Alec Unis
Bailiff Covering for Judge Jason Poydras
King County Superior Court
Mailing Address:  513 3rd Ave, Rm C-203  |  Seattle, WA  98104
Courtroom W-719
PH:  206.477.1435
EMAIL:  Poydras.court@kingcounty.gov

**Judge Poydras is currently in the process of recruiting a new bailiff.  To contact the Court, email poydras.court@kingcounty.gov and your message will reach the Court's coverage bailiff.  Please anticipate potential delayed responses during  the recruitment process.  Thank you in advance for patience with any delays.**

**If an attorney is communicating substantive information to court staff, *the e-mail must also be sent to opposing counsel and so indicate on its face*.  Substantive information includes information regarding the likelihood of settlement, the timing of witnesses, anticipated problems with scheduling, concerns regarding security and other case-specific issues.**

---

**From:** Court, Poydras <Poydras.Court@kingcounty.gov>
**Sent:** Tuesday, February 18, 2025 2:38 PM
**To:** Tyler Farmer <Tyler.Farmer@bclplaw.com>
**Cc:** Charlie Stern <cstern@ntrial.com>; Anne Cohen <acohen@bpmlaw.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>; afreeman@walkuplawoffice.com; andrew.decarlow@morganlewis.com; Calfo, Angelo <angelo.calfo@morganlewis.com>; bweidenhammer@kirkland.com; cassandra.catalano@kirkland.com; Chelsey Mam <Chelsey.Mam@bclplaw.com>; Cindy Lopez <clopez@ntrial.com>; dana.camacho@alston.com; dbelott@jonesday.com; dlandever@weismanlaw.com; dleneck@jonesday.com; drozman@weismanlaw.com; ekennedy@weismanlaw.com; Elisabeth Read <Elisabeth.Read@bclplaw.com>; Erin Fujita <erin.fujita@bclplaw.com>; Erin Wood <ewood@ntrial.com>; Henderson Gibbs <ghenderson@ntrial.com>; jason.levin@alston.com; john.patrick.bailey@gmail.com; kate@dadkp.com; kbaghdadi@walkuplawoffice.com; Kellie McDonald <Kellie.McDonald@bclplaw.com>; klahaszow@jonesday.com; lconnors@walkuplawoffice.com; lfdejulius@jonesday.com; lixi.colmenero@morganlewis.com; lmiranda@walkuplawoffice.com; lsmith@kirkland.com; mari@fhbzlaw.com; melaniechan@jonesday.com; mgosling@jonesday.com; mkelly@walkuplawoffice.com; mmagee@jonesday.com; pjf@meyers-flowers.com; ragan.naresh@kirkland.com; sdoles@levinlaw.com; sareisman@jonesday.com; service@weinsteincaggiano.com; speters@walkuplawoffice.com; Tammy Covert <tcovert@ntrial.com>; tom@dadkp.com; trang.la@morganlewis.com; wcarson@fnlawfirm.com; thomas.leahy@kirkland.com; fvc@meyers-flowers.com; awoods@levinlaw.com
**Subject:** RE: Smith v. Chevron U.S.A., Inc., et al. | Cause No. 21-2-08160-2 SEA

# EXHIBIT Q

**Cindy Lopez**

---

**Subject:**                    FW: SETTLEMENT AGREEMENT.docx (002)

**From:** Charlie Stern <cstern@ntrial.com>
**Sent:** Monday, March 3, 2025 11:47 AM
**To:** Anne Cohen <acohen@bpmlaw.com>
**Cc:** Alexandra Caggiano <alex@weinsteincaggiano.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>
**Subject:** Re: SETTLEMENT AGREEMENT.docx (002)

Thanks, Anne.  I will take a look and get back to you this week hopefully.

---

**From:** Anne Cohen <acohen@bpmlaw.com>
**Sent:** Monday, March 3, 2025 11:08 AM
**To:** Charlie Stern <cstern@ntrial.com>
**Cc:** Alexandra Caggiano <alex@weinsteincaggiano.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>
**Subject:** SETTLEMENT AGREEMENT.docx (002)

Mimecast Attachment Protection has deemed this file to be safe, but always exercise caution when opening files.

---

This message originated from outside your organization

---

Hi Charles and Alex,

Attached is a draft of proposed settlement language for the formal agreement. I'm sending it to you in word so you can redline proposed changes and fill in payment information. My process is to get final approval once we are in agreement as to the proposed language.

Thanks in advance.

Sincerely,

**Anne Cohen**
**Managing Shareholder**
*Admitted in Oregon, Washington and Utah*
Betts, Patterson & Mines, P.S.
US Bancorp Tower
111 SW 5th Avenue, Suite 3650
Portland, OR 97204
D 503.961.6540 | F 503.961.6339





**Confidentiality Notice:** This email and any attachments may contain confidential or attorney-client protected information that may not be further distributed by any means without permission of the sender. If you are not the intended recipient, you are hereby notified that you are not permitted to read its content and that any disclosure, copying, printing, distribution or use of any of the information is prohibited. If you have received this email in error, please immediately notify the sender by return e-mail and delete the message and its attachments without saving in any manner.

# EXHIBIT R

**Cindy Lopez**

---

**Subject:**                FW: SETTLEMENT AGREEMENT.docx (002)


**From:** Anne Cohen <acohen@bpmlaw.com>
**Sent:** Wednesday, March 5, 2025 9:13 AM
**To:** Charlie Stern <cstern@ntrial.com>
**Cc:** Alexandra Caggiano <alex@weinsteincaggiano.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>
**Subject:** RE: SETTLEMENT AGREEMENT.docx (002)

## This message originated from outside your organization

---

Hello all,

My folks are asking for a medicare addendum to the settlement agreement. I'll send it to you shortly.

Sincerely,

**Anne Cohen**
**Managing Shareholder**
*Admitted in Oregon, Washington and Utah*
Betts, Patterson & Mines, P.S.
US Bancorp Tower
111 SW 5th Avenue, Suite 3650
Portland, OR 97204
D 503.961.6540 | F 503.961.6339





**Confidentiality Notice:** This email and any attachments may contain confidential or attorney-client protected information that may not be further distributed by any means without permission of the sender. If you are not the intended recipient, you are hereby notified that you are not permitted to read its content and that any disclosure, copying, printing, distribution or use of any of the information is prohibited. If you have received this email in error, please immediately notify the sender by return e-mail and delete the message and its attachments without saving in any manner.

---

**From:** Anne Cohen
**Sent:** Monday, March 3, 2025 9:09 AM
**To:** Charles P. Stern <cstern@ntrial.com>
**Cc:** Alexandra Caggiano <alex@weinsteincaggiano.com>; Cheryl J. Erickson <cerickson@bpmlaw.com>
**Subject:** SETTLEMENT AGREEMENT.docx (002)


Hi Charles and Alex,

Attached is a draft of proposed settlement language for the formal agreement. I'm sending it to you in word so you can redline proposed changes and fill in payment information. My process is to get final approval once we are in agreement as to the proposed language.

Thanks in advance.

Sincerely,

**Anne Cohen**
**Managing Shareholder**
*Admitted in Oregon, Washington and Utah*
Betts, Patterson & Mines, P.S.
US Bancorp Tower
111 SW 5th Avenue, Suite 3650
Portland, OR 97204
D 503.961.6540 | F 503.961.6339



Confidentiality Notice:  This email and any attachments may contain confidential or attorney-client protected information that may not be further distributed by any means without permission of the sender.  If you are not the intended recipient, you are hereby notified that you are not permitted to read its content and that any disclosure, copying, printing, distribution or use of any of the information is prohibited.  If you have received this email in error, please immediately notify the sender by return e-mail and delete the message and its attachments without saving in any manner.

# EXHIBIT S

1

2

THE HONORABLE JASON POYDRAS
Trial Date: May 5, 2025
Hearing Date: March 21, 2025

3

4

5

6

7

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8

DALE SMITH,

NO. 21-2-08160-2 SEA

9

Plaintiff,

10

v.

PLAINTIFF'S RESPONSE TO
DEFENDANT NORTHWEST
WHOLESALE, INC.'S MOTION
FOR SUMMARY JUDGMENT

11

CHEVRON U.S.A., INC.;
NORTHWEST WHOLESALE, INC.; and
SYNGENTA CROP PROTECTION, LLC;

12

13

Defendants.

14

15

16

17

    COMES NOW Plaintiff, **DALE SMITH** (hereinafter, "Mr. Smith" or "Plaintiff"), by and

through his counsel of record, and files this Response to Defendant Northwest Wholesale, Inc.'s

(hereinafter, "Defendant" or "NWW") Motion for Summary Judgment (Motion), and in support

thereof states as follows:

18

19

20

### I.      RELIEF REQUESTED

    NWW's scattershot Motion ignores the factual record and misunderstands (or

misrepresents) the applicable Washington law.  First, it is undeniable that Mr. Smith identified

21

22

23

NWW as the supplier and seller of paraquat that he used in the 1970s.  NWW's refusal to

acknowledge this evidence does not mean that the evidence does not exist.  *See* Def.'s Mot. at 4-

5.  Second, the WPLA does not apply to these claims, so NWW's status as a seller/supplier of

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

1  paraquat does not relieve it of liability.  *See* Def.'s Mot. at 6.  As for NWW's "proximate causation"

2  arguments, NWW has not met its substantial burden to demonstrate the absence of an issue of

3  material fact. *See* Def.'s Mot. at 7-9.    And there is ample evidence that paraquat proximately

4  caused Mr. Smith's Parkinson's Disease.

5      When the Court views all facts and inferences in favor of Plaintiff, as it must, it is readily

6  apparent that abundant factual issues remain to be determined by the jury in this case.  This Motion

7  should be denied.

## II.    STATEMENT OF FACTS

8

9  **A.    Plaintiff's Claims**

10      Plaintiff's First Amended Complaint includes claims of liability based on theories of

11  "common law negligence, strict product liability, negligence, and breach of express and implied

12  warranties under the Washington Product Liability Act (WPLA), RCW 7.72 et seq.; strict product

13  liability under Section 402A and 402B of the Restatement of Torts; [and] conspiracy[.]"  *See* First

14  Am. Compl. at ¶ 104.

15  **B.    Background**

16      Mr. Smith was born in 1961.  *See* **Exhibit 1**, Smith Preservation Dep. Tr. Vol. 1, dated

17  May 16, 2024 ("Smith Preservation Dep. Tr. Vol. 1") at 6:25-7:1.  He was diagnosed with

18  Parkinson's Disease around 1996 at the age of 35.  *Id.* at 61:11.  Currently, Mr. Smith resides in a

19  full-time assisted living facility, is confined to a wheelchair and requires 24-hour observation and

20  care by health professionals.  *Id*. at page 7:17-25.

21      Mr. Smith detailed his work with and around paraquat at various apple orchards and

22  worksites in and around Oroville, Washington.  *Id.* at pages 23-61.  Paraquat has been utilized

23  since the 1960s in the United States by professional agriculturalist as a spray chemical herbicide,

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 2

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

and it has been ubiquitous in the apple growing industry since that time. *See* **Exhibit 2,** Defendants' Expert Kassim Al-Khatib, Ph.D. Dep. Tr., dated Sept. 30, 2024, at pages 63:13-16 and 90:13-21.

**C.    Gordon Roberts Orchard's Paraquat was Supplied by NWW**

      **1.    Mr. Smith's testimony.**

Mr. Smith first sprayed paraquat in 1977 at Gordon Roberts Orchard ("GRO"). Ex. 1, Smith Preservation Dep. Tr. Vol. 1 at 23:20-24:1. He sprayed again at GRO in 1978. *Id.* at 37:25-38:2. Mr. Smith rode with his dad in 1977 to pick up paraquat from NWW in Oroville. *Id.* at 24:24-25:15. Mr. Smith recalled his father picking up a 2.5-gallon plastic jug of paraquat from NWW. Ex. 1, Smith Preservation Dep. Tr. at 25:16-25. Mr. Smith described this incident involving NWW in detail and specifically identified NWW as the seller/supplier of the paraquat he used at GRO in 1977. *Id.* at 24:24-25:15.

Mr. Smith recalls that when he went to pick up paraquat at NWW "it said paraquat on the box that it came in." *See* **Exhibit 3,** Smith Preservation Dep. Tr. Vol. 2, dated May 17, 2024 ("Smith Preservation Dep. Tr. Vol. 2") at 49:24. He rode with his dad "quite often" to NWW to pick up "paraquat and other pesticides." *Id.* at 50:5-9. During the following year, 1978, NWW also supplied the paraquat that Mr. Smith applied at GRO. Ex. 1, Smith Preservation Dep. Tr. at 38:12-14.

      **2.    Additional Orchard Workers Confirm that spray chemicals, including Paraquat, were purchased from NWW during the 1970s and 1980s**

Bill Frazier ("Mr. B. Frazier"), Mr. Smith's cousin, was born in 1960 and began working at GRO around 1976 when he was 16 years old. *See* **Exhibit 4,** Dep. Tr. of Bill Frazier, dated May 30, 2024 ("Dep. Tr. of Bill Frazier"), at pages 8:20-21 and 19:21-20:1. Mr. B. Frazier worked at GRO from 1976 through approximately 1978, which is the same time that Mr. Smith sprayed

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 3

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

1    paraquat at the orchard.  *Id.* at 22:14-23:3; 24:13-25; 37:3-24.   Mr. B. Frazier worked in the same

2    orchard as Mr. Smith and observed him working during those years.  *Id.* at 46:7-14.  Based on his

3    experience as apple orchard manager and observation of weeds and grass being killed along apple

4    tree rows after seeing herbicide spraying, Mr. B. Frazier knows that paraquat was used at the GRO

5    when he worked there.  *Id.* at 91:8-92:7.

6            During Mr. B. Frazier's deposition, he was asked repeatedly about his knowledge of Mr.

7    Smith's use of paraquat.  In the context of those questions, he confirmed that GRO procured its

8    "chemicals" at NWW, and he went there to pick them up:

9            Q.  So you don't know -- well, do you know where they got the chemicals that
               they used?

10           A.  Yeah. Northwest Wholesale.

11           Q.  Northwest Wholesale. How do you know that it was from Northwest

12               Wholesale?

13           A.  Because that's where I've been with Uncle Dale. My Uncle Dale, I've rode
               with him in the truck down there to pick up chemicals before.

14           Q.  And you're familiar with Northwest Wholesale?

15           A.  Oh, yeah.

16    *Id.* at 105:20-106:5.

17           Mr. B. Frazier remembered other chemical distributors in the area, but he could not testify

18    that GRO ever bought chemicals from those other distributors and only recalled NWW because he

19    physically visited NWW with other workers to get "whatever" the orchard needed.  *Id.* at 106:15-

20    21.

21           Mr. Patrick Frazier ("Mr. P. Frazier"), Mr. B. Frazier's brother and another of Mr. Smith's

22    cousins, briefly worked at the GRO for one summer in 1980.  *See* **Exhibit 5,** Dep. Tr. of Patrick

23    Frazier, dated May 13, 2024 ("Dep. Tr. of Patrick Frazier") at page 37:13-17.  Despite his very

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 4

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

1   brief tenure at GRO, Mr. P. Frazier recalls that NWW was "the largest distributor in the valley

2   there, and they had these fieldmen that they would send out to talk to the orchardists about

3   recommendations for what chemicals to use for what." *Id.* at 151:21-25.

4         One other orchard worker, Leroy Hirst ("Mr. Hirst"), was deposed in this matter.  Mr. Hirst

5   is not related to Mr. Smith and has not spoken to him in close to 40 years, but Mr. Hirst worked

6   on another orchard, the EMA orchard, in the mid-1980s with Mr. Smith.  *See* **Exhibit 6,** Dep. Tr.

7   of Leroy Hirst, dated July 12, 2024 ("Dep. Tr. of Hirst") at 26:6-21.  He testified that paraquat was

8   purchased and utilized at the EMA orchard.  *Id.* at 88:19-89:6.  Mr. Hirst testified that the paraquat

9   used at EMA during the early to mid-1980s came from two supply houses—Chamberlains and

10  NWW—meaning that NWW was selling paraquat during that time period as well.  *Id.* at 52:5-22.

**D.  Mr. Smith's GRO Paraquat Usage and Exposure**

11

12      **1.  Timing and manner of Mr. Smith's exposure, mixing, loading and application of paraquat.**

13

14        Beginning in approximately 1973, Mr. Smith and his family lived on the GRO, where his

15  father worked as a foreman.  Ex. 1, Smith Preservation Dep. Tr. Vol. 1 at 17:24-18:6.  During

16  those early years, the spouse of the orchard owner used paraquat for weed control.  *Id.* at 40:4-21.

17  Mr. Smith recalled that he was present when Gordon Robert's wife was applying "often" and

18  would approach her when she was spraying occasionally.  *Id.* at 40:22-41:13.

19        When he turned 16, Mr. Smith began mowing and weed killing from the two tractors at the

20  orchard.  *Id.* at 21:24-22:16.  He killed via tractor by pulling a tank filled with paraquat and water.

21  *Id.* at 23:7-15.  According to Mr. Smith, the paraquat mixture he sprayed "killed everything."  *Id.*

22  at 23:17.

23        Mr. Smith first sprayed paraquat in late May and June of 1977.  Ex. 1, Smith Preservation

Dep. Tr. Vol. 1 at 23:20-24:1.  The paraquat Mr. Smith used at the GRO was stored in a shed.  *Id.*

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 5

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

at 24:9-17.  Mr. Smith recalled that the paraquat stored in the shed was contained in a plastic 2.5-gallon tank that said "Ortho Chevron" on it and was emblazoned with a skull and crossbones. *Id.* at 24:18-23.  Mr. Smith poured paraquat in a tank and then mixed it with water coming forcefully from an irrigation filling pipe. *Id.* at 26:18-27:6. This mixing process took two to five minutes and occasionally resulted in the paraquat mixture splashing and getting on Mr. Smith's skin. *Id.* at 27:7-13.

Mr. Smtih pulled the tank containing the paraquat mixture from an open cab Massey Ferguson tractor with a seat about 3 to 4 feet off the ground.  Ex. 1, Smith Preservation Dep. Tr. Vol. 1 at 27:22-28:11.  The paraquat was sprayed from a five-nozzle boom extending out of the right side of the tank. *Id.* at 28:19-29:5.  The boom's spray nozzles, which were roughly the size of the tip of a pencil, would occasionally get clogged. *Id.* at 29:6-12.  When clogging occurred, Mr. Smith would usually remove his gloves and rub the nozzle filter with his bare hands, which resulted in spray mixture getting on his fingers. *Id.* at 29:20-30:11.  Mr. Smith would have to clean the nozzles in this manner "[e]very 20, 30 minutes" at all the orchards comprising the GRO. *Id.* at 30:9-17.  Mr. Smith described the spray mist that came out of the boom nozzles, and the manner in which it got on his skin. *Id.* at 31:8-19.

### 2. <u>Frequency and duration of Mr. Smith's exposures to paraquat.</u>

Mr. Smith sprayed all 5 of the orchards comprising the GRO.  Ex. 1, Smith Preservation Dep. Tr. Vol. 1 at 31:20-32:8.  Mr. Smith estimated that the smallest of those orchards, Day Place, took approximately 8 hours to spray, which he would do over 2 days, and required 4 tanks of paraquat mixture, all of which he would mix. *Id.* at 32:9-17, 33:15-21.  These orchards were all arranged in rows, and each row required 2 passes to cover the trees on both sides. *Id.* at 32:18-25.  When Mr. Smith turned the corner into a new row, he would encounter spray mist from the row

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 6

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  ~  FACSIMILE (206) 237-8650

1   he had just sprayed. *Id.* at 33:1-3. Mr. Smith testified that spray mist got on him "every day [he]

2   sprayed" at GRO. *Id.* at 33:12-14.

3         Mr. Smith estimated that he spent "around 20" days total spraying paraquat in the spring

4   of 1977 at Gordon Roberts Orchard and an additional 10 hours in the fall before harvest. Ex. 1,

5   Smith Preservation Dep. Tr. Vol. 1 at 33:22-34:13. Mr. Smith sprayed paraquat in essentially the

6   same manner and for "probably 20 days, a month" in May and June of 1978 at GRO. *Id.* at 36:24-

7   37:2. As was the case in 1977, Mr. Smith repeatedly got paraquat on his skin in 1978 every time

8   he: (1) turned into a row adjacent to one he just sprayed; and (2) cleaned clogged boom nozzles

9   with his bare hands. *Id.* at 37:14-38:8.

10        **3.**    **Mr. Smith's NWW-supplied paraquat usage proximately caused his Parkinson's disease.**

11         Plaintiff's expert, Dr. Anthony Lang ("Dr. Lang"), is a neurologist and world-renowned

12   expert in movement disorders, including Parkinson's disease. Dr. Lang was asked to "provide an

13   opinion on the likelihood that [Mr. Smith's] use of paraquat was a substantial factor in causing his

14   Parkinson's disease." *See* **Exhibit 7,** Declaration of Anthony Lang, OC, MD, FRCP, FAAN,

15   FCAHS, FRSC, dated August 19, 2024 ("Lang Decl."), at page 1. Relying on several paraquat-

16   Parkinson's Disease epidemiological studies (Hertzman 1994, Liou 1997, Dhillon 2008, Tanner

17   2009, Firestone 2010, Tanner 2011), Dr. Lang opined that if Mr. Smith used paraquat for at least

18   25 days, paraquat caused his Parkinson's Disease. *Id.* at 3.

19        Importantly, Mr. Smith experienced far more than 25 days of exposure to NWW's paraquat

20   at GRO. First, all the paraquat at GRO came from NWW. *See* § II.C. Mr. Smith estimated that

21   he spent "around 20" days spraying paraquat in the spring of 1977 at GRO and an additional 10

22   hours in the fall before harvest. Ex. 1, Smith Preservation Dep. Tr. Vol. 1 at 33:22-34:13.

23   Similarly, Mr. Smith sprayed paraquat "probably 20 days, a month" in May and June of 1978 at

1    GRO.  *Id.* at 36:24-37:4.  In both 1977 and 1978, Mr. Smith repeatedly got paraquat on his skin

2    every time he: (1) turned into a row adjacent to one he just sprayed; and (2) cleaned clogged boom

3    nozzles with his bare hands.  *Id.* at 37:11-38:8.

4         Mr. Smith lived on the GRO beginning in 1973, and his combined 40-60+ days of spraying

5    at GRO in 1977 and 1978 is a conservative estimate of exposure because it does not include the

6    additional bystander exposure that he experienced when he was on the orchard and in the proximity

7    of other people spraying paraquat.  *See* **Exhibit 8,** Smith Discovery Dep. Tr., dated December 18-

8    20, 2023 and February 5-8, 2024 ("Smith Disco. Dep. Tr."), at 102-108, 397-398, 470-71.  In any

9    event, his 40-60+ days of exposure to NWW's paraquat from personal spraying, cleaning and

10   mixing paraquat more than meet Dr. Lang's causation criteria.  *See* Ex. 7, Lang Decl. at page 3.

11   **E.    NWW's Corporate Representative confirmed that (1) NWW currently sells
         Paraquat; (2) NWW began selling chemicals for the apple growing industry in
12       the 1940s; and (3) he could not state that did not sell Paraquat in the 1970s or
         1980s.**

13       NWW's CEO and President, Mr. Rodney Van Orman ("Mr. Van Orman"), is NWW's

14   designated 30(b)(6) witness and was deposed in this matter.  *See* **Exhibit 9,** Dep. Tr. of Rodney

15   Van Orman, dated September 25, 2024 ("Van Orman Dep. Tr.") at pages 8:23-9:2 and 9:10-20.

16   Mr. Van Orman confirmed that NWW has sold spray chemicals, including herbicides, utilized in

17   the apple growing industry since 1937.  *Id.* at page 45:15-18.  Mr. Van Orman further confirmed

18   that NWW currently sells paraquat products.  *Id.* at page 51:14-21.

19       Despite (1) Mr. Smith and Mr. Hirst identifying NWW as a paraquat seller in the 1970s

20   and 1980s, (2) Mr. P Frazier and Mr. B. Frazier identifying NWW as a seller of chemicals during

21   that time, (3) NWW selling spray herbicides in the area since 1937, and (4) NWW currently selling

22   paraquat, NWW has taken the position in this case that it does not know whether it sold paraquat

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 8

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  ~  FACSIMILE (206) 237-8650

1    during the 1970s or 1980s.  *See* Def.'s Mot. at 1 ("there is no evidence that NWW was a product

2    seller of paraquat during the relevant exposure period from 1973-1983.").

3        In its original discovery responses, when asked if NWW sold or supplied paraquat in the

4    1970s and 1980s, NWW responded that "defendant has made a reasonable inquiry and information

5    known or readily attainable is **insufficient to enable the defendant to admit or deny that it sold**

6    **paraquat and/or paraquat-containing products between 1961 and 1985,** as there was a fire in

7    June of 2015 that destroyed most of the company's records prior to that time period." Ex. 9, Van

8    Orman Dep. Tr. at pages 55:16-57:7 (emphasis added).  As this case progressed, NWW changed

9    its response to similarly worded discovery and now denies selling paraquat during the relevant

10   time period, stating "Northwest Wholesale does not know whether it sold paraquat products;

11   **therefore, denies this request.**" *Id.* 66:5-67:23 (emphasis added).  Mr. Van Orman admitted that

12   this change from being unable to admit or deny to "denies" was based on "no new information,

13   [nor] additional information." *Id.* at 67:12-23.  Despite the new baseless and unsupported denial

14   in the discovery responses, Mr. Van Orman admitted that he cannot testify that NWW did not sell

15   paraquat in the 1970s and 1980s. *Id.* at 67:25-68:2 and 243:14-23 ("I cannot say no, that we didn't

16   sell it.").[1]

17       In fact, the only information Mr. Van Orman has to rely on for the *possibility* that NWW

18   did not sell paraquat in the 1970s is: (1) he found no sales documents from that time period; and

19   (2) he was told by one former worker who conceivably would know whether paraquat was sold

20   during that time period that he did not believe it was.  **But this information is grossly misleading**

21   **and inadmissible hearsay from an undesignated individual**.  First, there was a fire in 2015

22

23

---

[1] NWW may attempt to argue that NWW only has records indicating GRO was a "member" of the NWW co-op as of 1998.  But Mr. Van Orman admitted that he has no idea whether membership records even exist going back to the 1970s or 1980s, so the absence of any GRO membership records from that era is not dispositive. *See* Ex. 9, Van Orman Dep. Tr. at 88:15-89:15.

destroying *all* sales documents (meaning that the absence of sales records is meaningless to this inquiry). Ex. 9, Van Orman Dep. Tr. at 35:13-36:13; 57:21-58:5; 242:15-243:5. Second, Mr. Van Orman did not ask the former worker, who is not a designated witness nor even been disclosed, whether NWW sold paraquat by the tradename that it was actually sold under. *Id.* at 35:13-36:13.

**F.    Mr. Smith's understanding of the risks of Paraquat and inadequacy of the label**

Mr. Smith believes he obtained a restricted use pesticide license from the state of Washington in 1977, which is around the time he first sprayed paraquat. Ex. 1, Smith Preservation Dep. Tr. Vol. 1 at 41:14-22; Ex. 8, Smith Disco. Dep. Tr. at 337:7-20. The test and licensing requirements covered restricted pesticide usage like paraquat included instructions on "training materials," being taught to "adhere to the pesticide labels," "to use proper personal protective equipment," and "not to swallow or ingest pesticides." Ex. 3, Smith Preservation Dep. Tr. Vol. 2 at 12:2-22. Mr. Smith followed these instructions as best he could when using paraquat, including never drinking paraquat solution. The test to obtain the license covered a pamphlet that instructed workers "[h]ow to protect yourself from poisons, herbicides, and pesticides." Ex. 1, Smith Preservation Dep. Tr. Vol. 1 at 41:23-42:9. In reviewing for the test, there was nothing Mr. Smith saw that suggested to him that he sprayed herbicides incorrectly or unsafely. *Id.* at 42:10-12.

On cross-examination by defense counsel, Mr. Smith confirmed that he read "portions of the paraquat label when [he] began using paraquat" and "understood the importance of following the paraquat label[.]" Ex. 3, Smith Preservation Dep. Tr. Vol. 2 at 13:12-19. However, Mr. Smith testified that despite understanding his training and the paraquat warning labels, there were times when using paraquat that it was impossible to fully comply with the training and/or labels, such as avoiding breathing it in when being used. *Id.* at 15:15-21. Notably, he testified that "if you can read [the labels]," he would follow the labels as best he could. *Id.* 22:11-16.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

Mr. Smith, before clarifying, testified that he did not read the entire label.  Ex. 8, Smith Disco. Dep. Tr. at 191-192, 215 (errata) and 336-341.  However, he also testified that he was not able to read the entire paraquat label because the print was too small.  Ex. 3, Smith Preservation Dep. Tr. Vol. 2 at 24:6-25:4.

Regarding the specific Chevron Ortho paraquat that Mr. Smith recalls working with, he testified he was familiar with the label.  Ex. 8, Smith Disco. Dep. Tr. at 207:14-21.  However, he also explained that he was not able to read all the particularized information on the label because the wording was too small:

> A.  You're telling me you can read that?
>
> Q.  Do you see the part where I read?
>
> A.  I could read that, but I can't.
>
> Q.  You've never read that information before?
>
> A.  No. I can't see it. It's too small.

*Id.* at 208:25-209:4.

Mr. Smith looked at the warning label, but the only warnings he recalled observing on the paraquat containers he used were the large and prominent skull and crossbones and language that paraquat was poisonous if consumed.  Ex. 1, Smith Preservation Dep. Tr. Vol. 1 at 60:25-61:2.  Mr. Smith followed that instruction and did not consume paraquat.  Moreover, Mr. Smith testified unequivocally that he would not have used paraquat if he had known it could cause him to develop Parkinson's Disease.  *Id.* at 60:22-24.

## 1.    **Mr. Smith's approach to safety**

Mr. Hirst, Mr. Smith's boss at the EMA Orchard (where Mr. Smith worked for a few years in the 1980s and claims a few days' worth of paraquat spraying), testified to Mr. Smith's general approach to safety matters.  Mr. Hirst recalls that Mr. Smith followed orders.  Ex. **6,** Dep. Tr. of

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

Hirst at page 44:19-21.  Mr. Hirst testified that he knew Mr. Smith "very well" and he expected that he "100 percent" followed warning label information. *Id.* at 43:11-17.  He had no recollection of Mr. Smith ever violating a safety rule at the orchard.  *Id.* at 30:24-31:3.

Significantly, Mr. Hirst testified that he never recalls seeing anything on the label discussing neurological issues/disorders, Parkinson's Disease, paraquat getting into the human brain, nor possible brain cell damage.  *Id.* at 45:18-46:9.  Not surprisingly, he said he would have wanted to know about these risks ("you always want to know what, you know, the bad parts about chemicals."), and he would have ensured in his role as a supervisor that workers like Dale Smith were aware of that information.  *Id.* at 46:12-47:2.  Mr. Hirst testified that if the label was clearer and someone informed him of the possible neurological risks then paraquat would not have been used.  *Id.* at 124:15-24 ("… It wouldn't have come on the orchard. We would have went another route.").

### III.    EVIDENCE RELIED UPON

Plaintiff relies upon the declaration of Charles P. Stern with attached exhibits and the pleadings and record of this case.

### IV.    ARGUMENT & AUTHORITY

**A.    Summary Judgment Standard of Review**

The standard of review for summary judgment motions is well settled.  The moving party bears the initial burden of showing the absence of an issue of material fact and an entitlement to judgment as a matter of law.  *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225 (1989).  If the moving party does not sustain that burden, summary judgment should not be entered.  *Hash v. Children's Orthopedic Hospital and Medical Center*, 110 Wn.2d. 912, 915-16 (1988).  A material fact is one upon which the outcome of the litigation relies in whole or in part.  *Hope v. Larry's*

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 12

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

*Markets*, 108 Wn. App. 185 (2001). In *Young*, the Washington State Supreme Court explained the

burdens of the moving and non-moving parties as follows:

> While CR 56(e) requires the nonmoving party to come forward with facts showing a material issue of fact, this does not occur unless and until the defendant meets his initial burden of showing that there is no issue of material fact. …
>
> A plaintiff, if he is the nonmoving party, must create an issue of fact in order to avoid summary judgment and an affidavit asserting any supportable, relevant fact inconsistent with the defendant's position will be sufficient to do so. The defendant's task, to show that there are no disputed facts, is necessarily much more difficult. In contrast to the plaintiff's situation, the mere fact that the defendant does assert some relevant facts will not necessarily meet his burden.

*Young*, 112 Wn.2d at 234-35.

### 1.    NWW has not shifted its burden

NWW has not met its initial burden. A movant for summary judgment cannot fulfill its

"genuine and substantial" and "difficult" initial burden by simply making conclusory factual

statements in its motion, without any legitimate citation or corroborating evidence. *See, e.g.,*

*Nicholson v. Deal*, 52 Wn. App. 814, 819 (1988). Rather, NWW could meets its initial burden

only by "producing factual evidence showing that it is entitled to judgment as a matter of law."

*Id.*

In addition, NWW must show that no reasonable juror could find for Plaintiff and,

therefore, it is entitled to judgment as a matter of law. CR 56(c); *Grimwood v. Univ. of Puget*

*Sound, Inc.*, 110 Wn.2d 355, 359-60 (1988). In reviewing NWW's motion and Plaintiff's

response, the Court must view all facts and make all inferences from those facts in favor of the

non-moving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437 (1982). The court may grant

summary judgment only if reasonable persons could reach but one conclusion. *Simpson Tacoma*

*Kraft Co v. Department of Ecology*, 119 Wn.2d 640, 646 (1992); *Eriks v. Denver*, 118 Wn.2d

451, 456 (1992). "On motion for summary judgment the trial court does not weigh evidence or

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 13

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

assess witness credibility . . . 'Our job is to pass upon whether a burden of production has been met, not whether the evidence produced is persuasive. That is the jury's role, once a burden of production has been met.'" *Barker v. Advanced Silicon*, 131 Wn. App. 616, 624 (2006); *see also Haley v. Amazon.com Servs.*, 25 Wn. App. 2d 207, 222, 224 (2022) (instructing that a nonmoving party's declarations must be taken as true at summary judgment unless inadmissible on other evidentiary grounds).

In the present case, NWW has not met its substantial burden to demonstrate the absence of an issue of material fact warranting jury consideration. It ignores record evidence and, worse, fails to accurately articulate the law. Rather, when the Court views all record facts and inferences in favor of Plaintiffs, abundant factual issues remain to be determined in this case.

**B.    There is Substantial Evidence that NWW Sold Paraquat During the Relevant Time Period**

NWW currently sells paraquat and has sold spray herbicide chemicals in Washington for apple orchards since the 1930s. Two separate witnesses (Mr. Smith and Mr. Hirst) identified NWW as a seller of paraquat in the 1970s and 1980s in the Oroville area, and two additional witnesses (Mr. B. Frazier and Mr. P. Frazier) confirmed that NWW was a chemical and material supplier to apple orchards where Mr. Smith worked in the 1970s and 1980s. *See supra*, § II.C and E. Despite this, NWW has decided to challenge the sufficiency of this uncontroverted evidence. *See* NWW's Mot. at 4-5. It bears noting that no witness nor document has been identified that supports NWW's position.

**1.    Direct and circumstantial evidence are reliable and acceptable forms of Evidence.**

According to the Washington Pattern Jury Instruction (WPI), evidence can be "either direct or circumstantial," and the "law does not distinguish between direct and circumstantial evidence

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 14

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

in terms of their weight or value in finding the facts in this case. One is not necessarily more or less valuable than the other." *See* **Exhibit 11,** WPI 1.03 Direct and Circumstantial Evidence, 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 1.03 (7th ed.)  In short, "circumstantial evidence is not any less reliable or probative than direct evidence." *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).  And "[i]n determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence.  *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99, 101 (1980).

Here, the Court has the benefit of both direct and circumstantial evidence.  There is direct evidence in the form of Mr. Smith and Mr. Hirst's testimony that NWW sold and supplied paraquat during the relevant time to apple orchards where Mr. Smith was exposed to it.  *See* § II.C-D.  And NWW's selling spray herbicides since the 1930s, its current sale of the product and its own president and CEO being unable to equivocally deny that NWW sold paraquat in the 1970s is circumstantial evidence that NWW was selling paraquat in the 1970s.  *See* § II.C. and E. Considering this compelling combination of evidence, it is not a surprise that Mr. Van Orman was unable to deny that NWW sold paraquat during the relevant time period.

**C.    The WPLA does not Apply to Plaintiff's claims against NWW**

NWW is quick to argue that Plaintiff's common law negligence claims are "pre-empted by the WPLA," but it fails to even consider whether the WPLA applies to Mr. Smith's claims against NWW.  *See* NWW's Mot. at 5.  But because Mr. Smith's claims related to NWW involve its sale and supply of paraquat to the GRO in the 1970s, before the WPLA went into effect, the WPLA does not apply.

"The WPLA supplants common law claims or actions based on harm caused by a product that arise **on or after its effective date, July 26, 1981**." *Macias v. Saberhagen Holdings, Inc.*,

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 15

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

1   175 Wn.2d 402, 408 (2012) (emphasis added); *Fagg v. Bartells Asbestos Settlement Tr.*, 184 Wn.

2   App. 804, 812 (2014).  When a plaintiff's alleged exposure to injury-causing products is prolonged

3   or continuous in nature, as in the present case, Washington courts consider when "substantially

4   all" of the exposure occurred in determining when the claim arises." *Macias*, 175 Wn.2d at 408–

5   09; *Braaten v. Saberhagen Holdings*, 165 Wn.2d 373, 381 n. 1, 4 (2008); *Koker v. Armstrong*, 60

6   Wn. App. 466, 472 n. 4 (1991). *Fagg*, 184 Wn. App. at 812.  If substantially all a plaintiff's

7   exposure to that defendant's product occurred before July 26, 1981, the WPLA does not apply.

8   *Fagg*, 184 Wn. App. 804, 815.  Here, **all of Mr. Smith's usage and exposure to NWW supplied**

9   **paraquat occurred in the 1970s while he was at GRO.**  *See* § II.C.-D.  Because Mr. Smith was

10  only exposed to paraquat supplied by NWW before July 26, 1981, the WPLA does not apply to

11  his claims against NWW.   *Fagg*, 184 Wn. App. at 818 ("Therefore, we conclude that because

12  substantially all of Fagg's exposure to CSK's asbestos-containing products occurred before July

13  26, 1981, the WPLA does not apply with respect to Fagg's claims against CSK.").

> **1.    Because the WPLA does not apply, strict liability may be imposed on a
> seller like NWW under § 402A of the Restatement (Second) of Torts**

15          For causes of action arising before the effective date of RCW Chapter 7.72, Washington

16  courts have held that both strict liability and negligence may be imposed on a dealer of goods

17  under § 402A of the Restatement (Second) of Torts. *Thompson v. Rockford Mach. Tool Co.*, 49

18  Wn. App. 482, 744 P.2d 357 (1987); *see also Simonetta v. Viad Corp.*, 165 Wn.2d 341, 348 (2008);

19  *Macias*, 175 Wn.2d at 409.  Section 402A declares that a product, though faultlessly manufactured

20  and designed, may not be reasonably safe when placed in the hands of the ultimate user without

21  first giving an adequate warning concerning the way to safely use the product.  Restatement

22  (Second) of Torts § 402A (1965).

23

1    Liability is imposed on parties in the chain of distribution, including sellers, wholesale or

2    retail dealers or distributors, such as NWW.  *Simonetta*, 165 Wn.2d at 348–49, 354–55 (2008).

3    Under § 402A, strict liability applies equally well to cases involving manufacturing defects, design

4    defects, and failures to warn.  *Id.*  Section 402(a) is intended to apply to "those in the chain of

5    distribution," *i.e.*, a "manufacturer, ... dealer or distributor" of the product. *Seattle–First Nat'l Bank*

6    *v. Tabert,* 86 Wn.2d 145, 148 (*1975*); *see Zamora v. Mobil Corp.*, 104 Wn.2d 199, 206 (1985) (§

7    402A is broadly interpreted beyond manufacturers to apply "to all others in the chain of

8    distribution"); *see also Braaten v. Saberhagen Holdings*, 165 Wn.2d 373, 384 (2008).  A seller has

9    a duty to "keep abreast of scientific knowledge, discoveries, advances, and research in the field,

10   and is presumed to know what is imparted thereby." *Koker v. Armstrong Cork, Inc.*, 60 Wn. App.

11   466, 476–78 (1991), *review denied by*, *Koker v. Armstrong Cork*, No. 23408-1-I, 1991 Wash.

12   LEXIS 587 (Wash. July 3, 1991); *see also Lockwood*, 109 Wn.2d at 269.

13   In sum, under the pre-WPLA[2] analysis, which is the applicable law under the facts of this

14   case, NWW is liable for its sale of paraquat used by Mr. Smith.

15   **2.     Even if the WPLA does apply to Plaintiff's claims against NWW,
         liability can be imputed to NWW as a product seller**

16   Assuming, *arguendo*, that NWW's unsupported assumption is correct that the WPLA

17   covers Mr. Smith's claims against NWW, NWW can still be held liable.  To wit, RCW 7.72.040

18   articulates specific instances when a product seller, such as NWW, can be held liable for injuries

19   stemming from its product caused by either "the negligence of such product seller" or if "[t]he

20   product seller provided the plans or specifications for the manufacture or preparation of the product

21

22

23

---

[2] The WPLA not applying has a host of practical implications not discussed in this brief.

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

1    and such plans or specifications were a proximate cause of the defect in the product[.]"  RCW

2    7.72.040(1)(a), (2(d).

3        Notably, NWW's Motion only mentions and focuses on RCW 7.72.040(2)(a-b).  NWW's

4    Mot. at 6.  However, the analysis does not stop there.  In *Buttelo v. S.A. Woods-Yates Am. Mach.*

5    *Co.*, 72 Wn. App. 397, 864 P.2d 948 (1993), the court ruled that when "the consuming public

6    typically looks to the seller for advice on selecting, operating, and maintaining the product" at

7    issue, then that fact "justif[ies] imposing on product sellers a duty to protect the public from unsafe

8    products." *Buttelo*, 72 Wn. App. at 403.  The *Butello* court further explained that this policy reason

9    for imposing such a duty on product sellers stems from the seller's "expertise that would induce a

10   buyer's reliance." *Id.*

11       In the context of the WPLA, Washington courts have analyzed the *Buttelo* ruling and

12   deemed that imposing manufacturers' duties on a "product seller" is justified when "the consuming

13   public typically looks to the seller for advice in the selection, operation and maintenance of the

14   product[.]" *Bostwick v. Ballard Marine, Inc.*, 127 Wn. App. 762, 767–68 (2005).  Reliance on the

15   product seller by the product user imputes a duty on the product seller. *Id.*

16       a.    **NWW's customers and users of spray chemicals relied on the**
              **advice and instructions from NWW.**

17       Mr. Van Orman testified at length about NWW's role providing products and services to

18   users like GRO and Mr. Smith.  Those customers sought and relied on NWW's expertise and

19   advice regarding spray chemicals.  He stated that NWW and its employees are "experts in the

20   products [NWW] sell[s]" and "experts in the services that [NWW] offer[s]."  Ex. 9, Dep. Tr. of

21   Van Orman at 47:2-6.  Mr. Van Orman confirmed that this expertise applies to paraquat. *Id.* at

22   48:13-17.  Crucially, he also confirmed that NWW's customers rely on NWW for its advice and

23   recommendations related to its products and services:

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

Q. And those farmers and customers -- or farmer customers is what I'll call them -- they come to you for products, correct?

A. Yes.

Q. They hire you for services, correct?

A. Yes.

Q. They rely upon you?

A. Some do, yes.

Q. They rely upon you?

A. They rely on us to make recommendations for them.

Q. You stole the words out of my mouth. They rely upon you to make recommendations for using particular products, correct?

A. Yes.

Q. And in making those recommendations, what Northwest Wholesale is doing is giving advice about the application of those products to its farmer customers, right?

A. Yes.

Q. This is advice that Northwest Wholesale has given orchardists in the region in the 1960s and the 1970s and the 1980s, right?

A. I believe so, yes.

*Id.* at 48:22-49:22.

According to Mr. Van Orman, this relationship of reliance and advice-seeking existed in the 1970s and 1980s when Mr. Smith was working with paraquat. *Id.* at 50:8-15. Accordingly, under the controlling authority of *Buttelo* and *Bostwick*, there is evidence of reliance and advice that imputes liability to NWW even if the WPLA controls.

        **b.    NWW was negligent in its sale and supply of chemicals, including paraquat.**

Plaintiff's Response to Defendant's
Motion for Summary Judgment - 19

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

Mr. Van Orman confirmed that NWW was aware of potential risks related to pesticides going back to the relevant time.  During his deposition, Mr. Van Orman confirmed that Mr. Larry Peterson ("Mr. Peterson") was "field consultant" employed by NWW.  Ex. 9, Dep. Tr. of Rodney Van Orman at 97:22-98:5. In 1981, Mr. Peterson stated that NWW knew what products it was supplying its customers, and that NWW "downplays our pesticides because the environmentalists get upset." *Id.* at 98:12-23.[3]  Mr. Van Orman agreed that at least by 1981, NWW understood that there were "concerns . . . regarding the use of pesticides[.]" *Id.* at 100:10-16.  NWW was on notice of potential hazards related to chemicals it sold/supplied during the relevant time.

Despite this understanding, Mr. Van Orman admits that since 1937 it has never had an in-house safety department, medical department, or industrial hygienist on staff to monitor and ensure worker safety.  Ex. 9, Dep. Tr. of Rodney Van Orman at 78:19-80:25. NWW has also never endeavored to evaluate potential exposures to paraquat experienced by its own employees or customers. *Id.* at 81:1-8.  It never evaluated its workers or end-user's usage of paraquat to ensure paraquat was being used properly and according to the label. *Id.* at 81:13-17.  It never conducted any tests on whether paraquat causes neurological issues or investigated whether its own workers or end-users were suffering from neurological issues after using paraquat. *Id.* at 81:18-82:11. NWW never had a policy to ensure its workers or end-users used spray products properly. *Id.* at 118:22-119:12.

**D.    The Washington Summary Judgment Standard for Toxic Exposure Cases is Well Established, and NWW has not Met its Burden.  Meanwhile Plaintiff has Ample Evidence to Demonstrate Exposure and Proximate Cause**

    **1.    NWW's motion fails to meet its burden demonstrating an absence <u>proximate causation supported by the record.</u>**

---

[3] Mr. Peterson's statement is not hearsay.  It is not offered to prove the truth of the matter asserted (that NWW "downplayed" pesticides).  But it demonstrates hazards associated with pesticides that NWW was aware of, i.e. notice. *See* ER 801(c).  Mr. Peterson's statement is an admission. ER 801(d)(2). If hearsay, it is an exception because it is contained with a document more than 20 years old.  ER 803(a)(16).

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 20

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

1

2

A movant for summary judgment cannot fulfill its "genuine and substantial" and "difficult"

3
initial burden by simply making conclusory factual statements in its motion, without any legitimate

4
citation or corroborating evidence. *See*, *e.g.*, *Nicholson v. Deal*, 52 Wn. App. 814, 819 (1988).

5
Rather, NWW must satisfy this initial burden by "producing factual evidence showing that it is

6
entitled to judgment as a matter of law." *Id.* Here, NWW has failed to do this.

7
NWW's "Statement of Issues" includes the conclusory argument that "Plaintiff has failed

8
to prove that his Parkinson's disease was proximately caused by NWW's own negligence or breach

9
of an express warranty." *See* NWW's Mot. at 3. Regarding negligence, NWW makes no argument

10
whatsoever and cites no evidence. *See* Def.'s Mot. at 7-8. Rather, NWW simply includes a section

11
titled "Plaintiff Has Failed to Provide Any Evidence that His Parkinson's Disease was Proximately

12
Caused by NWW's Negligence Apart from the Manufacturers" and then, strangely, copies a few

13
paragraphs from Plaintiff's Complaint and inserts those statements as its argument. *Id.*

14
Plaintiff does not know if NWW intended on citing to the record or law but simply forgot

15
to do so. Regardless, as it currently stands, NWW's conclusory statement, unsupported by any

16
citation or legal authority falls far short of meeting the burden necessary to demonstrate the

17
absence of a material issue of fact—it does not even shift the burden to Plaintiff. This glaring

18
omission calls to mind the Washington Supreme Court's instruction in *DeHeer v. Seattle Post-*

19
*Intelligencer*, 60 Wn.2d 122, 126 (1962): "Where no authorities are cited in support of a

20
proposition, the court is not required to search out authorities, but may assume that counsel, after

21
diligent search, has found none."

22

23

**2.**    **Product identification and substantial factor causation**

Washington courts apply the "substantial factor" test in toxic injury cases. *Mavroudis v.*

*Pittsburgh Corning Corp.* et. al., 86 Wn. App. 22, 29-32 (1997); *see also* **Exhibit 12,** comment to

WPI 15.02 at 2; *Hue v. Farmboy Spray Co., Inc.*, 127 Wn.2d 67, 87–88 (1995). This means that a plaintiff in a toxic injury case is entitled to recover from a defendant if there is evidence that exposure to a particular defendant's product was a substantial factor in causing the injury in question. *Id.* "[O]nce a plaintiff has demonstrated that the defendant's acts or omissions have increased the risk of harm to another, such evidence furnishes a basis for the jury to make a determination as to whether such increased risk was in turn a substantial factor in bringing about the resultant harm." *Mohr v. Grantham*, 172 Wn.2d 844 (2011) (internal citations omitted).

### 3.    <u>Proximate cause – failure to warn</u>

The adequacy of a warning will be a question of fact. *See Little v. PPG Indus., Inc.*, 92 Wn.2d 118, 123 (1979) (*citing Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474 (1978)). In a failure to warn case, a showing that the plaintiff would have heeded a warning had one been given can establish cause in fact. *Ayers v. Johnson & Johnson Baby Prod. Co.*,117 Wn.2d 747, 753 (1991). This statement of law applies for both WPLA and pre-WPLA claims. *Budd v. Kaiser Gypsum Co., Inc.*, 21 Wn. App. 2d 56, 73-74, review denied, 199 Wn.2d 1030 (2022). For NWW, the duty to warn exists, even if the danger is unknown to the supplier and the product has been faultlessly manufactured and designed, if it is not reasonably safe when used in the absence of warnings. *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149 (1977).

The adequacy of warning is a question of fact, and in *Little v. PPG Industries, Inc.*, 92 Wn.2d 118 (1979), the court approved jury instructions that set out several aspects of the duty to warn, including:

(1)    advising of the nature of the danger;
(2)    the seriousness of the consequences of improper use, and;
(3)    measures to take to avoid the danger.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 22

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

Appellate courts have established that Plaintiff can rely on opinion testimony **at trial** from an expert about what establishes an adequate versus inadequate warning label for a toxic product. *Budd* 21 Wn. App. 2d at 73-74. For the Smith matter, Plaintiff's human factors expert, Cynthia Rando, provides this testimony about the paraquat label:

> [T]he labels primarily focused on the acute hazard associated with high dose swallowing and ingestion, as well as the acute and immediately apparent effects of the skin or eye contact, and do not address any longer-term, delayed, or chronic health hazard risks, nor risks that might be associated with ordinary use in which ingestion or contact is not obvious…. Given the prominence and emphasis on this specific hazard on the label, the user is left to believe that if they do not swallow this chemical, nor experience significant eye or skin contact accompanied by immediate and obvious symptoms, they will not incur harm from its general use.

*See* **Exhibit 10,** Expert Report of Cynthia Rando, dated Oct. 14, 2022 ("Rando Report") at 23.

Courts weigh heavily whether the plaintiff has been informed of the injury-causing agent's propensity to cause a particular harm, and presume that if the plaintiff knew about those harms then the plaintiff would have treated the product with greater case. *Ayers By & Through Ayers v. Johnson & Johnson Baby Prods. Co., a Subsidiary of Johnson & Johnson Co.*, 117 Wn.2d 747, 754, 818 P.2d 1337, 1341 (1991). It is uncontroverted that Mr. Smith testified that he did not know that paraquat could cause Parkinson's Disease, and he would not have used paraquat if he had known it could cause him to develop this awful disease. Ex. 1, Smith Preservation Dep. Tr. Vol. 1 at 60:22-24. Similarly, Mr. Smith testified that while he reviewed the legible portions of the label, most of the label's print was too small and illegible. Ex. 8, Smith Disco. Dep. Tr. at 208:22-210:5. It is also uncontroverted that the paraquat label never included any information informing Mr. Smith that it could cause any neurological damage, including Parkinson's Disease. *See* § II.F.

### 4.    **Application of law to fact**

Plaintiff's Response to Defendant's
Motion for Summary Judgment - 23

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

Plaintiff has presented this Court with even more evidence, *supra*, showing that a genuine issue of material fact exists with regard to Mr. Smith's exposure to paraquat supplied by NWW and whether those exposures proximately caused his Parkinson's Disease. Viewing the evidence presented in a light most favorable to Plaintiff, it is clear that Mr. Smith used paraquat at GRO and NWW supplied that paraquat, or at the very least, creates a genuine issue of material fact to present to the jury.

The expert testimony in this case establishes that Mr. Smith's exposure to paraquat for as few as 25 days increased his risk of developing Parkinson's Disease and was a proximate cause and substantial factor in causing his disease. According to Mr. Smith's own testimony, he worked with and was exposed to paraquat for at least 40-60+ days at GRO. *See* § II.D. Of course, this is in addition to all the other bystander and indirect exposures identified by Mr. Smith for when he simply lived and worked on the orchard when paraquat was being applied by other workers. *Id.* And it is uncontroverted that had the label included a warning about Parkinson's Disease, Mr. Smith would not have used it.

This case does not require speculation to find that Mr. Smith was exposed to NWW's paraquat. He identified the product. *Id.* He identified NWW. *Id.* Other witnesses identified NWW as both a paraquat seller during that time and/or a chemical spray seller. *Id.* NWW still sells paraquat, and paraquat has been used in the apple growing industry since the 1960s. *See* § II.E. Mr. Smith's identification of NWW's paraquat at GRO coupled with the substantial additional evidence, direct and circumstantial, are sufficient to raise an inference and genuine issue of material fact as to whether Mr. Smith was exposed to NWW's paraquat and it proximately caused his injuries.

**E.      Implied and Express Warranties**

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 24

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  –  FACSIMILE (206) 237-8650

As described, *supra*, Mr. Smith's claims against NWW do not fall under the WPLA, so whether WPLA recognizes implied warranties is irrelevant. *See* § IV.C. However, even assuming the WPLA did apply, the Court of Appeals has already ruled **in this case** that privity is not required for plaintiffs like Mr. Smith to bring product liability claims based on breach of implied and/or express warranties. *Smith v. Chevron U.S.A., Inc.*, 25 Wn. App. 2d 1029 (2023).

The WPLA specifically states that "[a] claim may be asserted under this chapter even though the claimant did not buy the product from, or enter into any contractual relationship with, the product seller." *Id.* (citing RCW 7.72.010(5)). The Washington State Supreme Court agrees and has clarified that prior to the WPLA's effectiveness, privity was not required to bring such a claim:

> Before the WPLA was enacted in 1981, privity rules posed no barrier to product liability plaintiffs. Washington law permitted plaintiffs a tort remedy for any damages they suffered, including damages commonly characterized as "economic loss." Plaintiffs similarly are free from privity rules under the WPLA, see RCW 7.72.010(5), but in a more limited set of circumstances than under the common law.

*Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 856-57, 774 P.2d 1199 (1989)*8.

1.    **NWW breached implied warranties**

Article 2 of the UCC applies to contracts for the sale of goods, which are moveable at the time of sale – such as paraquat. *Berschauer Phillips Const. Co. v. Concrete Sci. Servs. of Seattle, L.L.C.*, 135 Wn. App. 1025, *2 (2006). The implied warranty of merchantability applies to sales by merchants such ass NWW, who deal in goods of the kind. *Id.* Under that warranty, the goods must be fit for the ordinary purpose for which they are used. *Id.* Whether NWW breached this warranty is a factual inquiry that depends on many factors, such as the usage in the trade and the characteristics of similar goods. *Id.* The implied warranty of fitness for a particular use arises

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 ~ FACSIMILE (206) 237-8650

1  when a buyer makes known a particular intended use for the goods and relies upon the seller's

2  expertise about fitness in purchasing the goods for that purpose. *Id.* at 3.

3       In this case, there is evidence that GRO was purchasing paraquat from NWW for the known

4  and obvious purpose of applying it to facilitate the cultivation of apples, and customers like GRO

5  relied on the experience, expertise and advice of NWW to select and utilize paraquat – which

6  amount to implied warranties. *See* §§ II., IV.C.2.a.

7       Unless the evidence is undisputed, proximate causation is a factual issue for the jury.

8  *Berschauer Phillips Const. Co*, at *3. NWW could have disclaimed the implied warranties through

9  an express disclaimer, but to successfully disclaim implied warranties, a disclaimer must be in

10 writing and conspicuous, and must use words that explicitly disclaim the warranties, like "as is."

11 *Id.* NWW presented zero evidence that it disclaimed these warranties. As such, the existence of

12 implied warranties, Mr. Smith's reliance on them and whether breach proximately caused Mr.

13 Smith's Parkinson's Disease are factual issues for the jury to decide and not to be decided at the

14 summary judgment phase of this litigation.

15                    **V.    CONCLUSION**

16      Based on the foregoing, Defendant NWW's Motion for Summary Judgment should be

17 denied in its entirety.

18      Dated this 16th day of January, 2025.        **NACHAWATI LAW GROUP**

19                                    By   */s/ Charles P. Stern*
                                          Charles P. Stern
20                                        Texas Bar No. 24106466
                                          Admitted *Pro Hac Vice*
21                                        5489 Blair Road
                                          Dallas, TX 75231
22                                        Telephone: (214) 890-0711
                                          Facsimile: (214) 890-0712
23                                        *I certify that this document contains 8,131
                                          words, in compliance with the Local Rules.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

And

WEINSTEIN CAGGIANO PLLC
Brian D. Weinstein, WSBA No. 24497
Alexandra B. Caggiano, WSBA No. 47862
Dylan J. Johnson, WSBA No. 54147
600 University Street, Suite 1620
Seattle, Washington 98101
Telephone: (206) 508-7070
Facsimile: (206) 237-8650
***Counsel for Plaintiff***

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 27

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**THE HONORABLE JASON POYDRAS**
**Trial Date: May 5, 2025**
**Hearing Date: March 21, 2025**

**SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

| | |
|---|---|
| **DALE SMITH,** | NO. 21-2-08160-2 SEA |
|      **Plaintiff,** | **DECLARATION OF CHARLES P. STERN IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT NORTHWEST WHOLESALE, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **CHEVRON U.S.A., INC., et al.,** | |
|      **Defendants.** | |

I, **CHARLES P. STERN**, declare and state as follows:

1.  I am one of the attorneys representing Plaintiff in the above-caption case. I make this statement based on personal knowledge.

2.  Attached as **Exhibit 1**, are true and correct excerpts of the preservation deposition transcript of Dale Smith, Vol. I, dated May 16, 2024.

3.  Attached as **Exhibit 2**, are true and correct excerpts of the deposition transcript of Defendant's expert Kassim Al-Khatib, Ph.D., dated September 30, 2024.

4.  Attached as **Exhibit 3**, are true and correct excerpts of the preservation deposition transcript of Dale Smith, Vol. II, dated May 17, 2024.

5.  Attached as **Exhibit 4**, are true and correct excerpts of the deposition transcript of Bill Frazier, dated May 30, 2024.

6.  Attached as **Exhibit 5**, are true and correct excerpts of the deposition transcript of Patrick Frazier, dated May 13, 2024.

7.  Attached as **Exhibit 6**, are true and correct excerpts of the deposition transcript of Leroy Hirst, dated July 12, 2024.

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

8. Attached as **Exhibit 7**, is a true and correct copy of the Declaration of Anthony Lang, OC, MD, FRCP, FAAN, FCAHS, FRSC, dated August 19, 2024.

9. Attached as **Exhibit 8**, are true and correct copies of excerpts of various discovery deposition transcripts of Dale Smith, dated December 18-20, 2023 and February 5-8, 2024.

10. Attached as **Exhibit 9**, are true and correct excerpts of the deposition transcript of Rodney Van Orman, dated September 25, 2024.

11. Attached as **Exhibit 10**, are true and correct excerpts of the Expert Report of Cynthia Rando, dated Oct. 14, 2022.

12. Attached as **Exhibit 11**, is a true and correct copy of the Washington Pattern Jury Instructions 1.03.

13. Attached as **Exhibit 12**, is a true and correct copy of the WPI 15.02 and referenced comment.

14. Attached as **Exhibit 13** is a [Proposed] Order Denying Northwest Wholesale, Inc.'s Motion for Summary Judgment.

I declare under penalty of perjury of the laws of the State of Washington that the foregoing is true and correct.

SIGNED on this the 16th day of January, 2025, at Dallas, Texas.

**NACHAWATI LAW GROUP**

*/s/ Charles P. Stern*
Charles P. Stern
Texas Bar No. 24106466
*Admitted Pro Hac Vice*
5489 Blair Road
Dallas, Texas 75231
Telephone:    (214) 890-0711
Facsimile:     (214) 890-0712
Email: cstern@ntrial.com

And

WEINSTEIN CAGGIANO PLLC
Alexandra B. Caggiano, WSBA No. 47862
Dylan Johnson, WSBA No. 54147
600 University Street, Suite 1620
Seattle, Washington 98101
Telephone: (206) 508-7070

Declaration Of Charles P. Stern In Support of Plaintiff's Response to Defendant's Motion for Summary Judgment -2

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Email: service@weinsteincaggiano.com

***Counsel for Plaintiffs***

Declaration Of Charles P. Stern In Support
of Plaintiff's Response to Defendant's
Motion for Summary Judgment -3

**WEINSTEIN CAGGIANO PLLC**
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

# EXHIBIT T

1

2

DECLARATION OF SERVICE

3

I, Vicki Milbrad, declare and state as follows:

4

I am and at all times herein a citizen of the United States, a resident of King County,

5

Washington, and am over the age of 18 years.

6

On the 17th day of November, 2021, I caused to be served true and correct copies of the

7

foregoing document on the following:

8

9

10

11

12

| **Co-Counsel for Plaintiffs**<br>Gibbs Henderson, TX Bar No. 24041084<br>William Carson, TX Bar No. 24122473<br>Fears Nachawati, PLLC<br>5473 Blair Rd.<br>Dallas, Texas 75231<br>Phone: (214) 890-0711<br>Email: wcarson@fnlawfirm.com<br>Email: ghenderson@fnlawfirm.com | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br><br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |
|---|---|---|
| **CHAMBERLIN DISTRIBUTING COMPANY, INC.**<br>Tyler D. Hotchkiss, WSBA No. 40604<br>Mari Foreman Groff, WSBA No. 56030<br>Foreman, Hotchkiss, Bauscher & Zimmerman, PLLC<br>124 N. Wenatchee Ave., Suite A<br>Wenatchee, Washington<br>Email: tyler@fhbzlaw.com<br>Email: mari@fhbzlaw.com | ( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFF'S RESPONSES TO DEFENDANT NORTHWEST WHOLESALE, INC.'S
FIRST REQUESTS FOR PRODUCTION  - 8

WEINSTEIN CAGGIANO PLLC
600 UNIVERSITY STREET, SUITE 1620
SEATTLE, WASHINGTON  98101
(206) 508-7070 – Facsimile (206)
237-8650

| | | |
|---|---|---|
| **NORTHWEST WHOLESALE, INC.**<br>Thomas F. O'Connell, WSBA No. 16539<br>Davis, Arneil Law Firm, LLP<br>617 Washington Street<br>Wenatchee, WA 98801<br>Phone: 509-662-3551<br>Email: tom@dadkp.com<br>Email: christine@dadkp.com<br><br>S. Karen Bamberger, WSBA No. 18478<br>Betts Patterson & Mines, P.S.<br>701 Pike Street, Suite 1400<br>Seattle, WA 98101<br>Phone: 206-292-9988<br>kbamberger@bpmlaw.com | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |
| **SYNGENTA CROP PROTECTION, LLC**<br>**SYNGENTA AG**<br>Angelo J. Calfo, WSBA No. 27079<br>Calfo Eakes LLP<br>1301 Second Avenue, Suite 2800<br>Seattle, WA 98101<br>Phone: (206) 407-2200<br>Fax: (206) 407-2224<br>Email: angeloc@calfoeakes.com | ( )<br>( )<br>( )<br>( )<br>( X )<br>( ) | Legal Messenger<br>King County E-Service<br>U.S. Mail<br>Federal Express<br>E-Mail<br>Hand Deliver |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED at Seattle, Washington, this 17th day of November, 2021.


*s/ Vicki Milbrad*
Vicki Milbrad
Legal Assistant

PLAINTIFF'S RESPONSES TO DEFENDANT NORTHWEST WHOLESALE, INC.'S<br>FIRST REQUESTS FOR PRODUCTION - 9

WEINSTEIN CAGGIANO PLLC<br>600 UNIVERSITY STREET, SUITE 1620<br>SEATTLE, WASHINGTON 98101<br>(206) 508-7070 – Facsimile (206)<br>237-8650